# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| Texas Association for the Rights of the Unemployed, Kathryn Kawazoe, Stephanie Stout, Kimberly Hartman, Charles Harmon, and Jesus Duarte, | § § § § § | |
| Plaintiffs, | § § § § | CIVIL ACTION NO. 1:22-cv-00417 |
| | § | JURY TRIAL DEMANDED |
| v. | § § | |
| Texas Workforce Commission and Ed Serna, Executive Director, Texas Workforce Commission, in his official capacity, | § § § § § | |
| Defendants. | § § § | |

## PLAINTIFFS' COMPLAINT

### I.   Preliminary Statement

1.      It is the purpose of unemployment benefits to provide economic stability to workers and their families by supporting newly unemployed workers "at a time when otherwise [they] would have nothing to spend." *Cal. Dep't of Human Res. Dev. v. Java*, 402 U.S. 121, 131 (1971) (citation omitted).

2.      In March of 2020, struggling with the economic impact of mass unemployment caused by the first wave of lockdown orders of the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), which, among other things, created unemployment benefits programs designed to ensure that workers unemployed because of the pandemic would continue to be able to pay their bills and provide for their families. Pub. L.

No. 116-136, 134 Stat. 281 (2020) (unemployment provisions codified at 15 U.S.C. §§ 9021–9034). As with all unemployment programs, Congress relied on the states to execute on its promise to provide economic support for vulnerable unemployed workers. Within days of the passage of the CARES Act, the Texas Workforce Commission ("TWC") entered into an agreement with the U.S. Department of Labor ("DOL") to administer pandemic unemployment programs.[1]

3.      Unfortunately, TWC systematically failed at every level to deliver CARES Act benefits promptly and completely. TWC also systematically failed to afford unemployment claimants the due process owed to them by law.

4.      TWC has also maintained a pattern and practice of unlawfully auditing claimants' eligibility and belatedly stripping claimants of their benefits. TWC's audits deny claimants due process because they (1) do not provide claimants with a notice and opportunity to be heard before an adverse determination, (2) are untimely, and (3) do not provide claimants with adequate notice of the reasons for TWC's determinations.

5.      TWC has failed to deliver claimants timely appeals hearings as required by law. As of the filing of this lawsuit, the most recent data indicate that the average unemployment appeal in Texas is approximately eight months old. *See* DOL, Lower Authority Appeals, Case Aging (Jan. 26, 2022), https://oui.doleta.gov/unemploy/ui_insurance_appeal.asp.

6.      Finally, TWC has systematically failed to issue claimants timely determinations of waiver of overpaid unemployment benefits.

7.      To put it simply: The system is broken. TWC failed unemployed Texans at their most vulnerable moments, during a pandemic in which those denied unemployment were forced to choose between their safety and their ability to feed their families.

---

[1] A copy of this agreement is attached as Exhibit A.

8. Plaintiffs seek relief that will ensure they are afforded the basic due process to which they are entitled. Plaintiffs further seek relief declaring that TWC's failures are violations of unemployment claimants' rights under the Social Security Act and the U.S. Constitution.

## II.    Jurisdiction and Venue

9. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all claims arose in this district and Defendant Serna performs his official duties in this district.

11. Declaratory relief is authorized pursuant to 28 U.S.C. § 2201 and 2202.

## III.    Parties

12. Plaintiff Texas Association for the Rights of the Unemployed ("TARU") is an unincorporated membership association comprised of unemployment claimants who seek to be treated fairly and legally by TWC. TARU seeks to defend the rights of unemployment claimants in Texas.

13. The individual Plaintiffs are unemployment claimants who maintain a permanent place of residence in Texas.

14. Defendant Texas Workforce Commission is the state agency charged with administering the unemployment benefits system in Texas pursuant to the Social Security Act and the Texas Unemployment Compensation Act ("TUCA"), Tex. Lab. Code § 201 *et seq.*

15. Defendant Edward Serna is the executive director of the TWC. As TWC's executive director, Mr. Serna is charged with administering the daily operations of the Commission in compliance with federal law, the TUCA, and regulations issued thereunder. All employees who perform TWC functions required or authorized by law are directly accountable to Mr. Serna. By statute, it is Mr. Serna's duty to cooperate with DOL under the Social Security Act "to the fullest

extent" consistent with state law, including complying with DOL's regulations governing the Social Security Act. Tex. Lab. Code § 301.063; *see also id.* §§ 301.041, .061 (describing job duties and authority of executive director of TWC).

### IV.   Statutory Framework

A. *The Social Security Act*

16.      With the passage of the Social Security Act in 1935, Congress created the architecture for state unemployment compensation systems nationwide, with the goal of providing "prompt if only partial replacement of wages to the unemployed, to enable workers to tide themselves over, until they get back to their old work or unemployment." *Java*, 402 U.S. at 131 (citation and internal quotation marks omitted).

17.      To deliver on this promise to unemployed workers, the Social Security Act contains federal mandates, overseen by DOL and administered by the various states, for the due process to be afforded to claimants. DOL provides federal funding to state unemployment agencies and oversees state administration of these programs. Pursuant to that oversight function, DOL has the authority to promulgate regulations governing unemployment procedure from the initial claim through the appeals process. *See, e.g.*, 42 U.S.C. § 503; 20 C.F.R. §§ 601–650.

18.      The Social Security Act mandates that states administer benefits in a manner that is "reasonably calculated to insure full payment of unemployment compensation when due," and that states afford the "[o]pportunity for a fair hearing, before an impartial tribunal [to] all individuals whose claims . . . are denied." 42 U.S.C. § 503(a)(1), (3).

19.      To effect these broad remedial mandates, DOL works regularly with state unemployment agencies by, among other things, reviewing unemployment program data and providing administrative guidance. In addition, DOL has promulgated regulations that states must follow when administering unemployment benefits. The regulations govern all aspects of the

unemployment compensation system, from initial investigations through determinations and appeals. *See generally* 20 C.F.R. §§ 601–640.

20.     In Texas, the Social Security Act's unemployment requirements are administered by TWC pursuant to the TUCA and the regulations that TWC promulgates thereunder.

21.     Under the TUCA and TWC's regulations, unemployed Texans may apply for and receive unemployment benefits. Claimants who meet the eligibility criteria set forth in the TUCA are entitled to receive unemployment benefits so long as they continue to remain eligible. Tex. Lab. Code § 207.021; *see generally* 40 Tex. Adm. Code § 815.

22.     State law also requires that Mr. Serna "cooperate with" DOL to the fullest extent consistent with state law, that he make regular reports to DOL regarding the administration of unemployment programs, and that he comply with unemployment regulations prescribed by DOL under the Social Security Act. Tex. Lab. Code § 301.063(b)(1)–(3).

23.     DOL's regulations set a floor of minimum required standards but do not provide specific procedures for every aspect of the unemployment process at the state level. To ensure those minimum standards are met, states must promulgate their own statutes, policies, and regulations that are consistent with DOL's minimum standards. *See* 20 C.F.R. §§ 601–650. The TUCA and TWC's unemployment regulations are designed specifically to meet those federal requirements.

B.     *Unemployment Claims Procedure – Initial Claims*

24.     When a claimant files a claim for unemployment benefits, a TWC claims examiner investigates the claim.

25.     In investigating a claim, claims examiners must follow, among other things, standard methods and procedures set forth by DOL in its regulations and other guidance to states. *See* 20 C.F.R. §§ 602.21(a), 30(a), App'x A.

26.     In particular, claims examiners conducting an investigation must "obtain promptly and prior to a determination of an individual's right to benefits, such facts pertaining thereto as will be sufficient reasonably to insure the payment of benefits when due." 20 C.F.R. Part 602 App'x A, at 6011(B); *see also* 42 U.S.C. § 503(a)(1) (requiring state unemployment laws be administered in a way that is "reasonably calculated to insure full payment of unemployment compensation when due").

