IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Texas Association for the Rights of the Unemployed, Kathryn Kawazoe, Stephanie Stout, Kimberly Hartman, Charles Harmon, and Jesus Duarte,<br><br>*Plaintiffs*,<br><br>v.<br><br>Texas Workforce Commission and Ed Serna, Executive Director, Texas Workforce Commission, in his official capacity<br><br>*Defendants*. | Civil Action No. 1:22-cv-00417 |

## **DEFENDANTS' PARTIAL MOTION TO DISMISS WITH BRIEF IN SUPPORT**

Defendants Texas Workforce Commission ("TWC") and Ed Serna, Executive Director of the Texas Workforce Commission, file this Partial Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and would respectfully show this Honorable Court the following:

### INTRODUCTION

In this suit, Plaintiffs have challenged the Texas Workforce Commission's ("TWC") administration of pandemic unemployment compensation programs established by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Continued Assistance Act ("CAA"), and American Rescue Plan ("ARP"). Complaint at ¶¶ 2–8. This complaint requests: 1) declarations that Defendants' policies, practices, and customs violate the Fourteenth Amendment and Social Security Act ("SSA") and 2) injunctions ordering the TWC provide unemployment benefits to Plaintiffs. Complaint at ¶ 303.

The Court should dismiss all of Plaintiffs' claims against Defendant TWC and Plaintiffs' request for monetary relief under Rule 12(b)(1) because they are barred by the state's sovereign immunity under the Eleventh Amendment. Further, Plaintiff Texas Association for the Rights of the Unemployed ("TARU") lacks associational standing to pursue its claims and request for the award of unemployment benefits because individual participation by its members would be required in this suit.

Plaintiffs' claims purportedly brought under the SSA should be dismissed under Rule 12(b)(6) because the Fifth Circuit does not recognize a private right of action to declare a state agency's administration of unemployment assistance programs violative of the SSA. And Count 3—complaining that the TWC issued unemployment eligibility redeterminations after the state law deadline—should be dismissed because it fails to state a claim under 42 U.S.C. § 1983. These claims are not supported by factual allegations describing a deprivation of a right, privilege, or immunity secured by the Constitution or federal law.

## ARGUMENT

**I.      Standard of Review.**

   A.      Rule 12(b)(1).

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party

bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted). An action may be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on any of three separate grounds: (1) the complaint standing alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint, the undisputed facts, and the court's resolution of disputed facts. *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989). Eleventh Amendment immunity operates as a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state. *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002); *Skelton v. Camp*, 234 F.3d 292, 295-96 (5th Cir. 2000).

    B.    <u>Rule 12(b)(6)</u>.

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint under Federal Rule of Civil Procedure 8. To defeat a Rule 12(b)(6) motion, a plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "factual allegations must be placed in a context plausibly suggesting (not merely consistent with) *each* required element of the claim against each defendant." *Kan v. OneWest Bank, FSB*, 823 F.Supp.2d 464, 468 (W.D. Tex. 2011) (citing *Iqbal*, 566 U.S. at 683).

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint, but is not bound to accept "legal conclusions couched as factual allegations." *Kan*, 823 F.Supp.2d at 468; *Tuchman v. DSC Commc'ns Corp.*, 14

3

F.3d 1061, 1067 (5th Cir. 1994) ("[A] plaintiff must plead specific facts, not mere conclusory allegations.").

**II.     Plaintiffs' Claims Against the TWC Should be Dismissed Pursuant to Rule 12(b)(1).**

Under the Eleventh Amendment, federal courts lack jurisdiction to entertain suits in law or equity against a non-consenting state, or a state agency, by its own citizens. *See In re Soileau,* 488 F.3d 302, 305 (5th Cir. 2007); *Martinez v. Tex. Dep't of Criminal Justice,* 300 F.3d 567, 573 (5th Cir. 2002). For Eleventh Amendment immunity purposes, a suit against a state agency is a suit against the state. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 n.9 (1983). The TWC is an agency of the State of Texas. Tex. Lab. Code Ann. § 301.001. Accordingly, all claims against it are barred by the Eleventh Amendment. *See Cozzo v. Tangipahoa Parish Council--President Government*, 279 F.3d 273, 281 (5th Cir. 2002) ("When a state agency is named the defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity."); *Daigle v. Gulf State Utilities Co., Loc. Union No. 2286*, 794 F.2d 974, 980 (5th Cir. 1986) (holding the Texas Employment Commission had not waived its sovereign immunity from suit in federal court).

