IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS ASSOCIATION FOR THE RIGHTS OF THE UNEMPLOYED, KATHRYN KAWAZOE, STEPHANIE STOUT, KIMBERLY HARTMAN, and CHARLES HARMON, JESUS DUARTE, | § § § § § § § | No. 1:22-CV-417-DAE |
| Plaintiffs, | § § | |
| vs. | § § | |
| EDWARD SERNA, Executive Director, Texas Workforce Commission, in his official capacity, | § § § § | |
| Defendant. | § § § | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
FIRST AMENDED MOTION FOR PARTIAL DISMISSAL

The matter before the Court is Defendant Edward Serna, Executive Director of the Texas Workforce Commission, in his official capacity's ("Defendant" or "Serna") First Amended Motion for Partial Dismissal.  (Dkt. # 13.)  On March 8, 2023, the Court held a hearing on this matter.  After careful consideration of the memoranda filed in support of and in opposition to the motion, as well as arguments of counsel at the hearing, the Court, for the reasons that follow, **GRANTS IN PART** and **DENIES IN PART** the motion for partial dismissal.

<u>BACKGROUND</u>

On May 3, 2022, Plaintiffs Texas Association for the Rights of the Unemployed ("TARU"), Kathryn Kawazoe, Stephanie Stout, Kimberly Hartman, Charles Harmon, and Jesus Duarte (collectively, "Plaintiffs") filed suit in this Court, challenging the Texas Workforce Commission's ("TWC") administration of Covid-19 pandemic unemployment compensation programs.  (Dkt. # 1.)  Plaintiffs' amended complaint seeks relief pursuant to 42 U.S.C. § 1983 based on Defendants' alleged denial of Plaintiffs' due process rights guaranteed by the Fourteenth Amendment, as well as for violations of the Social Security Act, 42 U.S.C. § 503(a)(1).  (<u>Id.</u>)

A.    <u>Social Security Act</u>

In 1935, Congress passed the Social Security Act, creating the framework for state unemployment compensation programs nationwide.  In <u>California Department of Human Resources Development v. Java</u>, the Supreme Court examined the legislative history of the Social Security Act, observing that the purpose of unemployment compensation was "to give prompt if only partial replacement of wages to the unemployed, [and] to enable workers 'to tide themselves over until they get back to their old work or find other employment, without having to resort to relief.'"  402 U.S. 121, 131 (1971) (quoting H.R. Rep. No. 615, 74th Cong., 1st Sess., 7 (1935)).

Among others, the Social Security Act requires states to administer benefits in a manner that is "reasonably calculated to insure full payment of unemployment compensation when due," and for states to provide an "[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied."  42 U.S.C. § 503(a)(1), (3).  In Texas, the Social Security Act's unemployment provisions are administered by the TWC pursuant to the Texas Unemployment Compensation Act ("TUCA"), and the regulations promulgated by the TWC thereunder.  See Tex. Labor Code § 201 et seq.  The TUCA and TWC provide that unemployed Texans may apply for and receive unemployment benefits if they meet the criteria set forth in the TUCA so long as they continue to remain eligible.  Id. § 207.021; 40 Tex. Adm. Code § 815.

B.    The CARES Act

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C. § 9001, et seq., commonly denominated the CARES Act, which created new, temporary, federal unemployment insurance programs.  Congress has amended the CARES Act twice since its passage for the purpose of extending the time period of its coverage.  The CARES Act established Pandemic Unemployment Assistance ("PUA"), a temporary federal unemployment program that provided up to seventy-nine weeks of benefits to certain individuals

who were not otherwise eligible for state unemployment insurance benefits.  The

CARES Act states that "the Secretary shall provide to any covered individual

unemployment benefit assistance while such individual is unemployed, partially

employed, or unable to work for the weeks of such unemployment with respect to

which the individual is not entitled to any other unemployment compensation. . . ."

15 U.S.C. § 9021(b).  "Covered individuals" are, in relevant part, those individuals

who are not eligible for certain other compensation or benefits, and who are

otherwise able to and available for work under state law, but are unemployed,

partially unemployed, or unable or unavailable to work for certain designated

reasons relating to the COVID-19 pandemic.  15 U.S.C. § 9021(a)(3).

