IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Texas Association for the Rights of the Unemployed, Kathryn Kawazoe, Stephanie Stout, Kimberly Hartman, Charles Harmon, and Jesus Duarte, | § § § § § | |
| *Plaintiffs*, | § § | Civil Action No. 1:22-cv-00417 |
| v. | § § | |
| Ed Serna, Executive Director, Texas Workforce Commission, in his official capacity | § § § § | |
| *Defendant.* | § § | |

**DEFENDANT'S OPPOSED EMERGENCY MOTION TO STAY DISCOVERY, TO QUASH PLAINTIFFS' 30(b)(6) NOTICE, AND FOR PROTECTIVE ORDERS**

Defendant Ed Serna, ("Serna" or "Defendant") Executive Director of the Texas Workforce Commission ("TWC"), files this Emergency Motion pursuant to Federal Rule of Civil Procedure 26 and would respectfully show this Honorable Court the following:

**INTRODUCTION**

On the morning of February 10, 2023, the Court set a hearing on Defendant's Partial Motion to Dismiss. That afternoon, Plaintiffs served Defendant with: 1) **30** Requests for Production (including subparts)—after having already served **28** Requests for Production in July 2022, 2) a 30(b)(6) notice of deposition with **12** broadly-worded, ambiguous topics covering the TWC's unemployment insurance procedures, and 3) a demand that Defendant Ed Serna supplement his Responses to **23** of the July 2022 Requests for Production.[1] Exhibits 1, 2, 3. On

---

[1] Although characterized as a request for supplementation, this letter requested new information and documents not previously requested. *See generally* Exhibit 3.

February 15, 2023, this Court stayed the discovery deadline in this case pending the Court's ruling on Defendant's Partial Motion to Dismiss under Rule 12(b)(1) and 12(b)(6). On February 16, 2023, the parties agreed to a 45-day extension on the second discovery requests and deposition. On March 22, 2023, the Court partially granted Defendant's Partial Motion to Dismiss and dismissed all of Plaintiffs' claims under the Social Security Act. (ECF No. 35). On that day, the undersigned spoke with Plaintiffs' counsel, who stated he would not be ready until March 29, 2023, to discuss— as directed by the Court in its February 22, 2023, order—whether any "limited amount" of discovery should take place before Defendant's Motion to Dismiss. The parties conferred on March 29, 2023, but Plaintiffs would not agree to *any* limitation of their requests or deposition topics, nor entertain the option of a stay pending a ruling on the Motion to Dismiss.

This matter is presented to the court as an emergency motion because, for these aforementioned reasons, Defendant could not have filed this motion earlier and the burden required to respond to Plaintiffs' discovery requests and intended deposition(s) is much more than even the time remaining until their deadlines (April 26 and May 4). In addition, on March 29, 2023, Defendant filed a Motion to Dismiss under Rule 12(b)(1) asserting that this entire suit should be dismissed because the unemployment benefits disputes between the Plaintiffs and TWC are now moot. (ECF No. 36). Accordingly, the TWC should not be forced to incur the burden of responding to irrelevant discovery requests in a case over which the Court now lacks jurisdiction.

Because of the pending motion to dismiss, the Court should stay discovery until the Court issues a ruling on this motion. While only discovery regarding disputed, *jurisdictional* facts are warranted in this situation, Plaintiffs seek not only discovery on the merits of their claims, but also on vague, irrelevant data concerning TWC's unemployment benefits administration. *See* Exhibit

1. In addition, the Court should also quash Plaintiffs' 30(b)(6) notice of deposition and issue a protective order against designating, preparing for, or attending this deposition or responding to Plaintiffs' written discovery requests, due to the unreasonable burden it would impose on the TWC to comply. The topics are redundant, excessive, and irrelevant. The TWC has been more than cooperative thus far—even giving Plaintiffs direct access to speak with several members of TWC executive staff and allowing ample time and opportunity to conduct discovery—but now that Plaintiffs' disputes are resolved, the Court should relieve the TWC from Plaintiffs' continued harassment. *See* Def's Motion to Dismiss (ECF No. 36) Exhibit 1.

