# Exhibit 2



121 S. Main St., Ste. 100
Victoria, TX 77901
Phone: (361) 226-5542
Fax:  (956)-591-8752
www.trla.org

May 12, 2023

Joseph Keeney
Office of the Attorney General
***Via email to***:
Joseph.keeney@oag.texas.gov

*Re: TARU et al. v. Serna* – Discovery Conference Letter

Counsel:

As we've discussed, I'm writing to provide some proposed search protocol for additional searches in response to Plaintiffs' First Requests for Production. I'd also like to follow up on a couple of items related to Plaintiffs' Second Requests for Production.

    **I.**    **Documents evidencing policies, generally**:

The TWC's position in this litigation has been that it does not have formal policies – counsel represented to the Court in the March 8th hearing on Defendant's Motion to Dismiss that the TWC has no policies outside of the TUCA and the TWC's regulations. In other conversations, counsel has represented that the TWC has "unwritten" policies, but does not maintain formal, written policies. There is simply no way that a state agency that employs thousands of people does not have any policies governing its core functions like the delivery of unemployment benefits, especially when those policies are so closely regulated at the federal level. And TRLA has obtained documents in open records requests over the years showing that the TWC does, in fact, maintain formalized policies and guidance in great detail.

We believe that the TWC has policies, guidance, and training that will be responsive to most of Plaintiffs' first RFPs and that have not yet been produced. This may include the UI Benefits System Manual, UI Program Letters, Help Messages, and numbered Benefits Letters. This may also include training and guidance materials like handbooks, powerpoint presentations, and video recordings of trainings. We imagine that the TWC, like most large organizations, maintains a centralized training repository that contains internal trainings and guidance; such a repository would be very likely to contain a significant amount of responsive information. We believe that production of these documents after manual review will likely satisfy the bulk of Plaintiffs' requests, though some supplemental email search may need to be done.

    **II.**    **RFPs 1-8:** Documents evidencing policies for claimstaking for DUA and PUA, and notices to claimants re: same

For RFPs 1-8, we believe manual review of the items listed in 1, above, should be sufficient.



Please also supplement with any documents regarding the TWC's new policy of refusing to take backdated PUA claims. To the extent this policy change was announced via email, please produce the emails announcing the change.

Following the production of items after manual review, we will evaluate whether the documents produced are sufficiently responsive and will propose additional email search if necessary.

**III.** **RFPs 9, 11, 12, 14, and 15**: Policies governing claim eligibility audits.

For these RFPs, we believe that an initial manual review of the items listed above may be sufficient. We note that the request defines audit in a way that may be different from the TWC's internal use, specifically including:

> ...[A]ny action by TWC staff, after a claimant has initially been determined to be eligible, to investigate whether a claimant is eligible for benefits or whether a claimant is entitled to receive all and/or any portion of the benefits they have received. This does not include actions by TWC staff in response to appeals from claimants or employers.

Following the production of items after manual review, we will evaluate whether the documents produced are sufficiently responsive and will propose additional email search if necessary.

**IV.** **RFPs 16-20**: Communications among TWC staff regarding appellate caseload.

At the parties' February 3, 2023 meeting, TWC staff took the position that upper-level staff in the appeals department are constantly discussing the appeals backlog and methods to make appeals more efficient and to ensure timeliness standards are being met. Virtually no such communications, including meeting notes and calendar invites, have been produced.

We propose that production begin with Defendant identifying the high-level TWC staff involved in decisionmaking on appeal timeliness. These employees' emails should be collected and searched. We recommend the following search keywords: appeal, appeals, prompt, promptness, 30, 45, 60%, 80%, 9054, 9055, backlog, hearing, hearings, schedule, scheduling,

To the extent that you disagree with the above keywords, we'd recommend the use of sampling to refine keyword selection. This can be accomplished by collecting a small sub-section of the collected emails with a known number of hits, then performing search terms and assessing the precision and recall of the proposed terms. Here is a link to a presentation summarizing precision, recall, and ESI sampling and search, if you are unfamiliar: https://www.gibsondunn.com/wp-content/uploads/documents/publications/Evans-Metrics-that-Matter-Inside-Counsel-1.2015.pdf

**V.** **RFPs 21, 22, 23, and 25**: policies that govern when TWC staff may/must determine overpaid benefits, and when written determination of waiver must be issued.

We believe that manual review of the items identified in I, above, is likely to generate the majority of the information we need.

In addition, we propose that email production be conducted by identifying the high-level TWC staff involved in decisionmaking and in disseminating policy information regarding waiver determinations. Once those individuals' emails have been collected, they should be searched for emails containing the word "waiver."

**VI.** **RFP 26**: Policies and procedures governing waiver determinations:

We believe that manual review of the items identified in I, above, is likely to generate the needed information.

**VII.** **RFP 27**: Guidance to unemployment hearing officers in interpreting 40 Tex. Adm. Code § 815.12(e)-(f)

Manual review of the items identified in I may produce some responsive documents.

We propose that email production be conducted by identifying the high-level TWC staff involved in developing interpretive guidance on regulations governing appeals hearing officers, and/or in disseminating that interpretive guidance to hearing officers. Their email should be gathered and searched for:
- 815.12
- "fault of the claimant" (exact wording)
- Instances of the word claimant within 5 words of the word fault (however such search is performed on Defendant's review software)
- "contrary to equity"
- "good conscience"

**VIII.** **RFP 28**: Documents about the TWC's document generation system

We believe a manual review of the items identified in I may produce additional responsive documents.

**IX.** **RFPs 32 and 33**: Database schema

Defendant's objections to these requests are not valid. The objections to RFP #30, extended here, make no sense, as a database schema is significantly smaller and easier to produce than a database. Likewise, Defendant's objection that production of the schema is unduly burdensome is also inapposite – the objection articulates no specific reason as to why production of the database schema is overly burdensome. Finally, the objection that the request is vague is also unavailing. Schema is a term of art used in the management of databases and is quite well-defined. To the extent that any element of the request is unclear or vague, please, after consulting with the TWC's information technology professionals, articulate what is vague, and we will be happy to clarify.

These requests are relevant and narrowly-tailored. They seek to obtain information about how the TWC's databases are structured, which can be used to help sculpt discovery requests that seek systemic information about how the TWC's programs operate and what data it collects.

**X.** **RFPs 40-43**

Please supplement your response to clarify whether any documents are being withheld on the basis of your objections.

--

Thanks for your attention to detail in this matter. Please provide the above-requested supplements by **May 18th**.

Sincerely,

Dave Mauch
Staff Attorney
Texas RioGrande Legal Aid, Inc.
121 S. Main St., Ste. 100
Victoria, TX 77901
361.237.1681 (call/text)
dmauch@trla.org