# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Texas Association for the Rights of the Unemployed, Kathryn Kawazoe, Stephanie Stout, Kimberly Hartman, Charles Harmon, and Jesus Duarte, | § § § § § | |
| *Plaintiffs*, | § § | Civil Action No. 1:22-cv-00417 |
| v. | § § | |
| Ed Serna, Executive Director, Texas Workforce Commission, in his official capacity | § § § § § | |
| *Defendant*. | § | |

UNSWORN DECLARATION
(*Texas Civil Practice and Remedies Code, Section 132.001*)

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

1. My name is Terri Warren, and I am the director for the Unemployment Insurance (UI) Administration and Operational Support Department of the Texas Workforce Commission ("TWC"). I am over the age of twenty-one (21), of sound mind and capable of making this affidavit, and have personal knowledge of each fact stated herein. Each fact stated in this affidavit is true and correct.

2. As part of my assigned responsibilities, I oversee the Unemployment Insurance Administration and Operational Support Department and all special federal programs such as Disaster Unemployment Assistance, Trade Readjustment Allowances, and all pandemic programs. I frequently assist staff with specific pandemic related corrections, and I was heavily involved in the programming of the pandemic programs. As part of my assigned responsibilities, I assist in responding to requests for information.

3. I reviewed each of the Plaintiffs' four (4) Requests for Production (RFP) in this case and assisted in determining which documents might be responsive to each request.

4. Where it was feasible and the information was not otherwise subject to any confidentiality provisions, UI staff diligently searched for, and produced the requested information. However, the amount of data and communications requested in each of the remaining RFPs

    in which TWC did not or could not respond to, was overbroad and extraordinarily burdensome.

5. With respect to Plaintiffs' 1st RFP, the requests ask for publicly-available policies governing the TWC. The TWC does not contain policies by which it is bound internally. The TWC does have internal policies, practices, protocols, and procedures, but the TWC does not audit Plaintiffs as described in the Complaint, and requiring the TWC to respond to discovery requests under Plaintiffs' expansive "audit" definition would require the TWC to produce documents that have no bearing whatsoever on this case. For these reasons, the TWC properly responded to RFPs 9, 11, 12, 14, and 15. Further, RFPS 1–8 concern the processing of DUA and PUA claims, which the Plaintiffs have never brought a claim against in this suit. These are irrelevant requests.

6. With respect to Plaintiffs' 3rd RFP, the requests ask for ALL documents and ALL communications related to a myriad of subparts in each separate request. Each of those subparts alone are unclear, overly broad, and would be difficult to even begin to try to search for responsive information. Even if TWC began to try to respond to each of these requests, producing the requested information would require the reassignment of numerous staff from multiple divisions, thereby diverting these staff members from the ordinary scope of their employment. Many of these requests would require staff to run database queries, and compile and review massive quantities of data to determine, at a minimum, whether the information is relevant, confidential as it relates to the administration of UI, or developed in consultation with legal staff that would be subject to attorney client privilege. In addition, such data would need to be checked for accuracy and whether it is representative of the request. It is also important to note that the staff with the requisite skill set to assist with these requests are responsible for supporting the UI TeleCenters and other agency divisions in the handling of UI claims, appeals, monetary and nonmonetary determinations, fraud determinations, and any other matters that relate to the efficient administration of the UI benefits system. Donna Lowe's estimate of the amount of time it would take to compile and review simply e-mails is a conservative estimate of the amount of time it would take to respond to these requests. That estimate does not include the amount of time to compile and review all documents, communications, training materials, recording trainings, guidance, instructions, handbooks, policies, notes, and memos. That endeavor could take well over a year in addition to the year it would take to simply compile and review requested e-mails. It would further require multiple high-level staff members.

7. As an example of the burden and time TWC staff has already spent in responding to the requests that the agency was able to, it took approximately 80 hours of staff time to respond to No. 31 in Plaintiffs' 2nd RFP; this included the time of several division directors to ensure completion and accuracy. Again, this was time taken away from dedicated staff who would otherwise have been assisting Texans with their UI benefits claims.

8. The requests outlined in Plaintiffs' 4th RFP are equally broad and unduly burdensome. Specifically, after reviewing requests 53-56, TWC is unclear as to what documents could even be responsive to these huge requests. As to requests 56-59, TWC cannot only estimate the amount of time it would take to attempt to respond given the breadth and volume in

each request. Conservatively, TWC estimates it would take 4 dedicated full-time employees (FTEs) well up to another year to collect and review the data requested. As noted in Corra Dunigan's Affidavit, The Unemployment Insurance Administrative Grant that TWC receives from the United States Department of Labor (USDOL) pays for the activities of several TWC divisions, including, but not limited to UI Administration, Fraud, Deterrence and Compliance Monitoring, and Information Technology. This grant is intended to fund the State's efforts to operate a UI system designed to pay benefits when due. Expenses associated with this litigation would not align with that intent and could potentially result in USDOL disallowing the costs that the state would have to re-pay through non-federal funds. The relevant provisions that speak to this are 2 CFR § 200.403, 2 CFR §200.404, and 2 CFR §200.435.

9. Finally, in addition to being overly broad and unduly burdensome, the requests fall under the Administration of Unemployment Benefits, and are thus subject to both federal and state confidentiality provisions. (See Defendant's Response to Plaintiffs' Motion to Compel).

"Further affiant sayeth not."

Signed in Travis County, Texas this July 12, 2023.

*[signature: Terri Warren]*

Terri Warren

Unemployment Insurance (UI)
Administration and Operational Support
Department Director

Pursuant to Texas Civil Practice and Remedies Code Section 132.001, an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by a rule, order, or requirement adopted as provided by law. This provision does not apply to a lien required to be filed with a county clerk, an instrument concerning real or personal property required to be filed with a county clerk, or an oath of office or an oath required to be taken before a specified official other than a notary public.