# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Texas Association for the Rights of the Unemployed, Kathryn Kawazoe, Stephanie Stout, Kimberly Hartman, Charles Harmon, and Jesus Duarte,<br><br>*Plaintiffs*,<br><br>v.<br><br>Ed Serna, Executive Director, Texas Workforce Commission, in his official capacity<br><br>*Defendant*. | § § § § § § § § § § § § § § § | Civil Action No. 1:22-cv-00417 |

**Unsworn Declaration of Charles E. Ross, Jr.**

1. My name is Charles E. Ross, Jr. and I am an employee of the governmental agency, the Texas Workforce Commission. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the following is true and correct.

2. I am the director of the Division of Fraud Deterrence and Compliance Monitoring (FDCM) of the Texas Workforce Commission (TWC).

3. As part of my assigned responsibilities, I oversee the operations of the TWC's fraud waste and abuse functions; unemployment insurance (UI) Benefit Payment Control; UI audit functions under the Federal Benefit Accuracy Measurement (BAM) program; oversight of the Texas Payday Law and Child Labor programs; and monitoring of the TWC's Federal grant subrecipients. I develop and approve language for administrative rules which are then promulgated by the three TWC commissioners. I develop draft legislative language associated to legislative initiatives adopted by the three TWC commissioners. I assist in the development of and approve FDCM Letters which are procedural memoranda that implement the polices of the three TWC commissioners and our Federal partner entities. The Wage and Hour Department within FDCM regularly receives extensive open records requests for information about the Payday Law program. I collaborate closely with staff on evaluating which documents requested are or are not responsive to the request and the amount of staff time it will take to compile responsive documents.

4. I have reviewed Plaintiffs' First Amended Complaint and their four requests for production in this case. I reviewed and assisted in determining which documents might potentially be

responsive to the following Requests for Production (RFP):

*Plaintiffs' First Request for Production*

**RFPs 1–8.** Policies governing the TWC are publicly available. In addition, Plaintiffs' Complaint does not contain any claim that the TWC did not properly assess a claim for Disaster Unemployment Assistance or Pandemic Unemployment Assistance benefits. Thus, these requests for completely irrelevant information.

**RFPs 9; 11-12; 14-15**: Notwithstanding the definition provided in item one, there are no policies with respect to auditing unemployment compensation claims. The DOL's BAM program is a random-sample based audit of paid and unpaid claims during a given time frame. States conduct these audits under procedures dictated by the DOL's Employment and Training Handbook No. 396. <u>The TWC does not perform audits outside this narrow definition of the DOL process</u>.

The definition of audit provided in Plaintiff's first request for production is exceptionally broad and does not accurately characterize the work of claims examiners when potential benefit eligibility issues arise through the normal cycle of the claim.

Claims examiners and Benefit Payment Control investigators adjudicate new issues which are discovered by the TWC in multiple ways, e.g. through information provided by the claimant during a continued claim series certification; through data cross matches such as benefit wage and National Directory of New Hires, etc. that raise questions about a claimant's continued eligibility to receive unemployment compensation. This activity aligns exactly with provisions of Section 303(a)(1) of the Social Security Act [42 U.S.C. 503] requiring states to maintain methods of administration designed to provide for payment of benefits when due and to prevent payments when they are not due.

There are innumerable scenarios under which this work could and does occur. And when applied to the millions of claims filed during the pandemic period, it would be impracticable, if not impossible to provide the information requested using this definition.

**RFPs 21-23 and 25-27**: The policy of the TWC regarding waivers is found in its administrative rules at 40 TAC §§ 815.12 and 815.23. With respect to **RFP 24**, this information is already in Plaintiffs' possession.

*Plaintiffs' Third Request for Production*

**RFP 48**, addressed by sections relevant to FDCM:

**RFP 48a**. Staff determined it would take approximately 2 hours for just my division to search e-mail for responsive records. Staff estimates there may be 10 e-mails in total. <u>None of these records relate to the five named plaintiffs in the complaint</u>. Any responsive records

would be confidential under 20 C.F.R Part 603; Texas Labor Code §301.085; and the TWC's rules at 40 TAC Chapter 815, Subchapter E.

**RFP 48b.** Staff determined it would take approximately 2 hours for just my division to compile all procedural documents responsive to this request. Staff estimates there would be approximately 10 documents responsive to this request. <u>None of these records relate to the five named plaintiffs in the complaint.</u> Any responsive documents would be confidential and privileged under 20 C.F.R Part 603; Texas Labor Code §301.085; and the TWC's rules at 40 TAC Chapter 815, Subchapter E.

**RFP 49**, addressed by sections relevant to FDCM: [Note: Items in **RFP 49** rely on Plaintiffs' definition of "audit" which is exceptionally broad and covers essentially all standard unemployment compensation claims-taking activities required by the DOL through Federal law, regulations, procedural handbooks, etc.]

**RFP 49a, 49e–g.** Staff determined it would take approximately 40 hours for just my division to compile the responsive records as they relate to the BAM program. Staff estimates there are hundreds of responsive records. <u>None of these records relate to the five named plaintiffs in the complaint.</u> Most responsive records would be confidential and privileged under 20 C.F.R Part 603; Texas Labor Code §301.085; and the TWC's rules at 40 TAC Chapter 815, Subchapter E.

**RFP 49b and 49c.** Staff determined it would take approximately 40 hours for just my division to compile the response records. Staff estimates there are hundreds of responsive records across several divisions of the TWC as well as documents in the possession of the TWC's vendors. <u>None of these records relate to the five named plaintiffs in the complaint.</u> Any responsive records would be confidential and privileged under 20 C.F.R Part 603; Texas Labor Code §301.085; and the TWC's rules at 40 TAC Chapter 815, Subchapter E.

