# Exhibit 8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Texas Association for the Rights of the Unemployed, Kathryn Kawazoe, Stephanie Stout, Kimberly Hartman, Charles Harmon, and Jesus Duarte, | § § § § § | |
| *Plaintiffs*, | § § | Civil Action No. 1:22-cv-00417 |
| v. | § § § | |
| Ed Serna, Executive Director, Texas Workforce Commission, in his official capacity | § § § § § | |
| *Defendant.* | § | |

UNSWORN DECLARATION
(*Texas Civil Practice and Remedies Code, Section 132.001*)

| | |
|---|---|
| STATE OF TEXAS | § § |
| COUNTY OF TRAVIS | § |

"My name is Christina Karnes, and I am the Director for the Appeals Department of the Texas Workforce Commission ("TWC"). I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the foregoing is true and correct."

1. As part of my assigned responsibilities, I oversee the Appeals Department which conducts first-level appeal hearings regarding regular Unemployment Insurance claims and special federal programs such as Disaster Unemployment Assistance, Trade Readjustment Allowances, and all pandemic programs. I frequently assist staff with specific pandemic related issues, and I was heavily involved in the implementation of appeals for the pandemic programs.

2. I reviewed each of the Plaintiffs' four (4) Requests for Production (RFP) in this case and assisted in determining which documents might be responsive to each request.

3. Appeals staff diligently searched for and produced the requested information when it was feasible and otherwise not subject to confidentiality provisions. However, the amount of data and communications requested in each of the remaining RFPs in which TWC did not or could not respond to, was overbroad and extraordinarily burdensome.

4. As to Plaintiffs' 1st Request for Production (RFP), specifically RFPs 11, 12, 14 and 15, TWC does not conduct audits, and the definition presented by Plaintiffs' counsel in this RFP is extremely

broad. Because of that broad definition, it creates an undue burden on appellate staff to try to respond to these requests. For example, there are a multitude of scenarios that could lead TWC to becoming aware of a new issue related to an investigation of a claimant's continued qualification or eligibility for benefits including, but not limited to information provided by claimants on continued payment requests or inquiries to TWC, changing federal guidance, crossmatching new hire information, tips regarding potential fraud, and any number of confidential processes related to ID fraud. It would be nearly impossible to reasonably respond to any requests using this definition. Even if this definition were clarified, given the factors outlined above, any attempt to find documents and/or communications related to these requests remain overly burdensome and would require the time of numerous staff over many months to review any such documents.

5. With respect to RFPs 16-20 in Plaintiffs' 1st RFP, please refer to the Declaration of Donna Lowe with respect to the claim being overly broad, unduly burdensome, and confidential under the administration of UI. Also, along with information related to RFPs 16-20 being confidential as part of the administration of the UI program, many of the management personnel within Appeals are licensed attorneys; as such, any advice, opinions, etc., provided to the agency with regard to policies and practices and meeting legal requirements of 20 C.F.R. § 650 constitute legal opinions and advice to the agency which would make items potentially subject to attorney-client privilege. Donna Lowe's estimate of the amount of the time is a conservative estimate of the amount of time it would take to respond to these requests. It does not include the amount of time to compile and review all documents, communications, training materials, recording trainings, guidance, instructions, handbooks, policies, notes, and memos. It could take over another year to compile all of those documents. It would further require efforts of myself and multiple other high-level staff members.

6. As an example of the burden and time TWC staff has already spent in making a good faith effort to respond to these requests, multiple high-level staff members have spent in excess of 60 hours of time to review, interpret, and respond. Again, this was time taken away from dedicated staff who are instrumental in the administration of appellate services.

7. With respect to RFPs 27 in Plaintiffs' 1st RFP, all guidance to Hearing Officers, falls under the administration of Unemployment (UI) Benefits and is otherwise subject to confidentiality under federal and state law.

8. As to Plaintiffs' 3rd RFPs, in addition to being overly broad and unduly burdensome, TWC considers all information that is not provided in documents to claimants or on the public facing website to be confidential under the administration of UI benefit program. Additionally, policies and practices are developed in consultation with legal staff and may be subject to attorney-client privilege.

9. As to Plaintiffs' 4th RFPs, TWC maintains that the information requested continues to be overly broad and unduly burdensome and confidential as a matter of law. Furthermore, as to RFP No. 54, documents showing the total numbers of notices and other claim related mailings sent by TWC or its vendor since January 1, 2020, do not generally exist. In addition to the reasons cited above, if TWC were compelled to respond to these colossal requests, it would require my division to remove full time staff from their ongoing duties working on claimant appeals, adding further to the backlog

that my division continues to work through as a result of the unprecedented pandemic. The skill level required to review and evaluate documents is such that it would have to be performed by high level legal and program staff which would create a tremendous burden on the division, affecting claimants' appeals; the requests are so overly broad in fact that it is impossible to even calculate the number of staff to respond to these requests.

10.     As a practical matter, release of documents, communications, training materials, recording trainings, guidance, instructions, handbooks, policies, notes, and memos would essentially serve as a blueprint for someone to prevail in their appeal hearing and put the impartiality and integrity of the Appeal Tribunal at risk.  While Federal regulations and DOL directives requires states to provide sufficient information to parties to participate in the unemployment compensation process, the release of detailed staff-level procedures to the public would compromise the integrity of the appellate process as we do not provide legal advice, coaching, etc. to either claimants or employers in order to maintain the impartiality of the Appeal Tribunal as required by Section 212.101 of the Texas Unemployment Compensation Act and also under federal laws and DOL guidance.

"Further affiant sayeth not."

Signed in Travis County, Texas this July 12, 2023.

Christina Karnes, Director
Appeals Department

Pursuant to Texas Civil Practice and Remedies Code Section 132.001, an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by a rule, order, or requirement adopted as provided by law. This provision does not apply to a lien required to be filed with a county clerk, an instrument concerning real or personal property required to be filed with a county clerk, or an oath of office or an oath required to be taken before a specified official other than a notary public.