IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS ASSOCIATION FOR THE RIGHTS OF THE UNEMPLOYED, KATHRYN KAWAZOE, STEPHANIE STOUT, KIMBERLY HARTMAN, and CHARLES HARMON, JESUS DUARTE, | § § § § § § | No. 1:22-CV-417-DAE |
| Plaintiffs, | § § | |
| vs. | § § | |
| EDWARD SERNA, Executive Director, Texas Workforce Commission, in his official capacity, | § § § § | |
| Defendant. | § § § | |

ORDER DENYING DEFENDANT'S CONSOLIDATED MOTIONS TO
DISMISS AND FOR JUDGMENT ON THE PLEADINGS AND DENYING
PLAINTIFFS' MOTION TO STRIKE

The matters before the Court are: (1) Defendant Edward Serna's,

Executive Director of the Texas Workforce Commission, in his official capacity,

("Defendant" or "Serna") Consolidated Motions to Dismiss and for Judgment on

the Pleadings (Dkt. # 61); and (2) Plaintiffs Texas Association for the Rights of the

Unemployed ("TARU"), Kathryn Kawazoe, Stephanie Stout, Kimberly Hartman,

Charles Harmon, and Jesus Duarte (collectively, "Plaintiffs") Motion to Strike

Defendant's Motion for Judgment on the Pleadings (Dkt. # 71). The Court finds a

hearing on these matters is not necessary. After careful consideration of the

memoranda filed in support of and in opposition to the motions, the Court, for the reasons that follow, **DENIES** the motions to dismiss and for judgment on the pleadings, and **DENIES** the motion to strike.

<u>BACKGROUND</u>

On May 3, 2022, Plaintiffs filed suit in this Court, challenging the Texas Workforce Commission's ("TWC") administration of Covid-19 pandemic unemployment compensation programs.  (Dkt. # 1.)  Plaintiffs' amended complaint sought relief pursuant to 42 U.S.C. § 1983 based on Defendants' alleged denial of Plaintiffs' due process rights guaranteed by the Fourteenth Amendment, as well as for violations of the Social Security Act, 42 U.S.C. § 503(a)(1).  (Dkt. # 12.)

A.   <u>Social Security Act</u>

In 1935, Congress passed the Social Security Act, creating the framework for state unemployment compensation programs nationwide.  In <u>California Department of Human Resources Development v. Java</u>, the Supreme Court examined the legislative history of the Social Security Act, observing that the purpose of unemployment compensation was "to give prompt if only partial replacement of wages to the unemployed, [and] to enable workers 'to tide themselves over until they get back to their old work or find other employment, without having to resort to relief.'"  402 U.S. 121, 131 (1971) (quoting H.R. Rep. No. 615, 74th Cong., 1st Sess., 7 (1935)).

2

Among others, the Social Security Act requires states to administer benefits in a manner that is "reasonably calculated to insure full payment of unemployment compensation when due," and for states to provide an "[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied."  42 U.S.C. § 503(a)(1), (3).  In Texas, the Social Security Act's unemployment provisions are administered by the TWC pursuant to the Texas Unemployment Compensation Act ("TUCA"), and the regulations promulgated by the TWC thereunder.  See Tex. Labor Code § 201 et seq.  The TUCA and TWC provide that unemployed Texans may apply for and receive unemployment benefits if they meet the criteria set forth in the TUCA so long as they continue to remain eligible.  Id. § 207.021; 40 Tex. Adm. Code § 815.

B.     The CARES Act

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C. § 9001, et seq., commonly denominated the CARES Act, which created new, temporary, federal unemployment insurance programs.  Congress has amended the CARES Act twice since its passage for the purpose of extending the time period of its coverage.  The CARES Act established Pandemic Unemployment Assistance ("PUA"), a temporary federal unemployment program that provided up to seventy-nine weeks of benefits to certain individuals

3

who were not otherwise eligible for state unemployment insurance benefits.  The

CARES Act states that "the Secretary shall provide to any covered individual

unemployment benefit assistance while such individual is unemployed, partially

employed, or unable to work for the weeks of such unemployment with respect to

which the individual is not entitled to any other unemployment compensation. . . ."