27.     If a claims examiner encounters information adverse to the claimant while conducting an investigation, the examiner must contact the claimant, provide notice of the adverse information, and give the claimant an opportunity to respond. 20 C.F.R. § 602 App'x A, at 6013(A)(1).

28.     Once the claims examiner's initial investigation is complete, TWC must issue a formal legal determination regarding the claimant's eligibility for benefits.

29.     TWC's unemployment determinations must comport with the requirements set forth by the Social Security Act, DOL's regulations promulgated under the Social Security Act, the TUCA, and the regulations promulgated under the TUCA.

30.     In particular, a determination must comply with the requirement under the Social Security Act that state procedures be "reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1).

31.     If a claimant meets the standards for eligibility under the TUCA, they are entitled to benefits.

32.     TWC has no discretion to deny a claim for unemployment benefits if the claimant meets all the criteria to receive those benefits under state law.

33.     TWC has no discretion to deny an unemployment claimant the processes and procedures enumerated in the Social Security Act, the TUCA, or the regulations promulgated under either of those laws.

C.     *Unemployment Claims Procedure – Appeals*

34.     Once TWC issues its determination regarding an initial claim, both a claimant and a claimant's employer (if the employer is affected by a determination) may appeal that determination within 14 days of its mailing date. Tex. Lab. Code § 212.053.

35.     Within this 14-day period, the claims examiner may also issue a redetermination of eligibility or appeal their own determination. *Id.*

36.     The determination becomes "final for all purposes" by operation of law unless, within the 14-day period, a party appeals or the claims examiner issues a redetermination. *Id.*[2]

37.     If a party with appeal rights files an appeal of the determination, the appeal is set for a first-level hearing at what TWC refers to as the Appeal Tribunal stage. This is an evidentiary appeal with a TWC hearing officer conducted by phone. Tex. Lab. Code § 212.102; 40 Tex. Adm. Code § 815.16.

38.     Hearings for first-level appeals must be delivered in a timely manner in order to meet the Social Security Act's mandate that state procedures be "reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1).

39.     DOL has promulgated timeliness standards to meet this mandate that require state unemployment agencies to conduct hearings on 60% of first-level appeals within 30 days and 80% of first-level appeals within 45 days. 20 C.F.R. § 650.4(b).

---

[2] TWC may also issue a redetermination within one year in order to correct a "clerical or machine error." *Id.* § 212.054(a).

40.    If a party with appeal rights disagrees with an Appeal Tribunal determination, they may file an appeal to the Commission itself, whose decision ultimately is appealable to state court. 40 Tex. Adm. Code § 815.17.

41.    If no party with appeal rights files an appeal of an Appeal Tribunal or Commission Appeal decision, the decision becomes final 14 days after the respective decision is mailed. Tex. Lab. Code §§ 212.053, 212.104.

D.    _Unemployment Claims Procedure – Continuing Claims_

42.    Once TWC determines a claimant is eligible, the claimant must demonstrate their continuing eligibility each two-week claim period by meeting continuing claim requirements such as not performing paid work and, if applicable, conducting work search activities. Tex. Lab. Code § 207.021. These claims are referred to as "continuing claims."

43.    Federal guidance unambiguously entitles claimants with continuing claims to a "presumption of continued eligibility" unless and until the state issues a determination of ineligibility. DOL, Unemployment Insurance Program Letter ("UIPL") No. 01-16, Change 1, Attachment at 7 (Jan. 13, 2017), https://wdr.doleta.gov/directives/attach/UIPL/UIPL_01-16-Change-1.pdf.

44.    TWC may issue determinations of ineligibility during a continuing claim series only where the determination is issued "by the end of the week following the week in which the issue is detected." _Id._ at 6.

45.    When TWC detects an issue with a claim during a continuing claim series, TWC must conduct an investigation before issuing a determination of ineligibility. _Id._

46.    When TWC investigates an issue regarding ineligibility during a continued claim series, TWC must contact the claimant and provide the claimant with notice of the issue, an opportunity to be heard, and an opportunity to present evidence. _Id._ at 1–2; _accord_ 20 C.F.R. Part

602 App'x A, at 6013(A)(1); UIPL No. 1145 (Nov. 12, 1971), https://wdr.doleta.gov/directives/corr_doc.cfm?docn=2529.

47.    The Social Security Act's mandate that benefits be paid "when due" requires TWC investigate eligibility issues "as soon as administratively feasible after a payment is made." UIPL No. 04-01 (Oct. 27, 2000), https://wdr.doleta.gov/directives/attach/UIPL4-01.cfm.

48.    If a state has not made a final determination of eligibility on a particular continuing claim, it must pay the claimant based on the presumption of continuing eligibility and must "inform claimants who receive payments under such a presumption that a pending eligibility issue may affect their entitlement and may result in an overpayment." *Id.*

E.    *The CARES Act*

49.    On March 27, 2020, Congress passed the CARES Act in response to the growing threat of the global COVID-19 pandemic.

50.    The CARES Act created a series of new pandemic unemployment programs for those affected by COVID-19 (collectively "CARES Act benefits"), including:

    a.    Pandemic Unemployment Assistance ("PUA"): expanded eligibility for individuals not otherwise eligible for unemployment, including self-employed workers and workers who left their employment due to heightened risk of COVID-19, 15 U.S.C. § 9021;

    b.    Federally Reimbursed Waiting Week ("FRWW"): payment to claimants for the first week of unemployment, 15 U.S.C. § 9024;

    c.    Federal Pandemic Unemployment Compensation ("FPUC"): an additional federally funded unemployment benefit of $600 per week (for March through July of 2020) or $300 per week (for December 2020 through September 2021), 15 U.S.C. § 9023; and

     d.  Pandemic Emergency Unemployment Compensation ("PEUC"): additional weeks of unemployment benefits for claimants who exhausted their regular unemployment compensation, 15 U.S.C. § 9025.

51.    Congress directed DOL to implement CARES Act benefits by entering into agreements with state unemployment agencies. 15 U.S.C. §§ 9021–9025.

52.    The CARES Act thus sought to leverage the established state systems for unemployment benefits delivery under the Social Security Act and accompanying regulations.

53.    Mr. Serna, acting as the designee of the Governor on behalf of the state of Texas, entered into an agreement to deliver CARES Act benefits to unemployed Texans through TWC. *See* Ex. A.

54.    In its agreement with DOL under the CARES Act, TWC agreed to administer CARES Act benefits under the requirements of the Social Security Act. *Id.*

55.    In its agreement with DOL under the CARES Act, TWC agreed that no repayment of CARES Act benefits would be required, and no deductions from benefits would be made, "until a determination has been made, notice thereof and an opportunity for a fair hearing has been given to the individual, and the determination has become final." *Id.* at 7.

56.    TWC had no discretion to deny a claim for CARES Act benefits if the claimant met all the criteria to receive those benefits under state law. 15 U.S.C. §§ 9021–9025.

57.    TWC had no discretion to deny an unemployment claimant seeking CARES Act benefits the processes and procedures enumerated in DOL's regulations under the Social Security Act.

58.    In July of 2020, the $600 per week in FPUC benefits provided by the CARES Act expired. 15 U.S.C. § 9023(b)(3)(A)(i).

59.     In December of 2020, the PEUC, PUA, and FRWW payments authorized by the CARES Act expired.

60.     On December 27, 2020, Congress passed the Consolidated Appropriations Act. The Consolidated Appropriations Act extended CARES Act benefits from December 26, 2020, through March 14, 2021. Pub. L. No. 116-260, 134 Stat. 1182, 1950–54. The FPUC benefits under the Consolidated Appropriations Act were $300 per week. *Id.* at 1953.