    A.     <u>42 U.S.C. § 1983 does not waive the TWC's sovereign immunity.</u>

Section 1983 establishes a cause of action for alleged deprivations of civil liberties, but it does not waive states' sovereign immunity.[1] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, (1989); *Aguilar v. Texas Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998). The Eleventh

---

[1] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983.

Amendment bars claims against a state brought pursuant to Section 1983. *Aguilar*, 160 F.3d at 1054. Thus, all of Plaintiffs' claims alleged under Section 1983 against the TWC are barred by the TWC's Eleventh Amendment immunity.

In *Salinas v. Tex. Workforce Commission*, an unemployment benefits claimant brought an action against the TWC and state employees under 42 U.S.C. § 1983 challenging TWC determinations that he was overpaid unemployment benefits, owed the TWC reimbursement for the overpaid benefits, and was ineligible for further benefits. *Salinas v. Texas Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014). The Fifth Circuit affirmed the District Court's dismissal of his suit, holding the Eleventh Amendment barred the claimant's Section 1983 and state law claims against the TWC. *Id.* at 372–73. As in *Salinas*, Plaintiffs have filed suit under Section 1983 following TWC determinations of overpaid unemployment benefits. Complaint at §§ VI A, C, E, G, and I. Under *Will*, *Aguilar*, and *Salinas*, the Court should dismiss all of Plaintiffs' claims alleged against the TWC under Section 1983 for want of subject-matter jurisdiction.

  B. <u>The SSA does not abrogate the TWC's sovereign immunity against Plaintiffs' claims.</u>

In *California Department of Human Resources Development v. Java*, the Supreme Court held that a California statute was in conflict with Section 503 of the SSA. 402 U.S. 121, 135 (1971). But the question of whether California had waived its sovereign immunity to suit under the SSA was not addressed in this case. *See generally id.* at 121–35. Three years later, in *Edelman v. Jordan*, the Supreme Court held the SSA **did not** waive states' sovereign immunity under the Eleventh Amendment. 415 U.S. 651, 674 (1974) ("This provision [of the SSA] by its terms did not authorize

5

suit against anyone, and standing alone, fell far short of a waiver by a participating State of its Eleventh Amendment immunity.").

When the Supreme Court ruled in *Java*, Congressional abrogation of state sovereign immunity was an unsettled question. Subsequent cases, however, now foreclose the possibility of suit against a state agency under the SSA. In *Seminole Tribe of Florida v. Florida*, the Supreme Court held that Congress may abrogate a state's sovereign immunity if it has unequivocally expressed its intent to abrogate the immunity and has acted pursuant to a valid exercise of power. 517 U.S. 44, 55 (1996). The SSA does not unequivocally express Congress' intent to abrogate states' sovereign immunity. *See generally* 42 U.S.C. § 503; *Edelman*, 415 U.S. at 674. And even if Congress had so intended, the Supreme Court now recognizes that Congress lacks the power under Article I of the Constitution to make a state suable in federal court. *See Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 636–37 (1999); *see also Seminole Tribe*, 517 U.S. 44 at 72–73 ("…Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.").

Congress does, however, have the power to abrogate state sovereign immunity through legislation enacted to enforce the provisions of the Fourteenth Amendment. *Seminole Tribe*, 44 U.S. at 59; *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452–456 (1976). But there is no indication the SSA was intended to enforce the Fourteenth Amendment. For these reasons, the Court should dismiss all of Plaintiffs' claims alleged against the TWC under the SSA for want of subject-matter jurisdiction.

C. <u>Plaintiffs' request for unemployment benefits is a request for monetary relief barred by the state's sovereign immunity.</u>

Defendants TWC and Ed Serna have sovereign immunity under the Eleventh Amendment against Plaintiffs' request for the award of unemployment benefits. *Daigle*, 794 F.2d at 980. Whether sought from the TWC or a TWC officer or employee, the Eleventh Amendment bars this type of relief. *See Edelman*, 415 U.S. at 663 ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *see also Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 256-57 (2011) ("*Ex Parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury."). In *Edelman*, the Supreme Court held that when a party seeks "the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." 415 U.S. at 663.