The CARES Act distributes PUA benefits through states, requiring

that: "[t]he Secretary shall provide the assistance authorized under subsection (b)

through agreements with States which, in the judgment of the Secretary, have an

adequate system for administering such assistance through existing State agencies,

including procedures for identity verification or validation and for timely payment,

to the extent reasonable and practicable."  15 U.S.C. § 9021(f)(1).  The amount of

unemployment compensation paid by a state for individuals such as Plaintiffs, who

are or were allegedly unemployed due to the COVID-19 pandemic, is "computed

under the provisions of applicable State law," 20 C.F.R. § 625.6(a), and increased

by a weekly payment of either $600 or $300, depending on the time period of the

unemployment, 15 U.S.C. § 9023(b)(3)(A).  15 U.S.C. § 9021(d)(2).  States are in

turn reimbursed for the assistance they provide and for administrative expenses.

Id. § 9021(f)(2).

On March 28, 2020, Defendant Serna, acting as the designee of the

Governor on behalf of the state of Texas, entered into an agreement with DOL to

pay PUA to unemployed Texans through the TWC.  (Dkt. # 12-1.)  In the

agreement, TWC agreed to administer PUA under the requirements of the Social

Security Act.  (Id.)  In August of 2020, the TWC announced that it had begun an

agency-initiated audit to identify fraudulent activity among unemployment

claimants.  (Dkt. # 12-2.)

On December 27, 2020, the unemployment provisions of the CARES

Act, including PUA, were extended through March 14, 2021, by the Continued

Assistance for Unemployed Workers Act of 2020, Pub. L. No. 116-260, §§ 201,

203-204, 206.  On March 11, 2021, PUA and other benefits were further extended

through September 6, 2021, by the American Rescue Plan Act of 2021. Pub. L. No.

117-2, §§ 9011, 9013-9014, 9016.  On September 6, 2021, the temporary programs

expired.  However, prior to that date, on May 17, 2021, the Governor of Texas sent

a letter to the Secretary of DOL stating that Texas would "terminate its

participation in the Agreement Implementing the Relief for Workers Affected by

Coronavirus Act, effective June 26, 2021."  https://gov.texas.gov/uploads/

files/press/O-WalshMartin202105171215.pdf.  The Governor asserted that "these unemployment benefits [are] no longer necessary."  Id.  He further stated that "[t]he termination of this agreement means that Texas will opt out of . . . Pandemic Unemployment Assistance . . . ."  Id.

      C.   Plaintiffs' Claims

Plaintiff TARU is "a membership organization composed of individuals who believe their unemployment rights have been wrongfully denied." (Dkt. #12 at 35.)  TARU's "purpose is to assist Texans who believe they have been wrongfully denied the right to due process of law and other federal rights related to the receipt of unemployment benefits."  (Id.)  The individual plaintiffs are residents of the state of Texas, who allegedly lost their employment due to the COVID-19 pandemic and received some sort of PUA assistance, but were eventually denied further PUA benefits, denied PUA backpay, or were subject to a determination of overpayment of PUA benefits.

Plaintiffs allege four claims against Defendants pursuant to § 1983 for violations of the Social Security Act and for denial of Plaintiffs' due process rights guaranteed by the Fourteenth Amendment: (1) failing to provide notice and an opportunity to be heard to audited claimants; (2) untimely redetermining eligibility for audited claimants; (3) failing to provide timely first-level appeals; (4) failing to

provide determinations and notices of waiver of overpaid CARES Act benefits; and (5) failing to provide adequate notice of adverse determinations.  (Dkt. # 12.)

On July 13, 2022, Defendant filed an amended motion for partial dismissal of Plaintiffs' claims.  (Dkt. # 13.)  On July 27, 2022, Plaintiffs filed a response in opposition.  (Dkt. # 21.)  On August 3, 2022, Defendant filed his reply. (Dkt. # 22.)

APPLICABLE LAW

Defendant has moved to dismiss Plaintiffs' claims pursuant to both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. # 13.)

A.    Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when a court lacks statutory or constitutional authority to adjudicate the claim.  Home Builders Assoc. of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).  When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, courts should consider the "jurisdictional attack before addressing any attack on the merits."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  The Court must first address subject matter jurisdiction because, without it, the case can proceed no further.

Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 583 (1999); Ramming, 281 F.3d at 161.

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted).

B.      Rule 12(b)(6)

Federal Rules of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  When analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).  The court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a Court may take judicial notice." Funk v. Stryker

Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting <u>Tellabs, Inc. v. Makor Issues &</u> <u>Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl.</u> <u>Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). However, a court reviewing a complaint "[is] not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> "A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense." <u>Mann v.</u> <u>Adams Realty Co.</u>, 556 F.2d 288, 293 (5th Cir. 1977).