## ARGUMENT

### I.      Motion to Stay

### A.  Good cause exists to stay all discovery until the Court rules on Defendant's 12(b)(1) motion to dismiss Plaintiffs' claims as moot.

It is appropriate to stay discovery until preliminary questions that may dispose of the case are determined. *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) "A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Id*. A district court properly exercises this discretion to stay discovery upon a showing of good cause. Fed. R. Civ. P. 26(c). Good cause for a stay exists here because the balance of any theoretical harm produced by a delay in discovery is outweighed by the possibility that the Court will grant Defendant's pending 12(b)(1) Motion to Dismiss. *See Conquest v. Camber Corp.*, No. 5:13-CV-1108-DAE, 2014 WL 172500, at *1 (W.D. Tex. Jan. 13, 2014); *see also Von Drake v. Nat'l Broad. Co., Inc.*, No. 3–04–CV–0652–R, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004) (staying discovery "may be appropriate where the disposition of a motion to dismiss 'might

preclude the need for the discovery altogether thus saving time and expense'") (*quoting Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F.2d 404, 436 (5th Cir. 1990)).

Should the Court grant Defendant's Motion to Dismiss, Plaintiffs' need for discovery would be eliminated because the Court would not have jurisdiction over the merits. *Conquest*, 2014 WL 172500, at *1 (*citing Sapp v. Mem. Hermann Healthcare Sys.*, 406 F. App'x 866, 871 (5th Cir. 2010)) (affirming district court's stay of discovery when questions of law suggest that the case may not reach a determination on the merits). Under these precedents, any "meager harm" produced by a temporary stay would not outweigh the possibility that Defendant's Motion to Dismiss will be granted and entirely eliminate the need for discovery. *See Conquest*, 2014 WL 172500, at *1*; see also Bickford v. Boerne Indep. Sch. Dist.*, 2016 WL 1430063, at *1 (W.D. Tex. Apr. 8, 2016).

### B. Because Serna's 12(b)(1) motion is not based on any disputed issue of fact, Plaintiffs are not entitled to even jurisdictional discovery.

The decision to grant even *jurisdictional* discovery is discretionary. *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (concluding that the district court did not abuse its discretion in ruling on a Rule 12(b)(1) motion without allowing the plaintiff who filed the action to conduct jurisdictional discovery). A stay of discovery is not appropriate if it could prevent a party from "having a sufficient opportunity to develop a factual base for defending against a dispositive motion." *Conquest*, 2014 WL 172500, at *2. "[S]ome jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact." *In re MPF Holdings U.S. LLC*, 701 F.3d 449, 457 (5th Cir. 2012). However, the party requesting discovery is "not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013) (*quoting Freeman*, 556 F.3d at 342; *see also Petrus*, 833 F.2d at 583) (holding where a

party seeking discovery could not have learned anything through discovery that could have affected the resolution of defendants' dispositive motion, a district court properly defers discovery while deciding the dispositive motion).

Here, a stay is appropriate because the issue of subject matter jurisdiction does not turn on disputed facts. Plaintiffs have: 1) secured the unemployment benefits they alleged they are owed from the TWC in their Complaint; and 2) terminated their administrative appeals for such benefits. *See generally* Def's Motion to Dismiss (ECF No. 36). Under these facts, the Plaintiffs caused their causes of actions to become moot. *See Joyce v. Dejoie*, No. CV 20-3193, 2022 WL 59392 at *8, n. 3 (E.D. La. Jan. 6, 2022) (dismissing due process claim for declarations and injunctions related to pandemic unemployment benefits as moot when plaintiffs received benefits sought). No other facts are relevant to Defendant's Motion; thus, no discovery to obtain evidence for or against these facts is warranted. Accordingly, Plaintiffs cannot demonstrate any need to jurisdictional discovery to oppose Defendant's 12(b)(1) motion to dismiss.[2] In the interests of efficiency, conservation of resources, and avoiding needless and costly discovery burdens, the Court should issue a stay of all discovery pending a ruling on Defendant's Motion to Dismiss.