**RFP 49h–m.** The policy of the TWC regarding waivers is found in its administrative rules at 40 TAC §§ 815.12 and 815.23. Any procedures which operationalize those policies are confidential and privileged under 20 C.F.R Part 603; Texas Labor Code §301.085; and the TWC's rules at 40 TAC Chapter 815, Subchapter E.

**RFPs 50 and 51**: Staff estimates it would take approximately 40 hours for just my division to identify and compile the responsive records. Staff estimates there are hundreds of responsive records across several divisions of the TWC. <u>None of these records relate to the five named plaintiffs in the complaint.</u> Any responsive records would be confidential and privileged under 20 C.F.R Part 603; Texas Labor Code §301.085; and the TWC's rules at 40 TAC Chapter 815, Subchapter E.

*Plaintiffs' Fourth Request for Production*

6.  Review and determination of whether documents and records are responsive would have

to be done by senior management within my division. This would divert them from their normal work of directing and overseeing fraud, waste, and abuse activities within the UI program and the other programs which the TWC oversees. This would result in a substantial and demonstrable risk to the integrity of the TWC's programs; increased improper and benefit fraud payments; and would likely increase the number of Texans whose stolen identities are successfully used to obtain ID theft benefits.

Across the Agency, the effort required to respond to these overbroad and ill-defined RFPs would degrade services provided to UI claimants because of the redirection of staff and automation resources to complete that work.

The UI administrative grant the TWC receives through certifications described in section 303(a)(1) of the Social Security Act [42 U.S.C. 503] is solely intended to fund the work necessary to support the methods of administration "…reasonably calculated to insure full payment of unemployment compensation when due."

There are no other funding sources available to the TWC other than the administrative grant to cover the costs incurred by the Agency to respond to Plaintiff's RFPs. Redirecting staff's normal efforts to addressing these RFPs puts the TWC at substantial risk of non-compliance with the provisions of § 303(a)(1), which could result in the loss of the Secretary of Labor's certification of the administrative grant. As a practical matter, that would end the UI program in Texas and would have cascading affects throughout the Texas economy, i.e. the loss to Texas' employers of the Federal Unemployment Tax Act (FUTA) credit against Federal unemployment taxes by having a certified unemployment insurance program. Loss of the FUTA tax credit would result in an extreme increase in employers' UI tax rates.

7. Defendant responded and objected in good faith to Plaintiffs' Requests for Production.

8. As noted throughout, the requested documentation is confidential unemployment compensation information. The TWC's longstanding position has been that by default, all unemployment compensation information is confidential. The TWC may disclose this information as permitted by rule, but the TWC should withhold information if the time needed to comply with the request would interfere with the efficient administration of the state unemployment compensation law. The TWC must evaluate factors such as the burdensomeness of the request and whether the request places an employer's or individual's privacy at unacceptable risk.

9. Since unemployment compensation (UC) claims-taking and fraud deterrence procedures are integral to the administration of the Texas Unemployment Compensation Act, they are confidential information under both Federal regulations and State law. Additionally, State law adds a further protection in that confidential UC information is not releasable under the Texas Public Information Act.

During and after the pandemic, the FDCM division received many requests for information dealing with UC fraud and/or identity theft. The Agency has provided as much responsive information as possible in the way of de-identified data and statistics which mirror Federal UC reporting requirements that are already public through the United States Department of Labor (DOL) but has declined to provide specific information and documents (manuals, handbooks, directives, training materials, etc.) regarding our adjudication processes and fraud-fighting strategies when they are requested.

The TWC also receives requests for fraud deterrence procedures and documents as part of Federal audits. Federal regulations at 20 CFR § 603.5(i) provide that UC confidentiality provisions do not apply with respect to Federal UC program oversight and audits, i.e. confidential UC information can be disclosed to USDOL and Federal auditors for the limited purpose of oversight and audits. However, there is no clear exemption or exclusion under the Federal Freedom of Information Act (FOIA) which would protect TWC's sensitive UC claims-taking and fraud deterrence procedural information from being redisclosed under the FOIA. As such, the TWC requires written assurances from the Federal auditing entity's legal counsel that in the event of a FOIA request for these confidential documents, the Federal entity will take all necessary steps at its disposal to seek an exclusion from release of the requested information under the FOIA. The Federal entity must agree in writing to keep TWC informed of any FOIA requests related to TWC information and to coordinate with TWC, as necessary, to prevent redisclosure of confidential documents.

The 88th Texas Legislature recognized this as a compelling public policy matter by introducing House Bill 2907 (Button), which added an additional protection for confidential fraud detection information. It passed out of its House committee with unanimous support and had overwhelming bi-partisan support when it passed out of the House. But for legislative deadlines in the Senate, the expectation was that this bill would have been enacted and signed by the Governor.

In sum, the TWC has taken this position because, as a practical matter, release of procedural manuals, directives, help messages, training materials, etc. which describe adjudications processes, including but not limited to fraud detection and deterrence measures, essentially serve as a blueprint for individuals to obtain benefits they are not entitled to and to avoid detection in so doing. While Federal regulations and DOL directives require states to provide sufficient information to parties to participate in the UC process, release of detailed staff-level procedures to the public would be antithetical to the basic underpinning of UC that UC is payable when due and not payable to individuals determined ineligible to receive it.

Executed in Travis County, State of Texas, on the 12th day of July 2023

*Charles E. Ross*

Charles E Ross, Jr., Declarant