15 U.S.C. § 9021(b).  "Covered individuals" are, in relevant part, those individuals

who are not eligible for certain other compensation or benefits, and who are

otherwise able to and available for work under state law, but are unemployed,

partially unemployed, or unable or unavailable to work for certain designated

reasons relating to the COVID-19 pandemic.  15 U.S.C. § 9021(a)(3).

The CARES Act distributes PUA benefits through states, requiring

that: "[t]he Secretary shall provide the assistance authorized under subsection (b)

through agreements with States which, in the judgment of the Secretary, have an

adequate system for administering such assistance through existing State agencies,

including procedures for identity verification or validation and for timely payment,

to the extent reasonable and practicable."  15 U.S.C. § 9021(f)(1).  The amount of

unemployment compensation paid by a state for individuals such as Plaintiffs, who

are or were allegedly unemployed due to the COVID-19 pandemic, is "computed

under the provisions of applicable State law," 20 C.F.R. § 625.6(a), and increased

by a weekly payment of either $600 or $300, depending on the time period of the

unemployment, 15 U.S.C. § 9023(b)(3)(A).  15 U.S.C. § 9021(d)(2).  States are in turn reimbursed for the assistance they provide and for administrative expenses. Id. § 9021(f)(2).

On March 28, 2020, Defendant Serna, acting as the designee of the Governor on behalf of the state of Texas, entered into an agreement with DOL to pay PUA to unemployed Texans through the TWC.  (Dkt. # 12-1.)  In the agreement, TWC agreed to administer PUA under the requirements of the Social Security Act.  (Id.)  In August of 2020, the TWC announced that it had begun an agency-initiated audit to identify fraudulent activity among unemployment claimants.  (Dkt. # 12-2.)

On December 27, 2020, the unemployment provisions of the CARES Act, including PUA, were extended through March 14, 2021, by the Continued Assistance for Unemployed Workers Act of 2020, Pub. L. No. 116-260, §§ 201, 203-204, 206.  On March 11, 2021, PUA and other benefits were further extended through September 6, 2021, by the American Rescue Plan Act of 2021. Pub. L. No. 117-2, §§ 9011, 9013-9014, 9016.  On September 6, 2021, the temporary programs expired.  However, prior to that date, on May 17, 2021, the Governor of Texas sent a letter to the Secretary of DOL stating that Texas would "terminate its participation in the Agreement Implementing the Relief for Workers Affected by Coronavirus Act, effective June 26, 2021."  https://gov.texas.gov/uploads/

files/press/O-WalshMartin202105171215.pdf.  The Governor asserted that "these unemployment benefits [are] no longer necessary."  Id.  He further stated that "[t]he termination of this agreement means that Texas will opt out of . . . Pandemic Unemployment Assistance . . . ."  Id.

C.    Plaintiffs' Claims

Plaintiff TARU is "a membership organization composed of individuals who believe their unemployment rights have been wrongfully denied." (Dkt. #12 at 35.)  TARU's "purpose is to assist Texans who believe they have been wrongfully denied the right to due process of law and other federal rights related to the receipt of unemployment benefits."  (Id.)  The individual plaintiffs are residents of the state of Texas who allegedly lost their employment due to the COVID-19 pandemic and received some sort of PUA assistance, but were eventually denied further PUA benefits, denied PUA backpay, or were subject to a determination of overpayment of PUA benefits.

Plaintiffs alleged four claims against Defendants pursuant to § 1983 for violations of the Social Security Act and for denial of Plaintiffs' due process rights guaranteed by the Fourteenth Amendment: (1) failing to provide notice and an opportunity to be heard to audited claimants; (2) untimely redetermining eligibility for audited claimants; (3) failing to provide timely first-level appeals;

(4) failing to provide determinations and notices of waiver of overpaid CARES Act benefits; and (5) failing to provide adequate notice of adverse determinations. (Dkt. # 12.)

On March 22, 2023, the Court dismissed Plaintiffs' claims for violations of the Social Security Act, finding that, upon its independent analysis of § 503(a)(1), there was nothing in the Act's language suggesting a private right of action. (Dkt. # 35 at 19–20.) The Court also determined that TARU had associational standing to bring claims on behalf of its members. (Id. at 14.) The Court further concluded that Plaintiffs had properly alleged a Fourteenth Amendment due process claim in the second count. (Id.)