61.     On March 11, 2021, just before CARES Act benefits were to expire again, Congress passed the American Rescue Plan Act ("ARPA"), which extended CARES Act benefits through September 6, 2021. Pub. L. No. 117-2, 135 Stat. 4, 118–20. The FPUC amount under ARPA remained at $300 per week. *Id.* at 119.

62.     On June 26, 2021, Texas withdrew from its agreement with DOL to provide CARES Act benefits, and Texas unemployment claimants were no longer able to receive CARES Act benefits. *See* Press Release, Office of the Texas Governor, Governor Abbott Announces End to Federal Pandemic-Related Unemployment Benefits (May 17, 2021), https://gov.texas.gov/news/post/governor-abbott-announces-end-to-federal-pandemic-related-unemployment-benefits.

### V.     Denial of Statutory and Constitutional Rights

  A. *Denial of notice and the opportunity to be heard during investigations of continuing eligibility*

63.     When TWC issues an eligibility determination that a claimant has been improperly paid benefits, it also issues a determination that the claimant has been overpaid benefits.

64.     When TWC issues a determination of overpaid unemployment benefits in the middle of a continuing claim series, TWC immediately ceases paying the claimant unemployment benefits.

65.     When TWC issues a determination of overpaid unemployment benefits, it begins efforts to collect the overpaid benefits from the claimant. It may do this by recouping the overpaid benefits from the claimant's future unemployment benefits or by using the Treasury Offset Program to recover the overpayment from federal monetary benefits such as tax refunds.

66.     In August of 2020, TWC announced that it had begun an agency-initiated audit to identify fraudulent activity among unemployment claimants. *See* Ex. B, Press Release, TWC, TWC Investigating Potential Fraud Cases (Aug. 14, 2020).

67.     As part of this initiative, TWC claims examiners were purportedly given authority to audit unemployment accounts proactively and unilaterally. *Id.*

68.     During their audits of unemployment accounts, TWC claims examiners conduct investigations of claims, reexamining the eligibility of unemployment claimants who had already received an initial determination of eligibility.

69.     During these audits, TWC claims examiners are instructed to review and evaluate claimants' continuing eligibility based on information already in the claimants' files with TWC.

70.     As part of its claims auditing system, TWC also maintains automated systems that flag claimants for potential fraud.

71.     When TWC concludes during a claim audit that a claimant improperly received benefits, it issues a new determination of eligibility finding that the claimant was not eligible to receive the benefits they received.

72.     TWC does not afford claimants any notice or opportunity to be heard before it issues a determination of ineligibility triggered by an audit.

73.     TWC does not afford claimants any notice or opportunity to be heard before it issues a determination of overpayment.

74.     By failing to provide claimants a notice of adverse information and an opportunity to be heard during claim audits, or at any time prior to the issuance of an overpayment determination, TWC fails to meet the Social Security Act's mandate that it administer unemployment claims in a manner that reasonably ensures "full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1).

75.     Further, by failing to develop an adequate factual record, TWC fails to administer the TUCA in a manner that is "reasonably calculated to insure full payment of unemployment compensation when due" and fails to afford claimants an opportunity for a fair hearing, as required by the Social Security Act. 42 U.S.C. § 503(a)(1), (3).

76.     By failing to provide unemployment claimants notice and an opportunity to be heard during audits, TWC violates the due process requirements of the U.S. Constitution.

77.     The 2021 Consolidated Appropriations Act amended CARES to require that states delivering PUA benefits must have "procedures for identity verification or validation and for timely payment" in the judgment of DOL. 15 U.S.C. § 9021(f)(1).

78.     On April 13, 2021, DOL published UIPL No. 16-21, which provides guidance on the identity verification procedures required by the Consolidated Appropriations Act.[3] The UIPL requires that state unemployment agencies, upon detecting a potential fraud issue, must "act quickly to":

> a.   Provide the individual with proper notice, including notice that the failure to respond could result in a denial of benefits and a determination of overpayment;
>
> b.   Provide the individual with an opportunity to provide information to respond to the issue;

---

[3] Available at https://wdr.doleta.gov/directives/attach/UIPL/UIPL_16-21.pdf.

    c.  Decide whether sufficient information has been provided to verify the individual's identity; and

    d.  Issue a written determination.

79.    TWC maintains a policy and practice by which it does not act quickly to notify claimants of potential issues that may require them to verify their identity.

80.    When TWC notifies a claimant that their identity must be verified, TWC does not notify the claimant that failure to verify their identity may result in a determination of overpayment.

81.    By failing to act quickly to notify claimants of potential issues that may require them to verify their identity, TWC violates the mandates of the Social Security Act and the due process requirements of the U.S. Constitution.

82.    By failing to notify claimants that their claims may be subject to an overpayment if they fail to verify their identity, TWC violates the mandates of the Social Security Act and the due process requirements of the U.S. Constitution.

    B.  *Untimely and unlawful eligibility audits.*

83.    Under state law, an initial determination of a claimant's eligibility for unemployment benefits is "final for all purposes" 14 days after the determination unless the claimant appeals, the employer appeals, or a TWC claims examiner issues a redetermination of eligibility. Tex. Lab. Code § 212.053.

84.    After a determination becomes final, an examiner may only issue a redetermination of a claimant's eligibility to correct a clerical or machine error. Such redeterminations must be issued within one year of the claim date. *Id.*

85.     Despite TWC's own clear rules prohibiting examiners from doing so, TWC examiners issue redeterminations of eligibility to claimants after their initial determinations of eligibility have become final.

86.     Under the Social Security Act, investigations of eligibility issues on continuing claims must take place as soon as administratively feasible. UIPL No. 04-01, *supra*.

87.     Despite the clear requirement under the Social Security Act that TWC promptly investigate a claimant's eligibility if it has reason to do so, TWC has a policy and practice of auditing claims long after it first had notice of the information that might call a claimant's eligibility into question.

88.     TWC also has a policy and practice of using automated fraud detection systems to flag claimants for potential fraud long after it first had notice of the information used to flag the claimant for potential fraud.

89.     As a result of these unlawful redeterminations, claimants have been unlawfully cut off from receiving further unemployment benefits.

90.     TWC issues notices of overpaid unemployment benefits to claimants affected by these unlawful redeterminations demanding that they repay all unemployment benefits they had received.

91.     As a result of TWC's policy of conducting unlawful eligibility audits, Plaintiffs and countless other unemployment claimants have been subjected to unlawful denial of vital unemployment benefits.

92.     TWC's unlawful eligibility audits denied Plaintiffs and other unemployment claimants their rights under the U.S. Constitution and the Social Security Act to procedural due process in the handling of their unemployment claims.

93.     Eligible unemployment claimants have a constitutionally protected property interest in unemployment benefits.

C. *Untimely appeal hearings*

94.     To comply with the Social Security Act's mandate that unemployment benefits be paid "when due," TWC must issue at least 60% of benefit appeal decisions within 30 days of the appeal and 80% of benefit appeal decisions within 45 days of the appeal. 20 C.F.R. § 650.4. TWC provides DOL with data used to determine its compliance with these standards.

95.     TWC's appeal system was inadequate before the pandemic. In January of 2020, TWC reported to DOL a 30-day appeal decision rate of 37.1% and a 45-day appeal decision rate of 73.8%. By June of 2020, those numbers had shrunk to 20.3% and 38.1%, respectively, and plummeted to 0.5% and 0.8% by the end of the year. As of December 2021, the most recent data available at the time of this filing, the 30- and 45-day appeal decision rates were 7.1% and 15.4%, respectively.[4]

96.     As of December 2021, 12,400 active appeals had been pending their first-level appeal hearing for more than 360 days. The average age of pending cases was 240 days—that is, approximately eight months.