A plaintiff seeking only injunctive relief may sue an official in her official capacity under Section 1983. *Will*, 491 U.S. at 71 n. 10. But the Eleventh Amendment bars monetary damages as relief when state officials are sued in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 518 (7th Cir. 2021) ("Under [the *Ex Parte* Young] doctrine a plaintiff may proceed in federal court against a state official for the limited purpose of obtaining prospective relief against an ongoing violation of federal law."). Accordingly, Plaintiffs may obtain monetary relief from neither the TWC nor the TWC's executive director, Defendant Ed Serna. Thus, the Court should dismiss this request for relief.

## II. Plaintiff TARU Lacks Standing.

To have Article III standing, a Plaintiff must meet three required elements: (1) it must have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent"; (2) there is "a causal connection between the injury and the conduct complained of"; and (3) the injury is likely to be redressed by a favorable decision. *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Further, because TARU is seeking declaratory and injunctive relief, it must demonstrate there is a substantial likelihood it will suffer injury in the future. *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 458 (5th Cir. 2005); *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003).

TARU cannot show such a harm in its own right. It lacks standing itself because, as an association—not an unemployed worker—it is not eligible for unemployment benefits. *See* Tex. Lab. Code Ann. § 207.021 (listing unemployment benefits eligibility requirements). And TARU's members' interests do not extend jurisdiction over TARU's claims under the doctrine of associational standing. *See Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 827-28 & n.5 (5th Cir. 1997) (citing *Wash. State Apple*, 432 U.S. at 333) (organization can assert associational standing only if it can show that "the nature of the case does not require the participation of the individual affected members as plaintiffs to resolve the claims or prayers for relief at issue").

TARU could assert associational standing only if it could show: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ass'n. of Am. Physicians & Surgeons, Inc. v.*

*Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). But Plaintiffs' complaint and request for relief indicate that TARU's members' participation in this case would be essential.

First, TARU's request for monetary relief in the form of unemployment benefits allegedly owed to TARU's members would necessarily constitute monetary damages to TARU's members. Associational standing is precluded when an organization seeks damages on behalf of its members. *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 554 (1996). Thus, TARU lacks standing to pursue this relief.

Further, with respect to TARU's request for declaratory or injunctive relief, Plaintiffs would be required to participate by offering testimony and providing evidence in order to resolve their claims. As they have alleged due process violations, under the test articulated in *Matthews v. Eldridge*, the Court must consider the members' private interests affected by the TWC's procedures. 424 U.S. 319, 321 (1976). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id*. (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Whether the TWC's procedures are adequate would require inquiring into each member's particular situation; thus their participation in this case would be required.

Moreover, in order to determine whether the timeliness of the TWC's actions violated due process—more accurately stated as whether or not any delay in the TWC's administrative procedure was "unreasonable" so as to deny Plaintiffs their due process right to be heard at a meaningful time—TARU's members would be required to provide evidence of the length of delay they experienced. *See United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 565 (1983). The overarching factor in this inquiry is the length of the

delay. *Id*. But TARU's members reasonably can be presumed to have all experienced varying lengths of delay. Further, the delays in the individual members' cases could all be justified by different reasons. *See id*. ("Closely related to the length of the delay is the reason the Government assigns to justify the delay."). Simply put, "the determination necessarily depends on the facts of the particular case." *Id*. Thus, TARU's members' participation would be required for this balancing test.

Finally, as demonstrated by the multiple exhibits Plaintiffs supplied in their Complaint, the notices received by the Plaintiffs are not identical. Complaint, Documents 1-5–1-9. Each notice supplies different information, and whether that information is sufficient to provide adequate and reasonable notice in satisfaction of due process must be determined with reference to each individual notice. *See e.g. Gonzales v. Texas Emp't Comm'n*, 653 S.W.2d 308, 311 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.) (examining whether the contents of an unemployment benefits denial notice violated due process). TARU's members would need to supply evidence of each notice they received from the TWC, the contents of each notice, and testimony regarding the timing of these notices in relation to any TWC administrative action, hearing, or deadline. *See Matter of Christopher*, 28 F.3d 512, 519 (5th Cir. 1994) (holding that due process requires "notice that is both adequate to apprise a party of the pendency of an action affecting its rights and timely enough to allow the party to present its objections"). To resolve these issues, TARU's members would be required to participate.

For these reasons, TARU's lack of standing precludes subject-matter jurisdiction over TARU's claims, and TARU should be dismissed from this suit.