<u>ANALYSIS</u>

Defendant first moves to dismiss pursuant to Rule 12(b)(1) on the basis that TARU lacks standing to assert claims in this case. (Dkt. # 13 at 3.) Defendant then moves to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiffs' claims alleging violations of the Social Security Act are without merit because the Fifth Circuit does not recognize a right of action under § 1983 to declare a state agency's administration of unemployment assistance programs violative of the Social Security Act. (<u>Id.</u> at 7.) Additionally, Defendant contends that Plaintiffs'

9

complaints that the TWC issued unemployment eligibility redeterminations after the state law deadline should be dismissed because Plaintiffs have failed to state a valid due process claim.  (Id. at 10.)

A.    TARU's Standing

Defendant asserts that TARU does not have standing because it is an association, not an unemployed worker, and therefore it is not eligible for unemployment benefits.  (Dkt. # 13 at 4.)  Defendant further contends that TARU lacks associational standing.  (Id.)  For a federal court to have subject-matter jurisdiction, the plaintiff must present a case or controversy under Article III of the Constitution.  TransUnion LLC v. Ramirez, 141 S.Ct. 2190, 2203 (2021).  In other words, the plaintiff must have standing.  Id.  To establish standing, the plaintiff must show: (1) the plaintiff has suffered an injury in fact, (2) there is a casual connection between the injury and the defendant's conduct, and (3) the plaintiff's injury would likely be redressed through judicial relief.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560−61 (1992).

"Under Article III, federal courts do not adjudicate hypothetical or abstract disputes."  TransUnion, 141 S.Ct. at 2203.  The plaintiff must show an "injury in fact that is concrete, particularized and actual or imminent."  Id.  For an injury to be "concrete," it must be "real, and not abstract."  Id. at 2204.  An injury-in-fact cannot be "'conjectural' or 'hypothetical.'"  Susan B. Anthony List v.

10

Driehaus, 573 U.S. 149, 158 (2014) (quoting Lujan, 504 U.S. at 560).  For an injury-in-fact to be "imminent," "there must be at least a 'substantial risk' that the injury will occur."  Stringer v. Whitley, 942 F.3d 715, 721 (5th Cir. 2019) (quoting Susan B. Anthony List, 573 U.S. at 158).  "[A]llegations of possible future injury are not sufficient."  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013).

An organization can have associational standing.  To have associational standing, the organization must show: (1) that its members independently possess Article III standing, (2) "the interests the association seeks to protect are germane to the purpose of the organization," and (3) the claim and the relief requested does not require participation of the individual members.  Ctr. for Biological Diversity v. U.S. EPA, 937 F.3d 533, 536 (5th Cir. 2019).

Defendant argues that TARU cannot meet the third element to demonstrate associational standing.  Defendant argues that Plaintiffs' complaint and requested relief indicate that TARU's members' participation in this case would be essential because each individual TARU member has not had the exact same experience with the TWC.  (Dkt. # 13 at 4.)  According to Defendant, each individual case will have different fact patterns and involve different stages of the administrative process by which the TWC reviews unemployment benefit claims, including verifying identities, determining eligibility, and processing appeals.  (Id. at 4–5.)  Because of this, Defendant asserts that assessing whether the TWC's

procedures are adequate would require the Court to look into each individual member's particular situation, and that each member would be required to participate by offering testimony and providing evidence.  (Id. at 5.)

Plaintiffs respond that TARU has associational standing.  Plaintiffs contend that, although its members might have different, individual fact patterns, their individual harms are the overall result of TWC's systemic policies and practices that may be proven by representative, rather than individual testimony. (Dkt. # 21 at 5.)  Additionally, Plaintiffs maintain that their complaint refers to TWC's practices and policies, and not its individual decisions.  (Id. at 7.) Therefore, according to Plaintiffs, TARU alleges common policies or practices that affect its members equally, making its claims appropriate for associational standing.  (Id.)

TARU's standing depends on its ability to sue for redress of its members' grievances.  Regarding the associational standing test, it is clear that TARU satisfies the first and second prongs.  Regarding the third prong, the Supreme Court has determined that it is prudential, and "the general prohibition on a litigant's raising another person's legal rights is a judicially self-imposed limi[t] on the exercise of federal jurisdiction, not a constitutional mandate."  United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 557 (1996) (citations and quotations omitted).  The third prong focuses on "matters of

administrative convenience and efficiency." Id.  Courts assess this prong by examining both the relief requested and the claims asserted.  Cornerstone Christian Schs. v. Univ. Interscholastic League, 563 F.3d 127, 134 n.5 (5th Cir. 2009).