**C. Plaintiffs cannot explain why the discovery they seek would be relevant to the arguments raised in Defendant's Motion to Dismiss.**

Even if disputed facts did exist, Plaintiffs could only speculate that discovery might reveal *evidence*—which they have failed to describe thus far—to refute the facts upon which Defendant's motion relies. "Mere speculation is not sufficient to support a request for jurisdictional

---

[2] Even if Plaintiffs did dispute testimony on these facts, Plaintiffs were themselves witnesses to these experiences, rendering discovery on these matters unnecessary. *See* Fed. R. Civ. P. 26(b)(1) (defining the scope of available discovery with reference to the parties' relative access to information).

discovery." *Brashear v. Panini Am., Inc.*, No. 3:19-CV-201-L, 2020 WL 13413474, at *7 (N.D. Tex. May 21, 2020); *see also Catalyst Medium Four, Inc. v. CardShark, LLC*, 2015 WL 1412591, at *8 (W.D. Tex. Mar. 26, 2015) (concluding that a party's "request for jurisdictional discovery in the hopes it might, with any luck, reveal jurisdiction is a textbook fishing expedition"). Based on Plaintiffs' continued insistence on discovery even beyond the merits—unrelated to the question of mootness—it is difficult to label Plaintiffs' discovery efforts as anything other than a "textbook fishing expedition." And their eleventh-hour attempt to cast a wide net seeking anything of interest before this case is dismissed should not be permitted.

Defendant expects Plaintiffs to claim that discovery is needed to show: 1) "whether Plaintiffs can reasonably expect that they may be subject to Defendant's allegedly unlawful policies again in the future" or 2) whether "the TWC's supposed voluntary cessation of its practices" does not moot the Plaintiffs' claims. *See* (ECF No. 32) at ¶¶ 16, 18. These arguments reveal an egregious misreading of the caselaw on the voluntary cessation doctrine—and misrepresent Defendant's argument and position. Defendant explicitly *does not* claim that the TWC ceased any policy or practice that could have rendered Plaintiffs' claims moot. Def's Motion to Dismiss (ECF No. 36 at n.3). The motion asserts that, as a legal question, under undisputed facts, the Plaintiffs' *own actions* resulted in the claims becoming moot. *Id.*; *DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) (dismissing suit as moot when plaintiff acted to receive all he had sought from defendant); *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 282–83 (2001) (dismissing suit as moot when plaintiff seeking judicial review of an administrative license renewal denial withdrew its license application and stopped seeking to renew the license). Further, even if applicable, there would be no reasonable expectation they may be again subject to any allegedly unlawful policies in

the future because the pandemic benefits program has expired. *D'Agostino v. Arizona Dep't of Econ. Sec.*, No. CV-21-01292-PHX-SPL, 2022 WL 3682003 at *4 (D. Ariz. Aug. 25, 2022).

Therefore, because the legal question of mootness, including exceptions, does not turn on whether the TWC ceased any practice or procedure, not even limited discovery into the TWC's internal operations is warranted. *See In re MPF Holdings U.S. LLC*, 701 F.3d at 457 (holding jurisdictional discovery is not warranted since it would be irrelevant to the legal question).[3] For these reasons, all discovery should be stayed until the Court rules on the pending 12(b)(1) motion.

## II.    Motion to Quash and for Protective Orders

Good cause to quash a deposition notice or issue a protective order exists when the party from whom discovery is sought shows that it would suffer "annoyance, embarrassment, oppression or undue burden or expense" absent the remedy. Fed. R. Civ. P. 26(c). In addition, discovery must be proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy … the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

---

[3] Moreover, the "capable of repetition yet evading review" legal doctrine is also not applicable, nor would it warrant the Plaintiffs' sought-after, audit-like discovery of the entire TWC. *See Joyce*, 2022 WL 59392 at *8, n. 3 (stating the doctrine was inapplicable to virtually identical cause of action because the challenged practices had not ceased). Identically, the alleged policies complained of in Plaintiffs' Complaint did not cease and cause the injuries to become moot. Def's Motion to Dismiss (ECF No. 36) at n. 3, Ex. 1 at ¶¶ 3–10.

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Good cause to protect the TWC from Plaintiffs' discovery requests and deposition notice exists in this case for **all three reasons.** The discovery sought here is outside the scope of permitted discovery; unduly burdensome, cumulative, and duplicative; and not remotely proportional to the issues in this case. Thus, the Court should not only stay discovery; the Court should proactively halt Plaintiffs' intended discovery on the merits, entirely.