Subsequent to the filing of this suit, it is apparently undisputed that the individual Plaintiffs abandoned their administrative appeals and they are no longer pursuing any additional unemployment benefits claims with the TWC. (Dkt. # 61-2 at ¶¶ 3–9, 13.) Each of the individual Plaintiffs' claims have now been resolved with the TWC. (Id.)

On July 12, 2023, Defendant filed a subsequent consolidated motion to dismiss as well as a motion for judgment on the pleadings.[1] (Dkt. # 61.)

---

[1] On June 27, 2023, the Court dismissed without prejudice Defendant's Second Motion to Dismiss, Third Motion to Dismiss, and Motion for Judgment on the Pleadings because they were overlapping and cluttered the Court's docket. (Dkt. # 53.) The Court allowed Defendant to refile the instant motion with all of his consolidated arguments in one motion.

Defendant argues that Plaintiffs have not alleged an ongoing violation of federal law, nor are they seeking prospective relief and therefore the claims must be dismissed.  (Id.)  Defendant also contends that Plaintiffs' claims are now moot because the individual Plaintiffs have all received the benefits to which they were entitled.  (Id.)  On July 26, 2023, Plaintiffs filed a response in opposition, arguing their overpayment balances are a deprivation of a constitutionally protected property interest.  (Dkt. # 68-2.)  Plaintiffs further contend that TARU's claims are not moot because it still has members whose immediate harms have not been remedied by the TWC, and that the individual Plaintiffs' claims are not moot because these plaintiffs may be subject to the same policies and practices again in the future.  (Id.)  On August 9, 2023, Defendant filed a reply in support of its motion.  (Dkt. # 75.)

On August 3, 2023, Plaintiffs filed a motion to strike Defendant's motion for judgment on the pleadings from his motions to dismiss.  (Dkt. # 71.)  On August 10, 2023, Defendant filed a response in opposition.  (Dkt. # 76.)  On August 16, 2023, Plaintiffs filed a reply.  (Dkt. # 79.)

## APPLICABLE LAW

Defendant has moved to dismiss pursuant to both Rules 12(b)(1) and (c) of the Federal Rules of Civil Procedure.  (Dkt. # 61.)

A.    Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not the delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Hebert Abstract Co. v. Touchstone Props., Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (citation omitted); Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312–13 (5th Cir. 2002).  "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir. 2001) (citing St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).

"Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." Great Plains Tr., 313 F.3d at 312 (quoting Hughes, 278 F.3d at 420).  The standard applied under Rule 12(c) is the same as that applied under Rule 12(b)(6).  Ackerson v. Bean Dredging, LLC, 589 F.3d 196, 209 (5th Cir. 2009); Guidry v. Am. Pub. Life Ins. Co., 512 F.3d 177, 180 (5th Cir. 2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Cid. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. Bowlby v. City of Aberdeen, 681 F.3d 215, 219 (5th Cir. 2012).  The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).  The Court must then determine whether the complaint states a claim for relief that is plausible on its face.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

B.    Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when a court lacks statutory or constitutional authority to adjudicate the claim.  Home Builders Assoc. of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).  When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, courts should consider the "jurisdictional attack before addressing any attack on the merits."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  The Court must first address subject matter jurisdiction because, without it, the case can proceed no further. Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 583 (1999); Ramming, 281 F.3d at 161.

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted).

11

ANALYSIS

The parties in this case have litigated this matter extensively and to the frustration of the Court.  No less than seven motions to dismiss or for judgment on the pleadings have been filed by Defendant,[2] and now—after the Court required Defendant to consolidate its latest arguments into one consolidated and cohesive motion— Plaintiffs move to strike Defendant's motion for judgment on the pleadings from being considered at the same time as the motions to dismiss.  The Court will deny Plaintiffs motion to strike so that it can consider all of Defendants' arguments at one time instead of allowing the parties to continue to drag out the litigation at this early stage of the case.  The Court will now consider Defendant's arguments in the instant motions to dismiss and for judgment on the pleadings.