97.     To comply with the mandates of the Social Security Act and DOL's regulations, TWC must respond to the growing appeal backlog.

98.     The delays created by TWC's failure to ameliorate the excessive backlog of unemployment claims are so severe that claimants are functionally denied a meaningful appeal hearing. It is the policy undergirding the Social Security Act that claimants be delivered benefits

---

[4] Data for each period may be accessed by selecting the relevant month under "Appeals Time Lapse Report" for "Lower Authority" at https://oui.doleta.gov/unemploy/ui_insurance _appeal.asp.

promptly, in recognition of the urgent financial pressures when claimants become unemployed. By denying claimants benefits pending appeals, and by delaying appeals for more than half a year on average, TWC functionally robs claimants of the ability to contest a denial of unemployment benefits.

99.     TWC's failure to timely adjudicate appeals denies Plaintiffs their constitutional right to due process.

D. *Failure to issue determinations of waiver for overpaid CARES Act benefits*

100.     When TWC determines that a claimant has been overpaid benefits under a federal extended unemployment compensation program, it must simultaneously determine whether that overpayment shall be waived. 40 Tex. Admin. Code § 815.12.

101.     TWC's regulations require it to waive overpayments if the overpayment was not the fault of the claimant and the repayment is contrary to equity and good conscience. *Id.*

102.     When TWC issues a determination of overpaid CARES Act benefits, it must simultaneously issue a determination of waiver. 40 Tex. Admin. Code § 815.183.

103.     TWC has systematically failed to issue determinations of waiver to all recipients of CARES Act benefits who were assessed an overpayment for those benefits.

104.     Claimants who do not receive a determination of waiver are subject to overpayment collection and are pressured by TWC to pay back the overpaid benefits. TWC sends claimants regular statements of their overpaid unemployment benefits, demanding that claimants remit monthly payments.

105.     TWC sends claimants these demands for monthly payments even when it has not made a determination of waiver.

106.    When TWC issues a waiver determination to a claimant, TWC must send notice to the claimant informing them of the determination and their right to appeal the determination. 40 Tex. Admin. Code § 815.24.

107.    As of June 6, 2021, TWC had issued 233,239 determinations denying waiver of FPUC, FRWW, PUA or PEUC benefits. *See* Ex. C, Texas Open Records Act Response from TWC (June 15, 2021).

108.    As of June 9, 2021, only 2,174 of those denials of waiver had been appealed – less than 1%. *Id.*

109.    On information and belief, TWC has not provided actual notice of denial of waiver to all claimants whom TWC denied waiver.

110.    TWC has not issued a notice of determination of waiver to each claimant to whom it has made a determination of waiver relating to CARES Act benefits.

111.    TWC has not made a determination of waiver of overpaid CARES Act benefits to each claimant entitled to such a determination.

112.    As a result of TWC's failure to determine waiver of overpaid CARES Act benefits and its failure to issue notices of denial of waiver, claimants have outstanding overpayment balances with TWC that they may not otherwise have.

113.    TWC denies Plaintiffs due process by failing to issue determinations of waiver when required by law and by failing to timely inform Plaintiffs of their right to appeal their determinations.

E.  *Inadequate notices of TWC's determinations*

114.    To effectuate the Social Security Act's mandate that state unemployment agencies administer benefits in a manner that is "reasonably calculated to insure full payment of unemployment compensation when due" and to provide claimants with the "[o]pportunity for a

fair hearing before an impartial tribunal," 42 U.S.C. § 503, DOL has promulgated standards for the information that state unemployment agencies must provide to claimants in claim notices.

115.    These standards require that a state agency's official determinations related to unemployment benefits "must include . . . sufficient information to enable [claimants] to understand the determinations, the reasons therefor, and their rights to protest, request reconsideration, or appeal." 20 C.F.R. Part 602, App'x A; 20 C.F.R. Part 625, App'x B.

116.    When a state agency's determination results in a claimant's denial of benefits or disqualification from benefits, the determination must include "an explanation of the reason for the ineligibility or disqualification . . . sufficiently detailed so that [the claimant] will understand why [they are] ineligible and what [they] must do in order to requalify for benefits or purge the disqualification." *Id.*

117.    The explanation of the reason for a denial of benefits "must be individualized to indicate the facts upon which the determination was based." *Id.* Importantly, state unemployment agencies may not fill out determinations merely by "[c]hecking a box as to the reason for disqualification[.]" *Id.*

118.    TWC has a policy or practice of routinely failing to provide claimants to whom it has provided a notice of claim denial with an individualized explanation of the facts that led to its denial.

119.    Rather, TWC's notices of claim denial include only generic explanations of denial akin to the "checking a box" that is forbidden by DOL's regulations.

120.    When TWC conducts its unlawful audits of unemployment claimants' eligibility and determines they are no longer eligible, TWC does not provide Plaintiffs with adequate notice.

Rather, claimants receive notice of determination that TWC "obtained new information" and "after investigation" has determined that the claimant was ineligible for benefits.

121.    By way of example, attached as Exhibit D is a copy of a determination on payment of unemployment benefits that TWC sent Plaintiff Jesus Duarte on October 8, 2021. The determination states as the sole rationale for decision that "[i]t has been determined that you have been overpaid benefits." The determination states that Mr. Duarte was overpaid $20,319 in unemployment benefits.

122.    Attached as Exhibit E is a second determination that TWC sent Mr. Duarte on October 8, 2021. The only reason for determination given is: "We obtained new information and after investigation found you [sic] are not eligible for the benefits we already paid you. For an explanation of why we cannot pay you, please refer to the DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS we mailed you."[5] This second determination states that Mr. Duarte was overpaid $13,546 in unemployment benefits.

123.    Attached as Exhibit F is a third determination that TWC sent Mr. Duarte on October 8, 2021. This determination is identical to the determination attached as Exhibit E but states that Mr. Duarte was overpaid $5,731 in unemployment benefits.

124.    Attached as Exhibit G is a copy of a determination on payment of unemployment benefits that TWC sent Plaintiff Kimberly Hartman on March 12, 2021. The determination states as the sole reason for decision that "[i]t has been determined that you have been overpaid benefits." The determination states that Ms. Hartman was overpaid $4,680 in unemployment benefits.

125.    Attached as Exhibit H is another determination that TWC sent Ms. Hartman on March 12, 2021. The only reason for determination given is: "We obtained new information and

---

[5] The referenced determination is attached as Exhibit D.

after investigation foundyou [sic] are not eligible for the benefits we already paid you. For an explanation of why we cannot pay you, please refer to the DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS we mailed you."[6] This determination states that Ms. Hartman was overpaid $7,582 in unemployment benefits.

126.    As demonstrated by Exhibits D and through G, TWC does not give claimants who receive these adverse determinations (including Plaintiffs Hartman and Duarte and many other claimants) any information as to what "new information" TWC obtained or what its "investigation" covered.

127.    When TWC denies an unemployment claimant's request for backdated payments, it does not give the claimant any individualized factual information regarding the determination.

128.    Instead, TWC's determinations denying backdated payments summarily state that claimants did not "show good cause" for backdated claims.

129.    TWC has never made any public statement regarding the legal standard on which it adjudicates requests for backdated payments.

130.    The only information publicly available about the standard that TWC follows when deciding whether to allow a backdated claim is 40 Tex. Admin. Code § 815.22(a), which simply states that TWC, "[f]or adequate cause shown," may permit backdated claims "in order to prevent hardship or injustice."

131.    Neither TWC regulations nor publicly available TWC statements offer any guidance as to what is sufficient to show "adequate cause" for backdating, nor is there any guidance as to what facts constitute "hardship or injustice."

---

[6] The referenced determination is Exhibit G.