### III. Plaintiffs' Suit Contains Multiple Claims That Should Be Dismissed Pursuant to Rule 12(b)(6).

#### A. Plaintiffs fail to state a Section 1983 claim against the TWC.

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."[2] *Will*, 491 U.S. at 71. Accordingly, Plaintiffs are incapable of stating a claim under Section 1983 against the TWC. Likewise, Plaintiffs may not maintain a cause of action against Defendant Ed Serna in his official capacity for monetary damages.[3] *Id.* at 71. Under Rule 12(b)(6), the Court should dismiss Plaintiffs' Section 1983 claims against the TWC and Plaintiffs' claim for monetary relief entirely.

#### B. Plaintiffs allegations of violations of the SSA fail to state claims for which relief may be granted.

Although the Supreme Court entertained a suit brought directly under the SSA in *Java*, modern jurisprudence has evolved such that the question is no longer whether a statute precludes a private right of action but whether the law creates one. *Zambrano v. Reinert*, 291 F.3d 964, 972 (7th Cir. 2002) (Easterbrook, J., concurring). Whether a federal statute creates a private right of action, or whether a right guaranteed by a federal statute may be enforced through Section 1983,

---

[2] Thus, a plaintiff may not pursue a claim under Section 1983 against a state agency. *See Will*, 491 U.S. at 70–71 (holding that the Michigan Department of State Police was not a "person" suable under Section 1983).

[3] A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Graham*, 473 U.S., at 167, n. 14; *Ex parte Young*, 209 U.S. 123, 159–160 (1908).

unambiguous congressional intent to confer an individual right is a prerequisite for both. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–84 (2002).

The SSA does not authorize suit against anyone. *Edelman*, 415 U.S. at 674. Section 503 of the SSA provides, in relevant part:

> (a) Provisions required
>
> The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—
>
> (1) Such methods of administration ... as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due; and
>
> (2) Payment of unemployment compensation solely through public employment offices or such other agencies as the Secretary of Labor may approve; and
>
> (3) Opportunity for a fair hearing before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied;
>
> …

42 U.S.C. § 503. These provisions do not expressly provide a private right of action. Indeed, these provisions do not bind the states, but rather the Secretary of Labor, commanding the Secretary not to certify payment of federal funds to states unless their laws contain certain provisions. *Id*. Spending provisions such as these do not create rights enforceable through private action unless the statute explicitly confers such rights. *See Gonzaga*, 536 U.S. at 273–74. Section 503 of the Social Security Act does not explicitly confer these rights, and thus does not confer a private right of action.

In addition, it would be unavailing for Plaintiffs to replead their causes of action under Section 1983. In *Gonzaga*, the Supreme Court held that a private right of action under Section 1983 could only be maintained against the deprivation of rights, not "benefits" or "interests," and if a

federal statute speaks only to a Secretary, directing that federal funds be withheld in specific situations, the statute does not confer enforceable rights. *Id*. at 287. The Supreme Court followed this reasoning again in *Armstrong v. Exceptional Child Center, Inc.*, when holding that the Medicaid Act, which was phrased as a directive to the federal agency charged with approving state Medicaid plans, did not contain "rights-creating language needed to imply a private right of action." 575 U.S. 320, 331 (2015). Like the Medicaid Act and the Family Educational Rights and Privacy Act (at issue in *Gonzaga*), Section 503 of the SSA directs the Secretary of Labor not to certify payments to states unless their unemployment compensation laws include certain provisions. 42 U.S.C. § 503. It does not create a federal right to sue the states if they fail to codify those provisions into state legislation.

Of course, the Supreme Court's approach to Section 1983 pre-*Gonzaga* was much less restrictive. *Johnson v. Hous. Auth. Of Jefferson Par.*, 442 F.3d 356, 360 (5th Cir. 2006). Very few statutes now are held to confer rights enforceable under Section 1983. *Id*. But pre-*Gonzaga*, the Supreme Court permitted suits under Section 1983 based on violations of various provisions of the SSA. *See e.g. Maine v. Thiboutot*, 448 U.S. 1 (1980); *Rosado v. Wyman*, 397 U.S. 397 (1970). Nonetheless, the Court should follow the Supreme Court's more recent guidance and decline to hold that *Java* enables Plaintiffs to state a claim under the SSA—or under Section 1983 based on alleged violations of the SSA—in this case.