A party satisfies the third prong if its "claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry." Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd., 627 F.3d 547, 552 (5th Cir. 2010).  However, the third prong does not prohibit altogether individual members of an organization from presenting evidence of their injuries. "[A]n association may assert a claim that requires participation by some members." Hosp. Council of W. Pa. v. City of Pittsburgh, 949 F.2d 83, 89 (3d Cir. 1991) (cited with approval in Ass'n of Am. Physicians, 627 F.3d at 551–52).

Generally, "an association's action for damages running solely to its members would be barred for want of the association's standing to sue." Brown Grp., 517 U.S. at 546.  "Conversely, requests for declaratory or injunctive relief rarely require individual determinations." Hunter v. Branch Banking & Tr. Co., No. 3:12-cv-2437-D, 2013 WL 4052411, at *7 (N.D. Tex. Aug. 12, 2013) (Fitzwater, J.); see also Ass'n of Am. Physicians, 627 F.3d at 551.

Plaintiffs' complaint in this case seeks only declaratory and equitable relief for TARU's allegations that the TWC's policies and practices have resulted in the denial of TARU's members' rights.  (See Dkt. # 12.)  The claims alleged in

13

the complaint do not appear to be the type that would require intensive analysis of injuries sustained by individual members of the organization.  Cf. Kan. Health Care Ass'n, Inc. v. Kan. Dept. of Soc. and Rehab. Services, 958 F.2d 1018 (10th Cir. 1992) (distinguishing claims that could be adjudicated with "a cursory review" by the Court or "with minimal participation from individual [plaintiffs]" from those where a court would have to "undertake a detailed evaluation" of individual involvement).  To the extent some individual participation by members is required, such participation is not prohibited.  Additionally, as Plaintiffs point out, the individual participation of each of TARU's members is not required because the TWC itself likely has all the information it needs regarding each member's claims—the TWC would have all pertinent records regarding the procedures afforded to TARU members in its possession.  (See Dkt. # 21 at 7.)  Accordingly, the Court finds that TARU has associational standing, and it will not dismiss TARU from the suit on this basis.

B.    Plaintiffs' Claims Under the Social Security Act

Defendant next argues that Plaintiffs' claims for violations of the "when due" clause of the Social Security Act, § 503(a)(1), should be dismissed because individual unemployment claimants are not explicitly granted "rights" by the Social Security Act that can be brought pursuant to § 1983.  (Dkt. # 13 at 6.)  In

14

other words, Defendant contends that Plaintiffs' § 1983 claims based on

§ 503(a)(1) fail because that statute does not provide a private right of action.  (Id.)

In their complaint, Plaintiffs seek dual relief under § 1983 for

Defendant's alleged violation of § 503(a)(1) of the Social Security Act, as well as

for violation of their due process rights pursuant to the Fourteenth Amendment.

(Dkt. # 12 at 37–41.)  Section 1983 supplies a private right of action for "the

deprivation of any rights, privileges, or immunities secured by the Constitution and

laws" of the United States against persons acting under color of State law.

42 U.S.C. § 1983.  Regarding their claims brought pursuant to the Social Security

Act, section 503 provides, in relevant part:

> (a) Provisions required
>
> The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—
>
>> (1) Such methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation *when due*; and
>>
>> (2) Payment of unemployment compensation solely through public employment offices or such other agencies as the Secretary of Labor may approve; and
>>
>> (3) Opportunity for a fair hearing before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied; . . .

(b) Failure to comply; payments stopped

Whenever the Secretary of Labor, after reasonable notice and opportunity for hearing to the State agency charged with administration of the State law, finds that in the administration of the law there is—

    (1) a denial, in a substantial number of cases, of unemployment compensation to individuals entitled thereto under such law; or

    (2) a failure to comply substantially with any provision specified in subsection (a);

The Secretary of Labor shall notify such State agency that further payments will not be made to the State until the Secretary of Labor is satisfied that there is no longer any such denial or failure to comply.

42 U.S.C. § 503 (emphasis added).

To support his argument that there is no private right of action, Defendant relies on Sherwood v. Richards, 2022 WL 408273, *1 (N.D. Ill. Feb. 10, 2022) for support.  In Sherwood, an Illinois federal district court noted that nothing in the text of § 503 grants a private right of action to sue a State for relief.  Id. at 3 ("nothing in § 503 suggests an individual has a private right of action to sue the State").  The court also recognized that the Supreme Court has previously held that spending-power statutes like § 503, "do not confer private rights of action and has 'reject[ed] the notion that [the] cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983.'"  Id. (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002)).  The Sherwood court further noted that the Supreme Court had previously considered a cause of action premised

16

on a California statute that conflicted with § 503(a)(1).  See Java, 402 U.S. at 135.