This Court previously denied Defendant's Motion to Dismiss Texas Association for the Rights of the Unemployed from this suit for lack of associational standing, in part, because Plaintiffs argued that their claims could be addressed simply by determining whether the TWC has certain "policies" or "practices." Order on Def's Partial Motion to Dismiss at 12 (ECF No. 35). But now, when seeking the TWC's participation in discovery—not their own—their position on the difficulty and complexity of this case has dramatically shifted. But the Court should take Plaintiffs at their word—

> "Here, Plaintiffs need only ask TWC when (or, indeed, whether), in the course of its audits, it normally sends claimants letters advising them of the audit and allowing them to respond."
>
> …
>
> "Again, the inquiry here is into TWC's policies about when and whether notice [of waiver determination] is normally provided."

Pls' Response to Def's Partial Mot. to Dismiss (ECF No. 21) at 5–6.[4] Plaintiffs' intended

discovery, however, far exceeds the narrow conception of this case they previously presented to

this Court. Defendant asks the Court's protection against this fourth quarter turnabout.

### A. Plaintiffs' document requests should be barred under all three factors of Rule 26(b)(2)(c).

Despite the fact that Plaintiffs have received all of the unemployment benefits they

sought—the sole interest giving them a personal stake in this suit—Plaintiffs insist that Defendant

must produce exhaustive documentation neither tailored to the jurisdictional issue of mootness

nor  to the factual allegations in the Complaint. *Compare* Exhibit 1 *with* Pl's First Amend.

Complaint (ECF No. 12). In addition, the amount of time and energy that would be required for a

response to these irrelevant requests would be enormous. Exhibit 4. To wit, the TWC has

characterized the burden as "incalculable"—too great to even be estimated. Exhibit 4 at ¶ 6. In

addition, the TWC would not likely be able to use federal funding to finance the efforts to respond

to these document requests or prepare for the intended deposition. Exhibit 4 at ¶ 7. Thus, unless

the Court protects Defendant, the TWC would be required to use its state revenue to finance these

exorbitant litigation costs, burdening taxpaying state residents, many of whom are unemployment

benefits claimants Plaintiffs purport to represent. Considering the limited scope of the questions

raised by their suit and the fact that Plaintiffs can only speculate that discovery might reveal

---

[4] In their Response, Plaintiffs' articulated, intended discovery for Claims 2, 3, and 5—regarding the nature of "automated systems," explanations for delayed hearings, or procedures used to "generate" notices—only relate to the Social Security Act claims the Court has already dismissed. Pl's Resp. to Def's Partial Mot. to Dismiss (ECF No. 21) at 5–6. But Plaintiffs appear to be trying to shoehorn discovery relevant only to these claims into their due process claims. Nonetheless, no discovery is needed (even merits-based) for the due process claims of Claims 2 and 3 (hearing at a meaningful time) and 5 (adequate notice language) because: 1) the times and dates the TWC issued their benefits determinations and held hearings would be known to Plaintiffs; and 2) the Plaintiffs have in their possession the notices at issue.

evidence pertinent to the claims in this case, the burden presented by Plaintiffs' discovery efforts is unreasonable, unjustifiable, and outside the scope of Rule 26(b)(1).

**B. Plaintiffs' corporate representative deposition should be barred under all three factors of Rule 26(b)(2)(c).**

When a party is served with a 30(b)(6) notice, it is obligated to produce a witness or witnesses knowledgeable about the subjects described and to prepare the witnesses to testify not simply to their own knowledge, but the knowledge of the corporation/entity. *Pogue v. Northwestern Mut. Life Ins. Co.*, No. No. 3:14-CV-598-CRS, 2017 WL 3044763, at *8 (W.D. Ky. July 18, 2017). The witness has a duty to reasonably obtain information from corporate documents, current or prior corporate employees, or any other sources reasonably available to the corporation. *Id.* Accordingly, the level of preparation required to comply with a 30(b)(6) deposition notice is much higher than that of a deposition inquiring into a witness's personal knowledge.