A.     Deprivation of a Property Interest

Defendant first argues that Plaintiffs have failed to state a claim within the Ex Parte Young exception to sovereign immunity.  (Dkt. # 61 at 4.) Defendant contends that Plaintiff's only alleged injury is that they incurred "large overpayment balances," but this is not a deprivation for due process purposes. (Id.)  Defendant maintains that simply being notified of an overpayment balance does not deprive Plaintiffs of their property.  (Id. at 4–5.)  Therefore, according to Defendant, because Plaintiffs have failed to allege an ongoing violation of federal

---

[2] The Court has already ruled on one motion to dismiss in this case.  (Dkt. # 35.)

law, as required for the <u>Ex Parte Young</u> exception to sovereign immunity, the case should be dismissed for lack of jurisdiction.  (<u>Id.</u>)

To state a Fourteenth Amendment due process claim under § 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." <u>Gentilello v. Rege</u>, 627 F.3d 540, 544 (5th Cir. 2010) (quoting <u>Baldwin v. Daniels</u>, 250 F.3d 943, 946 (5th Cir. 2001)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972).

Defendant does not appear to dispute that Plaintiffs have alleged property interests in those unemployment benefits to which they are entitled under Texas law.  Instead, Defendant argues that Plaintiffs have not successfully alleged a deprivation of that property interest in being notified of overpayment balances. The Court disagrees.  At this stage of the litigation, and without the opportunity to consider each Plaintiff's circumstances, including whether he or she had money collected from them because of the overpayment notices or simply received the notices, the Court will not dismiss any claim on this basis.  "[E]ven the temporary or partial impairments to property rights that attachments, liens, and similar

13

encumbrances entail are sufficient to merit due process protection." Connecticut v. Doehr, 501 U.S. 1, 12 (1991).  And to the extent that an individual Plaintiff may have successfully appealed a redetermination, this does not mean that he or she has successfully recouped any improperly set benefits.  See Sterling v. Feek, 2022 WL 16699191, at *5 (W.D. Wash. Nov. 3, 2022).  Because Plaintiffs have at this time alleged a violation of a constitutionally protected property interest, the Court will not dismiss the case for lack of jurisdiction pursuant to Ex Parte Young.

B.     Claims 1 and 2 – Traceable Injury

Defendant next argues that Plaintiffs' claims 1 and 2 which allege that Defendant did not provide them notice or opportunity to be heard "during investigations" of their eligibility, must be dismissed because Plaintiffs did not suffer any injury fairly traceable to the actions alleged.  (Dkt. # 61 at 5.) Defendant further contends that, contrary to Plaintiffs' allegations, the TWC did not unilaterally audit Plaintiffs' unemployment benefits eligibility.  (Id.) Defendant also asserts that the TWC provided prior notice and an opportunity to respond before sending any overpayment determinations.  (Id. at 6.)  Therefore, according to Defendant, Plaintiffs' claims 1 and 2 must be dismissed for lack of standing.  Additionally, Defendant contends these claims are not plausible, but purely speculative.  (Id.)

14

Contrary to Defendant's arguments, the Court finds again that at this stage of the litigation, Plaintiffs have sufficiently stated a claim that Defendant did not provide notice and opportunity to be heard during investigations of their eligibility and that Plaintiffs have alleged that the TWC conducted audits.  For instance, Plaintiffs have alleged that audits were conducted: (1) manually by claims examiners, (2) by automated systems that analyze data in the TWC's system and flag claims for potential eligibility issues, and (3) related to identity verification.  (Dkt. # 12 at ¶¶67–81.)  The Court will not delve into the credibility of Plaintiffs' claims at this time.  Instead, the Court finds that Plaintiffs have successfully alleged Claims 1 and 2 pursuant to § 1983.

C.     Claims 2–3, 5 – Speculative Injury

Defendant next argues that Plaintiffs' claims that (1) Defendant was not holding hearings quickly enough on their appeals of overpayment determinations, (2) the language in the overpayment determinations should be more descriptive about the issues that would be determined at their unscheduled hearings, and (3) their speculation that they would not be able to meaningfully prepare for a hearing without notice in the overpayment determinations of the actual issues in their hearings, should all be dismissed because the complaint fails to allege an actual, concrete, or imminent injury resulting from either a delay or the

language in the overpayment or ineligibility notices, as required.  (Dkt. # 61 at 8–9.)