132.    TWC's website provides absolutely no information on the legal standard that TWC uses to adjudicate whether claimants have shown good cause to backdate, or what constitutes preventing injustice or undue hardship.

133.    TWC's determination notices are also inadequate because of its policy of providing claimants with a bare citation to the section of the statute or regulation it believes is relevant to the determination, rather than describing the relevant legal standard in plain terms.

134.    As most unemployment claimants are not attorneys, merely citing to statutes and regulations does not actually provide them with any meaningful information about how they can successfully overturn their denial of benefits.

135.    For example, when TWC denies a claimant's request for backdated benefits, the standard determination language cites to two sections of the TUCA that have absolutely nothing to do with requesting backdated benefits.

136.    When a claimant is denied a request to backdate benefits, the reason for determination that TWC gives in its notice of denial is: "You did not show good cause to file a backdated claim." As legal support for its determination, TWC cites Tex. Lab. Code §§ 207.021(a)(2) and 208.001.

137.    Tex. Lab. Code § 207.021(a)(2) provides that a claimant is eligible for unemployment benefits if the claimant has made a claim for benefits. Tex. Lab. Code § 208.001 provides that claims for benefits must be made in accordance with TWC rules. Neither section provides any information that elucidates the factual or legal basis for TWC's denial of a claimant's request for backdated benefits.

138.    In other contexts, TWC also provides claimants with adverse determinations that contain a bare citation to statutes and regulations rather than a description of the factual or legal bases for TWC's determination.

139.    For example, TWC's adverse determination issued to Ms. Hartman, attached as Exhibit G, merely states "it has been determined that you have been overpaid benefits," then references the following statutes and regulations: Pub. L. No. 116-136, Title II, §§ 2102(h), 2104(f), 2015(f)[7], and 2107(e); 20 C.F.R. § 625.14; Tex. Lab. Code §§ 212.006 and 214.002; and 40 Tex. Adm. Code §§ 815.12 and 815, subchapter G.

140.    The statutes and regulations referenced in Exhibit G establish TWC's authority to assess overpayments and to determine that a claimant has committed fraud or improperly obtained benefits, and to recover those benefits. They do not provide any information to the claimant as to the legal basis on which TWC determined that the claimant improperly obtained benefits.

141.    TWC's failure to provide claimants with adequate notice of the factual and legal bases for the denial of their claims irreparably harms claimants by denying them the opportunity for the fair hearing required by the Social Security Act. Because claimants are not put on notice of the factual and legal bases for the denial of their claims, they are unable to adequately prepare for appeal hearings and are likely to lose vital unemployment benefits as a result.

142.    TWC's failure to provide claimants with adequate notice of the factual and legal bases for the denial of their claims irreparably harms claimants by denying them due process of law.

F. _Resulting harm to the Plaintiffs_

**1. Kathryn Kawazoe**

---

[7] Presumably, this is intended to be a reference to § 2105(f).

143.     Plaintiff Kathryn Kawazoe is a Texas resident. Ms. Kawazoe is a self-employed individual who works in holistic integration practices including yoga and design.

144.     Beginning in March of 2020, Ms. Kawazoe lost work due to the pandemic. The nature of her work involves in-person, in-home visits with her clients, and her clients were unwilling or unable to meet due to the pandemic.

145.     In March or April of 2020, when she heard that PUA was available, Ms. Kawazoe began to call TWC to apply for unemployment benefits. She attempted to call TWC to file a claim for unemployment benefits but was unable to get through to do so for several months.

146.     In October of 2020, Ms. Kawazoe was finally able to get through to TWC to file an application for PUA. On October 19, 2020, TWC sent Ms. Kawazoe a Determination on Payment of Unemployment Benefits denying her PUA benefits. The reason TWC gave for the denial was: "Based on our investigation and the available information, you are not considered unemployed, partially unemployed or unable or unavailable for work for one of the qualifying reasons identified under section 2102(a)(3)(A)(ii)(I) of the Coronavirus Aid, Relief, and Economic Security (CARES) Act."

147.     TWC's October 19, 2020 determination did not state the factual or legal basis for its determination that Ms. Kawazoe was not considered unemployed, partially unemployed, or unable or unavailable for work for a qualifying reason under the CARES Act.

148.     On October 19, 2020, TWC paid Ms. Kawazoe some backdated PUA benefits without explanation but ceased paying her benefits going forward.

149.     Ms. Kawazoe appealed the October 19, 2020 denial of PUA benefits. She did not receive a hearing until July 12, 2021. On July 13, 2021, TWC issued its appeal tribunal decision finding that Ms. Kawazoe was eligible for PUA benefits.

150.    On July 13, 2021, TWC sent Ms. Kawazoe three separate determinations.

151.    Two of the July 13, 2021 determinations stated that TWC could not pay Ms. Kawazoe benefits from June 13 to June 19, 2021 and June 20 to June 26, 2021 because TWC "could not determine [her] right to payment of benefits because [she] did not provide [TWC] with the information [it] requested about [her] claim."

152.    The third July 13, 2021 determination stated that TWC could not pay Ms. Kawazoe benefits because she had not contacted TWC as requested to provide information.

153.    None of these determinations stated what information Ms. Kawazoe needed to provide to TWC.

154.    TWC had not previously requested information from Ms. Kawazoe.

155.    After receiving the determinations, Ms. Kawazoe attempted several times to contact TWC to identify the information it needed so that she could provide it. Each time she contacted TWC, she was not allowed to provide the requested information, nor was she allowed to file a backdated claim for benefits for those weeks.

156.    On July 26, 2021, Ms. Kawazoe appealed TWC's July 13, 2021 denials.

157.    Ms. Kawazoe does not have any notice of the factual or legal issues that will be determined in her appeal hearing, whenever it occurs.

### 2.  Stephanie Stout

158.    Plaintiff Stephanie Stout is a Texas resident. In February of 2020, she was terminated from her job as a customer service representative for a call center without reason.

159.    Shortly after being terminated, Ms. Stout filed a claim for unemployment benefits. She began receiving regular unemployment benefits.

160.    Throughout 2020, Ms. Stout continued to receive regular unemployment compensation benefits. When her unemployment benefits ended, she began to receive PEUC benefits.

161.    From April of 2020 through July of 2020, Ms. Stout received FPUC benefits.

162.    Prior to the end of 2020, Ms. Stout exhausted both her regular unemployment benefits and her PEUC benefits.

163.    On January 12, 2021, TWC sent Ms. Stout a determination on payment of unemployment benefits that informed her she might be entitled to additional PEUC benefits following the passage of the Consolidated Appropriations Act.

164.    On January 19, 2021, TWC sent Ms. Stout a second determination informing her that she might be entitled to additional PEUC benefits following the passage of the Consolidated Appropriations Act. This determination stated that Ms. Stout was eligible for a different amount of benefits than the January 12 determination.

165.    Ms. Stout applied for and received PEUC and FPUC benefits in January and February of 2021.

166.    On February 23, TWC sent Ms. Stout a determination stating that she was not entitled to PEUC any longer because she might qualify for regular unemployment. TWC also cut off Ms. Stout's PEUC benefits.

167.    Shortly after receiving the February 23 determination, Ms. Stout applied for regular unemployment compensation benefits.

168.    On March 25, TWC sent Ms. Stout two conflicting determinations. One determination stated that TWC could pay Ms. Stout benefits because she had a qualifying

separation from work. The other determination stated that Ms. Stout did not qualify for unemployment benefits.

169.    Though Ms. Stout had requested any unemployment benefits to which she was entitled, TWC did not process a claim for PEUC benefits for her after denying her regular unemployment.