To illustrate, this Court should rule as the Northern District of Illinois recently ruled, holding that while an individual could, under *Java*, state a claim by alleging that a state statute was inconsistent with the SSA's "when due" clause, the plaintiffs failed to state a claim because they

13

simply asserted that Illinois state officials violated the SSA. *Sherwood v. Richards*, No. 20 C 7285, 2022 WL 408273, at *2–3 (N.D. Ill. Feb. 10, 2022).

> Instead of alleging that an Illinois statute is inconsistent with § 503 and seeking to enjoin that statute, plaintiffs ask this Court, under § 1983, to force the State to process and pay claims promptly and to provide hearings. Section 503, however, does not require States to do those things. It only requires the Secretary not to certify the State for funding if that State's laws do not provide for those things. Again, plaintiffs do not allege that an Illinois statute is inconsistent with § 503, and nothing in the text of § 503 grants a private right of action to sue a State for the relief these plaintiffs seek. Under *Gonzaga*, plaintiffs have no private right of action for the relief they seek in Count I, and this Court is not at liberty to extend *Java*.

*Id*. at *4. Similarly, Plaintiffs in this case do not assert that a Texas statute is inconsistent with Section 503. *See generally* Complaint. Plaintiffs argue that Defendants have failed to act in accordance with the SSA. Complaint at VI B, D, F, H, J. Thus, as in *Sherwood*, the Court should rule Plaintiffs have failed to state a claim under the SSA.

    C.    <u>Plaintiffs' Cause of Action 3 does not state a Section 1983 claim.</u>

"Section 1983 does not ... provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law." *Jones v. City and County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Plaintiffs' Complaint is devoid of any factual allegations showing how Defendants' alleged "policy, custom, and practice of auditing unemployment claimants' claims in an untimely manner" violated any federal right. Plaintiffs' factual allegations are limited to alleging that the TWC's audits constitute untimely "redeterminations" in violation of Tex. Lab. Code § 212.053. Complaint at ¶¶ 83–93. These allegations complain of a possible violation of state law, but not an infringement of a federal right. Plaintiffs have not met their burden of demonstrating a federal right against a deprivation of unemployment benefits past a specified date, much less a redetermination or audit of their receipt

14

of unemployment benefits at a certain time. And the conclusory allegation that the timing of these audits violated Plaintiffs' due process rights is insufficient to state a Section 1983 claim.[4] *See e.g. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

## CONCLUSION

Defendants respectfully request that their Partial Motion to Dismiss be granted and: 1) all claims against the TWC be dismissed; 2) all claims for monetary relief—specifically Plaintiffs' request for the Court to order "that TWC provide all unemployment benefits to Plaintiffs as required by law"—be dismissed; 3) all claims brought by Plaintiff TARU be dismissed; 4) all claims purportedly brought under the SSA be dismissed; and 5) Plaintiffs' Cause of Action 3 be dismissed.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant
Attorney General

SHAWN COWLES
Deputy Attorney General
for Civil Litigation

---

[4] The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Id.* at 348 (*citing Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring). Plaintiffs fail to explain how the date their alleged deprivation occurred deprived them of notice and opportunity to be heard.

ALISON ANDREWS
Chief, Tax Litigation Division

*s/ Kyle Pierce Counce*
KYLE PIERCE COUNCE
Assistant Attorney General
Tax Litigation Division
State Bar No. 24082862
P. O. Box 12548
Austin, Texas 78711-2548
512-463-3112
512-478-4013 Fax
kyle.counce@oag.texas.gov

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I do hereby certify that on June 2, 2022, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means:

Dave Mauch
Texas Rio Grande Legal Aid
121 S. Main St
Suite 100
Victoria, TX 77901
361-237-1681
Fax: 361-576-1733
dmauch@trla.org

Douglas L. Stevick
Texas Rio Grande Legal Aid, Inc.
5439 Lindenwood Ave.
St. Louis, MO 63109
956-582-5557
Fax: 956-825-7035
dstevick@trla.org

Melissa Anne Jacobs
Texas Rio Grande Legal Aid, Inc.
4920 N IH 35
Austin, TX 78751
512-374-2789
Fax: 512-447-3940
mjacobs@trla.org

                                                 *s/ Kyle Pierce Counce*
                                                 KYLE PIERCE COUNCE
                                                 Assistant Attorney General