In Java, "[t]he Supreme Court held that the California statute allowing benefits to

be stopped if an employer appealed 'must be enjoined because it is inconsistent

with § 303(a)(1) of the Social Security Act.'"  Id.  The Sherwood district court thus

determined that absent an allegation that a state statute was inconsistent with the

requirements of § 503, "[a]ny claim that a State has not complied with its own

statute would not be a claim over which this Court has jurisdiction."  Sherwood,

2022 WL 408273, at *3.

Here, like Sherwood, the provision of the Social Security Act

challenged—the "when due" provision of §503(a)(1)—explicitly binds the

Secretary of Labor.  Importantly, it does not bind any State, including the State of

Texas.  Instead, § 503(a) informs the Secretary of Labor to "make no certification

for payment to any State unless" that State's law "includes provision" for

"payment of unemployment compensation when due" and an "[o]pportunity for a

fair hearing" for individuals "whose claims" are "denied."  Id. § 503(a)(1), (3).

Section 503 therefore requires nothing from a State—only something of the

Secretary of Labor.  This is because, as the Seventh Circuit has noted, the

unemployment compensation is a "cooperative" program between the federal

government and State governments.  See Zambrano v. Reinert, 291 F.3d 964, 971

(7th Cir. 2002) (Easterbrook, J., concurring).  In such a program, Congress utilizes

its "spending power to condition the receipt of federal funds on certain requirements" and then "directs the Secretary" of the relevant agency "to withhold federal funds" from State programs that do not "comply with [Congress's] conditions."  See Gonzaga, 536 U.S. at 278.  Therefore, for a State to receive the money from the federal government, they must comply with the requirements outlined in the statute.

As the district court asked in Sherwood, "[w]hat happens, then, when the law of a State does not 'include provision' for payment when due or for hearings before denying unemployment compensation?"  Sherwood, 2022 WL 408273, at *3.  The answer to this question is contained within the plain terms of § 503—the Secretary "shall make no certification for payment" to that State.  See id.  The "when due" provision of § 503 speaks only to the Secretary of Labor directing that "no certification for payment" shall be made "to any State" unless provisions for administration and payment have provided for "when due." § 503(a).  Importantly, "nothing in § 503 suggests an individual has a private right of action to sue the State to enforce the section."  Id. (citing Gonzaga, 536 U.S. at 290).  This statement is further bolstered by the Supreme Court's holding that "if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms."  Gonzaga, 536 U.S. at 287, 290 (determining that spending power provisions that speak only to the Secretary with respect to funding

18

are "two steps removed from the interest of individual[s and do] not confer the sort

of '*individual* entitlement' that is enforceable under § 1983") (emphasis in

original).

The Court finds that, upon its independent analysis of § 503(a)(1),

there is nothing in in its language suggesting a private right of action.  The Court

thus agrees with the finding in <u>Sherwood</u> that, with spending power statutes like

§ 503(a)(1), the Supreme Court "reject[ed] the notion that [the] cases permit

anything short of an unambiguously conferred right to support a cause of action

brought under § 1983." <u>Gonzaga</u>, 536 U.S. at 283; <u>Sherwood</u>, 2022 WL 408273,

at *3; <u>see also</u> <u>Sterling v. Feek</u>, No. 3:22-cv-5250, 2022 WL 16699191, at *9

(W.D. Wash. Nov. 3, 2022).[1]  And, unlike <u>Java</u>, there is no conflicting or

---

[1] Plaintiffs argue that the Supreme Court has already decided this issue in several
cases—<u>Rosado v. Wyman</u>, 397 U.S. 397 (1970), <u>Edelman v. Jordan</u>, 415 U.S. 651
(1974), and <u>Maine v. Thiboutot</u>, 448 U.S. 1 (1980)—each time concluding that
federal suits under § 1983 are proper to secure compliance with the provisions of
the Social Security Act on the part of participating States.  (Dkt. # 21 at 8.)
Notably, however, plaintiffs in those cases did not challenge the "when due"
provision of § 503(a)(1) as in this case.  Furthermore, these cases all significantly
predate the Supreme Court's holding in <u>Gonzaga</u>.  Additionally, Plaintiffs' citing
of <u>Fusari v. Steinberg</u>, 419 U.S. 379 (1975), is not persuasive because the
challenge to the "when due" clause of § 503 in that case was brought pursuant to
the Due Process Clause of the Fourteenth Amendment only and not under the
Social Security Act.