Plaintiffs' deposition topics are unreasonably wide-ranging—not narrowly tailored to: 1) whether the TWC has an unwritten policy in violation of section 212.053–.054 of the Labor Code; 2) the length of time between initial receipt of benefits and a benefits determination; 3) the length of time for Plaintiffs' appeals or reasons for any delay;[5]  4) whether the TWC has an unwritten policy in violation of TWC rule 815.12; or 5) the language in the notices sent to Plaintiffs (which would be in their possession). The deposition topics go far beyond the limited questions posed by these claims. *Compare* Exhibit 2 *with* Pl's First Am. Complaint (ECF No. 12).

Further, the amount of time the TWC has estimated it would need to prepare for the deposition(s) is so enormous the TWC could not calculate it after attempting to do so for

---

[5] *See also* First Am. Complaint (ECF No. 12) at n.4 (noting statistical data is publicly-available).

approximately 17 hours collectively, among numerous staff members. Exhibit 4 at ¶ 6. And in order to respond, the TWC would be forced to divert staff time and resources, asking public servants who are extremely busy assisting claimants like the Plaintiffs in this suit to cease that public service. Thus, the cost of preparing a witness outweighs any minimal benefit—which appears most likely to be none—the deposition may have. *See, e.g., Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 123 (E.D. Mich. 2019). Further, as discussed more fully below, plaintiffs have had ample opportunity to seek this discovery. *See infra* § C. Any of the three relevant factors would justify protection in this case, and all three are present. For these reasons, the Court should quash Plaintiffs' deposition notice and issue a protective order against designating, preparing for, or attending the 30(b)(6) deposition in this case.

### C. The TWC has already provided Plaintiffs ample opportunity to seek both jurisdictional and merits-based discovery.

On February 3, 2023, despite the mootness of this case and the fact that the matters over which Plaintiffs sought discovery were irrelevant to their claims, in a good-faith attempt to demonstrate how Plaintiffs' concerns were misplaced, as well as ideally avoid this present discovery dispute, the TWC produced three employee representatives (at the executive level of their respective departments) who met remotely with Plaintiffs' counsel, spoke about existing and future unemployment programs and systems, and answered all questions posed by Plaintiffs' counsel. Exhibit 4 at 8. These staff members prepared internally for several hours to ensure they would be able to address any remaining concerns by Plaintiffs' counsel. *Id.* Some of Plaintiffs' intended deposition topics and requests for production cover issues discussed in this meeting and would therefore be unreasonably cumulative or duplicative for this reason as well. And as with this meeting, due to the wide-ranging nature of Plaintiffs' inquiries, not one, but likely three staff

members would be required for a 30(b)(6) deposition. *Id.* Further, such depositions would be unreasonably duplicative of written discovery Plaintiffs have already propounded or had the opportunity to propound.[6] *See* Fed. R. Civ. P. 26(c)(i); *see also* Exhibit 4. Accordingly, Plaintiffs have had ample opportunity to seek discovery in this case, and any further discovery, especially 30(b)(6) depositions, would constitute abusive litigation practices. *See Tri–State Hosp. Supply Corp.*, 226 F.R.D. 118, 126 (D.D.C. 2005) (holding 30(b)(6) depositions should "be productive and not simply an excuse to seeking information that is already known").

Further, despite this meeting, Plaintiffs surprised Defendant one week later by not only seeking additional discovery, but also seeking numerous supplemental responses to discovery requests  sent approximately eight months ago, in July 2022. Exhibit 3. Plaintiffs had ample time to seek supplementation to these requests prior, but did not diligently pursue it.[7] The requests are also unreasonably burdensome, harassing and oppressive—and unrelated to the sole issue in Defendant's 12(b)(1) motion or Plaintiffs' First Amended Complaint—for the reasons discussed above. *See* Exhibit 3 (particularly remarkable is the request for statistical data); *see also* Exhibit 4 at ¶¶ 6–7 (describing the burden the requests would impose).