The Court again disagrees – at this stage of the litigation, Plaintiffs have successfully alleged actual, concrete, or imminent injuries that are not speculative.  Defendant's motion asks the Court to consider the merits of Plaintiff's claims, which the Court will not yet do.  Instead, the Court finds that Plaintiffs have sufficiently alleged injuries in that they: (1) are subject to unlawful overpayment balances (dkt. # 12 at ¶ 82–92), (2) have accrued larger overpayment balances than they might otherwise accrue (id. ¶ 111), and (3) have been harmed by notices that did not adequately warn them of the consequences of failure to verify their identities resulting in overpayment determinations (id. ¶ 77a, 114, 117, 121–25).  Thus, Plaintiffs have successfully alleged injuries at this time to survive judgment on the pleadings.  Whether the challenged delays are reasonable will be for the Court to decide at a later stage of the proceedings.

D.    Claims 2–3 – Due Process

Defendant further argues that Claims 2 and 3 must be dismissed because Plaintiffs failed to allege any ongoing action or policy adopted by Defendant that was causing delays.  (Dkt. # 61 at 10.)  Defendant contends that merely alleging a lengthy delay does not state a constitutional due process claim. (Id.)  Additionally, Defendant maintains that the TWC received an influx of

unforeseen an unexpected unemployment benefits claims and that "data show the TWC to be the hardest-working workforce agency in the country." (Id. at 11.)

Again, the Court will not dismiss on this basis. As Plaintiffs cite, whether the delay was unjustified will be determined at a later stage of this case pursuant to the three-factor balancing test in Mathews v. Eldridge, 424 U.S. 319 (1976). Additionally, Plaintiffs' complaint states an ongoing violation of federal law sufficient to withstand dismissal at this stage of the proceedings. Plaintiffs have alleged that Defendant maintains a policy of auditing claimants' eligibility based on months-old information, and that these audits result in large overpayments. (Dkt. # 12 ¶ 62–92.)

E.     Claim 4 – Deprivation of Vested Property Interest

Defendant moves to dismiss Claim 4 on the basis that Plaintiffs fail to allege any deprivation of a vested property interest, nor do they allege an injury. (Dkt. # 61 at 11.) Defendant argues there is no vested interest in overpaid unemployment benefits. Alternatively, Defendant contends that even if there were a vested property interest, no individual was injured by not receiving a waiver denial notice, not only because an overpayment balance or notice is not an injury, but also because none of these individuals has or ever had overpaid benefits that were eligible for waiver. (Id.) Therefore, Defendant argues that Plaintiffs lack standing. (Id.)

17

The Court will not yet dismiss the claim on this basis. Unemployment benefits, as discussed above, are a constitutionally protected interest, and at this stage of the litigation, the Court finds that Plaintiffs have alleged a deprivation of that protected interest. Whether Plaintiffs were in fact deprived of that interest will be determined at a later stage of that case.

F.    Injury Tracing

Defendant next argues that Plaintiffs have not alleged sufficient facts to trace their injuries to Defendant and it is their own fault they failed to properly respond to TWC notices. (Dkt. # 61 at 13.) Defendant contends that once they properly responded, the TWC was able to clear their overpayment balances on their account. (Id.) Again, because Defendant's argument asks the Court to consider the merits of Plaintiffs' claims, the Court will deny the motion to dismiss on this basis. The Court finds that Plaintiffs have sufficiently pleaded that Defendant caused their injuries at this stage of the case.

G.    Prospective Relief

Defendant asserts that Plaintiffs do not ask for permissible prospective relief and their claims are not redressable by the relief they request. (Dkt. # 61 at 13.) The Court disagrees. Plaintiffs' complaint asks the Court for a declaration that TWC's policies and practices continue to violate their due process rights, and not just a declaration that TWC's policies violated their due process rights in the

past. (Dkt. # 12 at ¶ 286a.)  Accordingly, Plaintiffs have alleged permissible prospective relief.

H.    <u>Mootness</u>

Defendant also contends that all of Plaintiffs' claims are moot because they have received all the unemployment benefits sought in this suit. (Dkt. # 61 at 14.)  Defendant asserts that Plaintiffs are no longer receiving unemployment compensation and they have terminated the administrative appeals upon which they formed their claims in the complaint. (<u>Id</u>.)  Defendant argues therefore there is no possible injunction or declaration that could impact Plaintiffs and they lack any legal stake in the outcome of this case. (<u>Id</u>.)  Additionally, Defendant contends that as far as the alleged new TARU members they are either untimely witnesses, or they do not have the same claims as the prior TARU members alleged in the complaint. (<u>Id</u>. at 15.)