170.    On June 8, 2021, Ms. Stout appealed TWC's denial of regular unemployment benefits.

171.    As of the date of this filing, Ms. Stout has not received a hearing on her appeal of June 8, 2021.

172.    On information and belief, between February 2021 and June 2, 2021, TWC audited Ms. Stout's claim.

173.    TWC did not give Ms. Stout an opportunity to be heard during the audit of her claim.

174.    TWC did not provide Ms. Stout notice about the audit of her claim.

175.    On June 2, TWC sent Ms. Stout a determination of overpaid employment benefits, informing her that TWC had determined she had been overpaid $1,160 in CARES Act benefits.

176.    On information and belief, the June 2 determination was a result of TWC's audit of Ms. Stout's claim.

177.    The June 2 determination of overpaid unemployment benefits gave no information about the individualized factual basis for TWC's determination of overpayment.

178.    The June 2 determination gave no information about the legal basis for TWC's determination. Instead, it listed several sections of the CARES Act, DOL's disaster unemployment regulations, the TUCA, and TWC's unemployment regulations.

179.    Neither Ms. Stout was unable to divine any useful information from TWC's citation to various laws and regulations.

180.    TWC did not—and has not—determined whether to waive Ms. Stout's allegedly overpaid unemployment benefits, despite its own regulations requiring it to make such a determination at the same time it determines the overpayment.

181.    On June 8, 2021, Ms. Stout appealed the determination of overpayment online through TWC's Unemployment Benefits System.

182.    As of the date of this filing, Ms. Stout's appeal has not been set for a hearing, even though it has been over nine months since her appeal.

183.    Ms. Stout does not have any notice of the factual or legal issues that will be determined in her appeal hearing, whenever it occurs.

184.    If TWC issued a determination refusing to waive Ms. Stout's overpayment, she was unable to appeal the determination because she did not have notice of the denial.

185.    If TWC issued a determination refusing to waive Ms. Stout's overpayment, she was unable to appeal the determination because there was no option to do so in TWC's Unemployment Benefits System when she filed her appeal.

### 3.  Charles Harmon

186.    Plaintiff Charles Harmon is a Texas resident who works as a seasonal outdoor bartender in coastal South Texas.

187.    In March of 2020, Mr. Harmon planned to return to work as a bartender at a restaurant. However, due to the stay-at-home orders in place at the time, the restaurant was closed and he was unable to work.

188.    Because he was unable to work, Mr. Harmon applied for unemployment in March 2020.

189.   TWC finally issued an appeals decision in Mr. Harmon's favor in July of 2020.

190.   In May of 2021, Mr. Harmon applied for backdated benefits from December 27, 2020 through February of 2021.

191.   TWC did not provide a determination on Mr. Harmon's request for backdated benefits until he called a TWC representative in September of 2021.

192.   On September 8, 2021, TWC sent Mr. Harmon a determination on payment of unemployment benefits denying his request for backdated benefits from December 27, 2020 through February of 2021.

193.   TWC's September 8, 2021 determination did not provide Mr. Harmon with any information regarding the factual or legal basis for TWC's decision.

194.   TWC's September 8 determination merely stated that Mr. Harmon did not "show good cause for backdating" his claim and cited to sections of the TUCA.

195.   Mr. Harmon was unable to divine any information about the legal basis for TWC's denial of his request from the notice he received.

196.   The sections of the TUCA referenced in the determination do not concern requests for backdated payments.

197.   On September 9, 2021, Mr. Harmon appealed the September 8, 2021 determination.

198.   Mr. Harmon does not have any notice of what factual or legal issues TWC will assess in Mr. Harmon's appeal hearing, whenever it occurs.

### 4.  Kimberly Hartman

199.   Plaintiff Kimberly Hartman is a Texas resident who works as a bartender. In March of 2020, she became unemployed as a result of the pandemic.

200.   Beginning in March of 2020, Ms. Hartman began attempts to apply for unemployment benefits. Despite calling TWC hundreds of times over the course of the next several

months, she was unable to get through to file an unemployment claim until approximately late July of 2020. When Ms. Hartman filed a claim, she requested backdated benefits to the beginning of her separation from work in March 2020.

201.    On August 3, 2020, TWC issued a Determination of Payment of Unemployment Benefits to Ms. Hartman determining that she was eligible for benefits.

202.    On August 31, 2020, TWC issued a Determination of Payment of Unemployment Benefits, denying Ms. Hartman's request for backdated benefits on the basis that she had not shown good cause to request backdated benefits.

203.    TWC's August 31, 2020 determination did not provide Ms. Hartman with any information regarding the factual or legal basis for TWC's decision.

204.    TWC's August 31, 2020 determination merely stated that Ms. Hartman did not "show good cause for backdating" his claim and cited to sections of the TUCA.

205.    Ms. Hartman was unable to divine any information about the legal basis for TWC's denial of her request from the notice she received.

206.    The sections of the TUCA referenced in the determination do not concern requests for backdated payments.

207.    On information and belief, between August 31, 2020, and March 12, 2021, TWC audited Ms. Hartman's claim.

208.    TWC did not give Ms. Hartman an opportunity to be heard during the audit of her claim.

209.    TWC did not provide Ms. Hartman notice about the audit of her claim.

210.    On March 12, 2021, TWC issued Ms. Hartman two determinations.

211.   The first Determination on Payment of Unemployment Benefits stated that Ms. Hartman had been overpaid $7,582 in unemployment benefits. TWC's reason for the decision was: "We obtained new information and after investigation found you [sic] are not eligible for the benefits we already paid you. For an explanation of why we cannot pay you, please refer to the DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS we mailed you." This determination is attached as Exhibit H.

212.   The second March 12 Determination on Payment of Unemployment Benefits stated Ms. Hartman had been overpaid $4,680 in unemployment benefits. TWC's stated reason for the decision was: "It has been determined that you have been overpaid benefits." This determination is attached as Exhibit G.

213.   On information and belief, the March 12 determinations were a result of TWC's audit of Ms. Hartman's claim.

214.    Because TWC did not promptly act on the information it received that gave it reason to question Ms. Hartman's eligibility, its redetermination of her eligibility was untimely.

215.   The March 12 determinations of overpaid unemployment benefits gave no information about the individualized factual bases for TWC's determinations.

216.   The March 12 determinations gave no information about the legal basis for TWC's determinations. Instead, they listed several sections of the CARES Act, DOL's disaster unemployment regulations, the TUCA, and TWC's unemployment regulations.

217.   The citations to sections of the laws and regulations cited in the March 12 determination did not give Ms. Hartman any information about the factual or legal basis for TWC's determination.

218.    Ms. Hartman was unable to divine any useful information from TWC's citation to various laws and regulations.

219.    Three days later, on March 15, 2021, TWC issued a Determination on Payment of Unemployment Benefits stating: "We can pay you benefits, if you meet all other weekly requirements such as being able, available, and actively searching for work."

220.    On March 29, 2021, TWC issued a Determination on Waiver of Overpaid Unemployment Benefits denying Ms. Hartman a waiver of the allegedly overpaid unemployment benefits.

221.    On April 17, 2021, Ms. Hartman appealed TWC's overpayment determinations.

222.    As of this filing, Ms. Hartman's April 17, 2021 appeal had not been scheduled for a hearing, even though it has been over 11 months since the appeal was filed.

223.    Ms. Hartman does not have any notice of what factual or legal issues TWC will assess in her appeal hearing, whenever it occurs.

### 5.  Jesus Duarte

224.    Plaintiff Jesus Duarte is a Texas resident who works as an instruments and electric technician.

225.    In March of 2020, Mr. Duarte was laid off from his job as a result of the economic slowdown caused by the pandemic.

226.    Shortly after he was laid off, Mr. Duarte filed an application for unemployment benefits. His application was accepted, and he began receiving unemployment benefits in April of 2020.