Additionally, Plaintiffs' comparison of the Medicaid statutes (Dkt. # 21 at 9 n.3) is
unhelpful because the Medicaid Act contains a direct requirement on state statutes,
whereas here the "when due" clause of § 503 imposes a duty on the Secretary of
Labor.  <u>Compare</u> § 503(a)(1), <u>with</u> 42 U.S.C. § 1396a(a)(8), (10)(A) ("A State plan

inconsistent state statute at issue in this case given that Plaintiffs allege only that Defendant deprived them of "notice and opportunity to be heard during audit of their claims" under § 503(a)(1).  (Dkt. # 12 at 37 ¶260); <u>Java</u>, 402 U.S. at 135. However, § 503 "is phrased as a directive to the Secretary of Labor and says nothing about the rights of unemployment insurance beneficiaries to sue for enforcement of § 503." <u>Sherwood</u>, 2022 WL 408273, at *3.  The Court thus concludes that § 503(a)(1) does not confer a private right of action based on the Social Security Act.  Therefore, Plaintiffs' claims based on §503(a)(1) will be dismissed without prejudice.[2]  Only the constitutional claims made pursuant to the due process clause of the Fourteenth Amendment may go forward.

C.    <u>Plaintiff's Second Cause of Action</u>

Defendant argues that Plaintiffs' second cause of action, alleging "untimely redeterminations of eligibility for audited claimants," fails to assert a Fourteenth Amendment due process violation.  (Dkt. # 13 at 10.)  Defendant contends that the complaint is devoid of any factual allegations showing how

---

for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals . . . .").

[2] As in <u>Sherwood</u>, pursuant to the Supreme Court's rule in <u>Java</u>, the only way the claims could be amended "would be if plaintiffs seek to enjoin [a Texas] statute they allege to be inconsistent with § 503." <u>Sherwood</u>, 2022 WL 408273, at *3.

Defendant's alleged "policy, custom, and practice of auditing unemployment claimants' claims in an untimely manner" violated any federal right.  (Id.)  Instead, Defendant maintains that Plaintiffs' factual allegations are limited to alleging the TWC's audits constitute untimely redeterminations in violation of the Texas Labor Code § 212.053.  (Id. (citing Dkt. # 12 at ¶82-92).)  In other words, Defendant contends that Plaintiffs possibly allege a violation of state law, but not any federal right to due process.  (Id.)  The Court disagrees.

To state a Fourteenth Amendment due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then show that a governmental action resulted in a deprivation of the interest. Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010).  The essential elements of procedural due process under the Constitution are notice and an opportunity to respond.  Finch v. Fort Bend Indep. Sch. Dist., 333 F.3d 555, 562 (5th Cir. 2003) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)).

Plaintiffs' complaint references the Texas Labor Code § 212.053, which gives the TWC only 14 days to issue a redetermination of a claimant's eligibility.  (See Dkt. # 13 at ¶82–92.)  However, this statute does not appear to be the basis of Plaintiffs' due process claim alleged in count two.  Instead, the state statute is referenced by Plaintiff as background context of the claim.  Plaintiffs have alleged facts that, pursuant to the due process clause of the Fourteenth

Amendment, the TWC's alleged practice of conducting untimely eligibility audits robs them of their due process rights because it denies them the opportunity to have a hearing at a meaningful time.  (Dkt. # 12 at 15–16.)  Plaintiffs allege that, because of the TWC's failure to promptly act on information that may call a claimant's eligibility into question, claimants accrue a large balance of overpaid unemployment benefits that the TWC then demands be repaid too long after the claimants have already relied on the benefits for their subsistence.  (Id.)  Plaintiffs have thus properly alleged a Fourteenth Amendment due process claim in count two and it will not be dismissed.

CONCLUSION

Based on the foregoing, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's First Amended Motion for Partial Dismissal.  (Dkt. # 13.)  The Court **GRANTS** Defendant's motion to dismiss as to Plaintiffs' claims based on violations of the Social Security Act, 42 U.S.C. § 503(a)(1), and they are **DISMISSED WITHOUT PREJUDICE.**  The motion is **DENIED** in all other respects.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, March 22, 2023.

_____
David Alan Ezra
Senior United States District Judge

22