---

[6] Should the Court find that Plaintiffs have described with specificity jurisdictional evidence that discovery might uncover—and find that the need for that jurisdictional evidence outweighs the burden on the TWC—the Court should nonetheless quash and enter a protective order against Plaintiffs' intended depositions, only permitting no more than that <u>written</u> discovery the Court finds would be necessary to oppose the legal finding of mootness based upon Plaintiffs' undisputed actions. But since they themselves took those actions and moreover were in a position to witness each interaction with the TWC—including the receipt of every notice referenced in Serna's Motion to Dismiss—the Court in its discretion, should not give any credence to mere speculation that even limited, written discovery would produce any facts not already known by the Plaintiffs, needed to withstand a Rule 12(b)(1) motion.

[7] Likewise, this case was filed in May of 2022. *See* Plaintiffs' Complaint (ECF No. 1). Plaintiffs have thus had ample opportunity—almost a year—to pursue any and all discovery.

Moreover, after Defendant filed his first Motion to Dismiss the suit as moot on February 16, 2023, rather than recognizing the limited scope of warranted discovery when a dispositive, jurisdictional motion is pending, Plaintiffs inexplicably responded by voicing their intention to *increase* their intended discovery without any apparent correlation as to the facts—jurisdictional or otherwise—they might seek to establish in *this suit* with this discovery. *See* Pl's Motion to Extend (ECF No. 32) at ¶¶ 19–20. Accordingly, Plaintiffs' discovery effort should be seen for it is: a heavy-handed fishing-expedition untethered to the claims in this suit and based on nothing more than mere speculation as to what might be found.

## CONCLUSION

For the foregoing reasons, the Court should: 1) stay discovery until the Court rules on Defendant's pending 12(b)(1) Motion to Dismiss. In addition, because Plaintiffs' intended discovery is unreasonably cumulative, duplicative, burdensome, and harassing, the Court should entirely: 2) quash Plaintiffs' 30(b)(6) deposition notice; 3) issue a protective order excusing Defendant from complying with or attending the deposition completely; and 4) issue a protective order against Plaintiffs' written discovery, including their Second Requests for Production and any requests for supplementation of Defendant's Responses to Plaintiffs' First Requests for Production.

Accordingly, Defendant respectfully requests that the Court grant this Motion to Stay Discovery, Motion to Quash Plaintiffs' 30(b)(6) Notice, and Motion for Protective Orders.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant
Attorney General

SHAWN COWLES
Deputy Attorney General
for Civil Litigation

BRITTNEY JOHNSTON
Chief, Tax Litigation Division

*s/ Joseph D. Keeney*
JOSEPH D. KEENEY
Assistant Attorney General
Tax Litigation Division
State Bar No. 24092616
P. O. Box 12548
Austin, Texas 78711-2548
512-463-8897
512-478-4013 Fax
joseph.keeney@oag.texas.gov

ATTORNEYS FOR DEFENDANT

14

## CERTIFICATE OF CONFERENCE

A conference was held on March 29, 2023, with David Mauch, attorney for Plaintiffs, on the substance of this motion. We are not able to agree because Plaintiffs will not agree to a stay of discovery pending the Courts' ruling on Defendant's Motion to Dismiss, nor tailor their requests or deposition to the jurisdictional facts supporting Defendant's argument based on the issue of mootness. Therefore, the matter is presented to the Court for determination.

## CERTIFICATE OF SERVICE

I do hereby certify that on March 29, 2023, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means:

Dave Mauch
Texas Rio Grande Legal Aid
121 S. Main St
Suite 100
Victoria, TX 77901 6
361-237-1681
Fax: 361-576-1733
dmauch@trla.org

Melissa Anne Jacobs
Texas Rio Grande Legal Aid, Inc
4920 N IH 35
Austin, TX 78751
512-374-2789
Fax: 512-447-3940
mjacobs@trla.org

Douglas L. Stevick
Texas Rio Grande Legal Aid, Inc.
5439 Lindenwood Ave.
St. Louis, MO 63109
956-582-5557
Fax: 956-825-7035
dstevick@trla.org

Erin Sidonia Mitchell
Texas Rio Grande Legal Aid, Inc.
300 S. Texas Blvd
Weslaco, TX 78596
956-447-4800
956-825-7035
smitchell@trla.org

*s/ Joseph D. Keeney*
JOSEPH D. KEENEY
Assistant Attorney General