In response, Plaintiffs maintain their claims are not moot because they may be subject to the same policies and procedures again in the future. (Dkt. # 68-2 at 16.)  Additionally, Plaintiffs contend that TARU has members whose immediate harms have not been remedied. (<u>Id</u>.)  Plaintiffs also argue that the TWC's one-time provision of benefits to Plaintiffs is a voluntary cessation of its policies and practices that does not moot Plaintiffs' claims. (<u>Id</u>.)  Plaintiffs further assert that their claims are "capable of repetition, yet evading review." (<u>Id</u>.)

Under Article III, an actual case-or-controversy must be extant at all stages of a case. Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 160 (2016). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." Id. at 160–61 (internal quotation marks omitted). In other words, a federal court lacks constitutional jurisdiction over a case that has become moot. But a case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Id. at 161. Additionally, a "defendant claiming that its voluntary compliance" or voluntary cessation of a challenged activity "moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013).

The Court will not yet dismiss Plaintiffs' claims. Without the benefit of discovery, it is impossible for the Court to determine whether or not the allegedly wrongful behavior can reasonably be expected to recur. Likewise, the Court cannot make a determination whether the new TARU members have harms that have not yet been remedied without further factual evidence. And, regarding Defendant's argument that the Court should exclude the new TARU declarants under Rule 37(c) of the Federal Rules of Civil Procedure, the Court will not do so

at this time.  See Hancock Cty. Bd. of Sup'rs v. Ruhr, 487 F. App'x 189, 198 (5th

Cir. 2012) ("We are aware of no precedent holding that an association must set

forth the name of a particular member in its complaint in order to survive a Rule

12(b)(1) motion to dismiss based on a lack of associational standing.").

I.    Associational Standing

Defendant also argues that because Claims 2 and 3 do not allege

specific policies or practices, TARU is not a suitable representative for these

claims.  (Dkt. # 61 at 17.)  Additionally, as it alleged in a prior motion to dismiss,

Defendant once again argues that effectual relief would require individual

participation by TARU members and therefore TARU is not a suitable

representative for any of the claims.  (Id. at 18.)

The Court has already rejected Defendant's arguments in its prior

Order on Defendant's motion to dismiss.  (See Dkt. # 35.)  The Court held in that

Order that participation of individual TARU members is not required.  (Id.)

Because its reasoning is still the same, the Court will not reexamine the arguments

again.  The Court will not dismiss any of TARU's claims based on this renewed

argument.

J.    TARU Members' Vested Property Interests

Finally, Defendant argues that TARU's untimely witnesses lack a

vested interest in further unemployment benefits.  (Dkt. # 61 at 20.)  The Court

disagrees.  Plaintiffs have alleged that the TARU members were initially ruled eligible for benefits and later found to be ineligible for benefits that the TWC had already granted them.  (Dkt. # 12 at ¶ 147, 159–68, 188–89, 200–01, 225–30, 248–54.)  The Court will reserve the merits of those allegations for a later stage of the case.

Given the foregoing, the Court will deny Defendant's motions to dismiss and motion for judgment on the pleadings.  Rather than continue to clutter the Court's docket with separate motions, Defendant is encouraged to bring any further argument and evidence regarding the merits of Plaintiffs' claims in an organized, cohesive summary judgment motion after the time for discovery has closed in this case.  The Court will order the parties to submit proposed scheduling order deadlines to control the remaining issues in this case within twenty-one days of this Order.

<u>CONCLUSION</u>

Based on the foregoing, the Court will **DENY** Defendant's Consolidated Motions to Dismiss and for Judgment on the Pleadings (Dkt. # 61); and **DENY** Plaintiffs' Motion to Strike Defendant's Motion for Judgment on the Pleadings (Dkt. # 71).  The parties must submit proposed scheduling order deadlines to control the remining issues in this case **within twenty-one days of the date of this Order**.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, September 6, 2023.

_____
David Alan Ezra
Senior United States District Judge