227.    Mr. Duarte continued to receive unemployment benefits from April of 2020 through September 11, 2021.

228.    At no time while Mr. Duarte was receiving unemployment benefits did TWC give him notice that his continuing claim was subject to overpayment.

229.    On information and belief, in or around September 2021, TWC conducted an audit of Mr. Duarte's claim.

230.    On information and belief, this audit was not conducted in a timely manner.

231.    On September 22, 2021, after Mr. Duarte stopped receiving benefits, TWC sent Mr. Duarte a request to verify his identity using the third-party service ID.me.

232.    Because Mr. Duarte was no longer receiving benefits when he received the request to verify his identity, he did not respond to TWC's request to verify his identity.

233.    TWC did not provide Mr. Duarte notice that failing to verify his identity could result in an overpayment.

234.    To the extent that TWC needed to verify Mr. Duarte's identity in order for him to be eligible for benefits, it was aware of such a need in April 2021.

235.    On September 30, 2021, TWC sent Mr. Duarte three determinations on payment of unemployment benefits stating that it could not pay him benefits because he did not contact TWC as requested to provide additional information about his claim.

236.    On October 1, 2021, TWC sent Mr. Duarte a determination on payment of unemployment benefits stating that it could pay him benefits because his employer had responded to TWC's notice of his claim.

237.    On October 8, 2021, TWC sent Mr. Duarte four determinations on payment of unemployment benefits stating that he was overpaid $39,596 total in benefits for his claim weeks from April 4, 2020, and September 11, 2021.

238.    When TWC issued its determinations that Mr. Duarte had been overpaid unemployment benefits, it did not make a determination on waiver of overpaid CARES act benefits.

239.    To date, TWC has not determined whether Mr. Duarte is entitled to waiver of his allegedly overpaid CARES Act benefits.

240.    None of the determinations that TWC sent Mr. Duarte on October 8 included a factual or legal basis for any of the overpayment amounts. Instead, TWC merely told Mr. Duarte "We obtained new information and after investigation foundyou [sic] are not eligible for the benefits, we already paid you," and, on another determination, "You have been overpaid benefits under the CARES Act." *See* Exhibits D, E, and F.

241.    On October 11, 2021, Mr. Duarte filed an appeal of the October 8 determinations.

242.    On October 14, 2021, Mr. Duarte received three corrected determinations on payment of unemployment benefits from TWC stating that TWC had verified his identity and removed the identity verification hold on his claim. The corrected determinations did not mention the October 8 overpayment determinations.

243.    On October 19, 2021, Mr. Duarte received three determinations on payment of unemployment benefits from TWC that reversed the three determinations dated September 30, 2021. These October 19 determinations stated that Mr. Duarte had either had good cause not to contact TWC or that he had actually contacted TWC. The October 19 determinations also did not mention the October 8 overpayment determinations.

244.    To date, Mr. Duarte still has an overpayment in the TWC system.

245.    Mr. Duarte's appeal has not been scheduled for a hearing, even though it has been over five months since he filed his appeal.

246.    Mr. Duarte does not have any notice of what factual or legal issues TWC will assess in her appeal hearing, whenever it occurs.

### 6.  Texas Association for the Rights of the Unemployed (TARU)

247.    TARU is a membership organization composed of individuals who believe their unemployment rights or benefits have been wrongfully denied. Its purpose is to assist Texans who believe they have been wrongfully denied the right to due process of law and other federal rights related to the receipt of unemployment benefits.

248.    TARU's members have suffered from TWC's policies and procedures complained of in this lawsuit, including:

    a.  Denial of notice and the opportunity to be heard during investigations of continuing eligibility;

    b.  Untimely and unlawful eligibility audits;

    c.  Untimely appeal hearings;

    d.  Failure to issue determinations of waiver for overpaid CARES Act benefits; and

    e.  Inadequate notices of TWC's determinations.

249.    TARU member Evelyn Carriere received unemployment benefits from approximately March of 2020 through June, 2021.

250.    On information and belief, in August or September of 2021, TWC audited Ms. Carriere's account.

251.    TWC did not afford Ms. Carriere notice or an opportunity to respond during its audit of her claim.

252.    In approximately September of 2021, Ms. Carriere received a determination of payment on unemployment benefits similar to Exhibits E and G stating that TWC had obtained new information and that she had been overpaid benefits.

253.    On information and belief, TWC did not act timely on whatever information caused it to audit Ms. Carriere's claim.

254.    Ms. Carriere timely appealed TWC's determination of overpayment. She has not yet received an appeal hearing, even though it has been approximately six months since she filed her appeal.

255.    When TWC determined that Ms. Carriere was overpaid CARES Act benefits, it did not determine whether to waive the overpayment.

256.    TWC's notice of claim denial and overpayment for Ms. Carriere was inadequate because it did not give her information for the factual or legal basis underlying the overpayment determination.

## VI.    CLAIMS FOR RELIEF

A.    _Cause of Action 1: Failure to provide notice and an opportunity to be heard to audited claimants, in violation of 42 U.S.C. § 1983_

257.    Plaintiffs allege and incorporate by reference each allegation contained in this Complaint.

258.    At all times relevant to the facts stated in this Complaint, Defendants have acted and continue to act personally or through their authorized agents and representatives.

259.    At all times relevant to the facts stated in this Complaint, Defendants have acted under color of Texas law, including the statutes, laws, rules, regulations, customs, and usages of the State of Texas and the TWC.

260.    Defendants deprived Plaintiffs Stephanie Stout, Kim Hartman, Jesus Duarte, and TARU of the due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution by maintaining a policy and practice of failing to provide Plaintiffs and other unemployment claimants with notice and an opportunity to be heard during the audit of their claims.

261.    Under 42 U.S.C. § 1983, this Court may remedy Defendants' violation of Plaintiffs Stephanie Stout, Kim Hartman, Jesus Duarte, and TARU's federal rights under color of state law and issue all declaratory and equitable relief necessary to prevent future violations.

B.    *Cause of Action 2: Failure to provide notice and an opportunity to be heard to audited claimants, in violation of the Social Security Act*

262.    Plaintiffs allege and incorporate by reference each allegation contained in this Complaint.

263.    At all times relevant to the facts stated in this Complaint, Defendants have acted and continue to act personally or through their authorized agents and representatives.

264.    The regulations promulgated by DOL affecting the mandates of the Social Security Act require that state agencies investigating claims must provide claimants with notice and an opportunity to respond to information that is adverse to their claim.

265.    Defendants' policy of auditing claims without providing claimants an opportunity to respond thus denies claimants, including Plaintiffs Kimberly Hartman, Stephanie Stout, Jesus Duarte, and TARU, their rights under the Social Security Act.

C.    *Cause of Action 3: Untimely redeterminations of eligibility for audited claimants, in violation of 42 U.S.C. § 1983*

266.    Plaintiffs allege and incorporate by reference each allegation contained in this Complaint.

267.    At all times relevant to the facts stated in this Complaint, Defendants have acted and continue to act personally or through their authorized agents and representatives.

268.    At all times relevant to the facts stated in this Complaint, Defendants have acted under color of Texas law, including the statutes, laws, rules, regulations, customs, and usages of the State of Texas and the TWC.

269.     Defendants deprived Plaintiffs Stephanie Stout, Kim Hartman, Jesus Duarte, and TARU of their due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution by maintaining a policy, custom, and practice of auditing unemployment claimants' claims in an untimely manner.

270.     Under 42 U.S.C. § 1983, this Court may remedy Defendants' violation of Plaintiffs Stephanie Stout, Kim Hartman, Jesus Duarte, and TARU's federal rights under color of state law and issue all declaratory and equitable relief necessary to prevent future violations.

D.      *Cause of Action 4: Untimely redeterminations of eligibility for audited claimants, in violation of the Social Security Act*

271.     Plaintiffs allege and incorporate by reference each allegation contained in this Complaint.

272.     At all times relevant to the facts stated in this Complaint, Defendants have acted and continue to act personally or through their authorized agents and representatives.

273.     Defendants have failed to ensure the full payment of unemployment benefits eligible to Plaintiffs Stephanie Stout, Kim Hartman, Jesus Duarte, and TARU with the greatest administrative promptness feasible by unlawfully determining them to be ineligible and by requesting that they pay back allegedly overpaid benefits.

274.     Defendants' policy of auditing claims in an untimely manner denies the above-referenced Plaintiffs and other unemployment claimants of their rights under the Social Security Act.

E.      *Cause of Action 5: Failure to provide timely first-level appeals, in violation of 42 U.S.C. § 1983*

275.     Plaintiffs allege and incorporate by reference each allegation contained in this Complaint.

276.     At all times relevant to the facts stated in this Complaint, Defendants have acted and continue to act personally or through their authorized agents and representatives.

277.     At all times relevant to the facts stated in this Complaint, Defendants have acted under color of Texas law, including the statutes, laws, rules, regulations, customs, and usages of the State of Texas and the TWC.

278.     Defendants deprive all Plaintiffs of their due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution by maintaining a policy, practice, or custom of failing to provide them with timely first-level appeals as required by law.

279.     Under 42 U.S.C. § 1983, this Court may remedy Defendants' violation of Plaintiffs' federal rights under color of state law and issue all declaratory and equitable relief necessary to prevent future violations.

F.     *Cause of Action 6: Failure to provide timely first-level appeals, in violation of the Social Security Act*

280.     Plaintiffs allege and incorporate by reference each allegation contained in this Complaint.

281.     At all times relevant to the facts stated in this Complaint, Defendants have acted and continue to act personally or through their authorized agents and representatives.

282.     Defendants have failed to ensure the full payment of unemployment benefits eligible to all Plaintiffs with the greatest administrative promptness feasible by failing to provide timely first-level appeals hearings.

283.     Defendants' policy of failing to provide unemployment claimants, including Plaintiffs, with a timely first-level appeal hearing violates their rights under the Social Security Act.

G.      *Cause of Action 7: Failure to provide determinations and notices of waiver of overpaid CARES Act benefits, in violation of 42 U.S.C. § 1983*

284.    Plaintiffs allege and incorporate by reference each allegation contained in this Complaint.

285.    At all times relevant to the facts stated in this Complaint, Defendants have acted and continue to act personally or through their authorized agents and representatives.

286.    At all times relevant to the facts stated in this Complaint, Defendants have acted under color of Texas law, including the statutes, laws, rules, regulations, customs, and usages of the State of Texas and the TWC.

287.    Defendants deprive Plaintiffs Stephanie Stout, Jesus Duarte, and TARU of their due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution by their custom or practice of failing to provide claimants with a determination of waiver of overpaid unemployment benefits, and/or notice of such determination, as required by law.

288.    Under 42 U.S.C. § 1983, this Court may remedy Defendants' violation of Plaintiffs Stephanie Stout, Jesus Duarte, and TARU's federal rights under color of state law and issue all declaratory and equitable relief necessary to prevent future violations.

H.      *Cause of Action 8: Failure to provide determinations and notices of waiver of overpaid CARES Act benefits, in violation of the Social Security Act*

289.    Plaintiffs allege and incorporate by reference each allegation contained in this Complaint.

290.    At all times relevant to the facts stated in this Complaint, Defendants have acted and continue to act personally or through their authorized agents and representatives.

291.    Defendants have failed to ensure the full payment of unemployment benefits to Plaintiffs Stephanie Stout, Jesus Duarte, and TARU with the greatest administrative promptness

feasible by its custom or practice of failing to provide claimants with a determination of waiver of overpaid unemployment benefits, or notice of such determination, as required by law.

292.    Defendants' custom or practice of failing to provide unemployment claimants, including Plaintiffs Stephanie Stout, Jesus Duarte, and TARU with a determination of waiver of overpaid unemployment benefits, or notice of such determination, thus violates their rights under the Social Security Act.

I.      *Cause of Action 9: Failure to provide adequate notice of adverse determinations, in violation of 42 U.S.C. § 1983*

293.    Plaintiffs allege and incorporate by reference each allegation contained in this Complaint.

294.    At all times relevant to the facts stated in this Complaint, Defendants have acted and continue to act personally or through their authorized agents and representatives.

295.    At all times relevant to the facts stated in this Complaint, Defendants have acted under color of Texas law, including the statutes, laws, rules, regulations, customs, and usages of the State of Texas and the TWC.

296.    Defendants deprive Plaintiffs of the due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution by maintaining a custom or practice of failing to provide claimants with adequate notices of adverse determinations that includes the factual and legal basis for TWC's determination.

297.    Under 42 U.S.C. § 1983, this Court may remedy Defendants' violation of Plaintiffs' federal rights under color of state law and issue all declaratory and equitable relief necessary to prevent future violations.

J.      _Cause of Action 10: Failure to provide adequate notice of adverse determinations, in violation of the Social Security Act_

298.    Plaintiffs allege and incorporate by reference each allegation contained in this Complaint.

299.    At all times relevant to the facts stated in this Complaint, Defendants have acted and continue to act personally or through their authorized agents and representatives.

300.    Defendants have failed to ensure the full payment of unemployment benefits to Plaintiffs with the greatest administrative promptness feasible by maintaining a custom or practice of failing to provide claimants with adequate notices of adverse determinations.

301.    Defendants have failed to provide unemployment claimants whose claims are denied with an opportunity for a fair hearing because TWC's notices of adverse determinations are not sufficient to allow claimants to prepare for their appeal hearings.

302.    Defendants' policy of failing to provide unemployment claimants, including Plaintiffs, with adequate notices of adverse determinations violates their rights under the Social Security Act.

**VII.   PRAYER FOR RELIEF**

303.    Wherefore, Plaintiffs request that the Court grant the following relief:

a.  Declare that Defendants' policies, practices, and customs violate unemployment claimants' due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution;

b.  Declare that Defendants' policies, practices, and customs violate the Social Security Act;

c.  Order that TWC provide all unemployment benefits to Plaintiffs as required by law;

      d.   Award Plaintiffs their reasonable costs and expenses of this litigation under 42

           U.S.C. § 1988; and,

      e.   Award Plaintiffs such other relief as the Court deems just and proper.

                                Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID, INC.

**_/s/ David Mauch_**
David Mauch
Texas Bar No. 24086837
121 S. Main St., Ste. 100
Victoria, TX 77901
Phone: (361)237-1681
Fax: (361)576-1633
dmauch@trla.org

Douglas L. Stevick
Texas Bar No. 00797498
301 S. Texas Ave.
Mercedes, TX 78570
Phone: (956) 982-5557
Fax: (956) 835-7035
dstevick@trla.org

Melissa A. Jacobs
Texas Bar No. 24046144
4920 N IH 35
Austin, Texas 78751
Phone/Fax: (512) 374-2789
mjacobs@trla.org

Elizabeth T. Leiserson
_Pro hac vice application forthcoming_
Tennessee Bar No. 036095
SOUTHERN MIGRANT LEGAL
SERVICES
A Project of Texas RioGrande Legal Aid,
Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Tel: (615) 538-0725
Fax: (615) 538-0678
eleiserson@trla.org

E. Sidonia Mitchell
_Application for admission to Western_
_District pending_
Texas Bar No. 24125331
301 S. Texas Ave.
Mercedes, TX 78570
Telephone: (956) 447-4800
Fax: (956) 825-7035
Email: smitchell@trla.org