IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS ASSOCIATION FOR THE RIGHTS OF THE UNEMPLOYED, KATHRYN KAWAZOE, STEPHANIE STOUT, KIMBERLY HARTMAN, and CHARLES HARMON, JESUS DUARTE, | § § § § § § | No. 1:22-CV-417-DAE |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| EDWARD SERNA, Executive Director, Texas Workforce Commission, in his official capacity, | § § § | |
| | § | |
| Defendant. | § | |

ORDER: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AS TO MOOTNESS AND DISMISSING CLAIMS AS MOOT;
AND (2) DENYING AS MOOT PLAINTIFFS' MOTION FOR SUMMARY
<u>JUDGMENT</u>

The matters before the Court are: (1) Defendant Edward Serna's,

Executive Director of the Texas Workforce Commission, in his official capacity,

("Defendant" or "Serna") Motion for Summary Judgment (Dkt. # 100); and

(2) Plaintiffs Texas Association for the Rights of the Unemployed ("TARU"),

Kathryn Kawazoe, Stephanie Stout, Kimberly Hartman, Charles Harmon, and

Jesus Duarte (collectively, "Plaintiffs") Motion for Summary Judgment (Dkt.

# 107).  The Court finds a hearing on these matters is not necessary.  After careful consideration of the memoranda filed in support of and in opposition to the motions, the Court, for the reasons that follow, **GRANTS** Defendant's motion as to the issue of mootness, **DISMISSES AS MOOT** the claims in this case, and **DENIES AS MOOT** Plaintiffs' motion.

## BACKGROUND

On May 3, 2022, Plaintiffs filed suit in this Court, challenging the Texas Workforce Commission's ("TWC") administration of Covid-19 pandemic unemployment compensation programs.  (Dkt. # 1.)  Plaintiffs' amended complaint sought relief pursuant to 42 U.S.C. § 1983 based on Defendants' alleged denial of Plaintiffs' due process rights guaranteed by the Fourteenth Amendment, as well as for violations of the Social Security Act, 42 U.S.C. § 503(a)(1).  (Dkt. # 12.)

A.    Social Security Act

In 1935, Congress passed the Social Security Act, creating the framework for state unemployment compensation programs nationwide.  In California Department of Human Resources Development v. Java, the Supreme Court examined the legislative history of the Social Security Act, observing that the purpose of unemployment compensation was "to give prompt if only partial replacement of wages to the unemployed, [and] to enable workers 'to tide themselves over until they get back to their old work or find other employment,

2

without having to resort to relief.'"  402 U.S. 121, 131 (1971) (quoting H.R. Rep.

No. 615, 74th Cong., 1st Sess., 7 (1935)).

Among others, the Social Security Act requires states to administer

benefits in a manner that is "reasonably calculated to insure full payment of

unemployment compensation when due," and for states to provide an

"[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals

whose claims for unemployment compensation are denied."  42 U.S.C.

§ 503(a)(1), (3).  In Texas, the Social Security Act's unemployment provisions are

administered by the TWC pursuant to the Texas Unemployment Compensation Act

("TUCA"), and the regulations promulgated by the TWC thereunder.  See Tex.

Labor Code § 201 et seq.  The TUCA and TWC provide that unemployed Texans

may apply for and receive unemployment benefits if they meet the criteria set forth

in the TUCA so long as they continue to remain eligible.  Id. § 207.021; 40 Tex.

Adm. Code § 815.

B.    The CARES Act

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and

Economic Security Act, 15 U.S.C. § 9001, et seq., commonly denominated the

CARES Act, which created new, temporary, federal unemployment insurance

programs.  Congress amended the CARES Act twice since its passage for the

purpose of extending the time period of its coverage.  The CARES Act established

Pandemic Unemployment Assistance ("PUA"), a temporary federal unemployment program that provided up to seventy-nine weeks of benefits to certain individuals who were not otherwise eligible for state unemployment insurance benefits. The CARES Act states that "the Secretary shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially employed, or unable to work for the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation. . . ." 15 U.S.C. § 9021(b). "Covered individuals" are, in relevant part, those individuals who are not eligible for certain other compensation or benefits, and who are otherwise able to and available for work under state law, but are unemployed, partially unemployed, or unable or unavailable to work for certain designated reasons relating to the COVID-19 pandemic. 15 U.S.C. § 9021(a)(3).

The CARES Act distributed PUA benefits through states, requiring that: "[t]he Secretary shall provide the assistance authorized under subsection (b) through agreements with States which, in the judgment of the Secretary, have an adequate system for administering such assistance through existing State agencies, including procedures for identity verification or validation and for timely payment, to the extent reasonable and practicable." 15 U.S.C. § 9021(f)(1). The amount of unemployment compensation paid by a state for individuals such as Plaintiffs, who are or were allegedly unemployed due to the COVID-19 pandemic, was "computed

under the provisions of applicable State law," 20 C.F.R. § 625.6(a), and increased

by a weekly payment of either $600 or $300, depending on the time period of the

unemployment, 15 U.S.C. § 9023(b)(3)(A). 15 U.S.C. § 9021(d)(2). States are in

turn were reimbursed for the assistance they provided and for administrative

expenses. Id. § 9021(f)(2).

On March 28, 2020, Defendant Serna, acting as the designee of the

Governor on behalf of the state of Texas, entered into an agreement with DOL to

pay PUA to unemployed Texans through the TWC. (Dkt. # 12-1.) In the

agreement, TWC agreed to administer PUA under the requirements of the Social

Security Act. (Id.) In August of 2020, the TWC announced that it had begun an

agency-initiated audit to identify fraudulent activity among unemployment

claimants. (Dkt. # 12-2.)

On December 27, 2020, the unemployment provisions of the CARES

Act, including PUA, were extended through March 14, 2021, by the Continued

Assistance for Unemployed Workers Act of 2020, Pub. L. No. 116-260, §§ 201,

203-204, 206. On March 11, 2021, PUA and other benefits were further extended

through September 6, 2021, by the American Rescue Plan Act of 2021. Pub. L. No.

117-2, §§ 9011, 9013-9014, 9016. On September 6, 2021, the temporary programs

expired. However, prior to that date, on May 17, 2021, the Governor of Texas sent

a letter to the Secretary of DOL stating that Texas would "terminate its

participation in the Agreement Implementing the Relief for Workers Affected by

Coronavirus Act, effective June 26, 2021." https://gov.texas.gov/uploads/

files/press/O-WalshMartin202105171215.pdf.  The Governor asserted that "these

unemployment benefits [are] no longer necessary." Id.  He further stated that

"[t]he termination of this agreement means that Texas will opt out of . . . Pandemic

Unemployment Assistance . . . ." Id.

      C.    Plaintiffs' Claims

          Plaintiff TARU is "a membership organization composed of

individuals who believe their unemployment rights have been wrongfully denied."

(Dkt. #12 at 35.)  TARU's "purpose is to assist Texans who believe they have been

wrongfully denied the right to due process of law and other federal rights related to

the receipt of unemployment benefits." (Id.)  The individual plaintiffs are residents

of the state of Texas who allegedly lost their employment due to the COVID-19

pandemic and received some sort of PUA assistance, but were eventually denied

further PUA benefits, denied PUA backpay, or were subject to a determination of

overpayment of PUA benefits.

          Plaintiffs alleged claims against Defendants pursuant to § 1983 for

violations of the Social Security Act and for denial of Plaintiffs' due process rights

guaranteed by the Fourteenth Amendment by: (1) failing to provide notice and an

opportunity to be heard to audited claimants; (2) untimely redetermining eligibility

for audited claimants; (3) failing to provide timely first-level appeals;

(4) failing to provide determinations and notices of waiver of overpaid CARES Act

benefits; and (5) failing to provide adequate notice of adverse determinations.

(Dkt. # 12.)

      On March 22, 2023, the Court dismissed Plaintiffs' claims for

violations of the Social Security Act, finding that, upon its independent analysis of

§ 503(a)(1), there was nothing in the Act's language suggesting a private right of

action.  (Dkt. # 35 at 19–20.)  The Court also determined that TARU had

associational standing to bring claims on behalf of its members.  (Id. at 14.)  The

Court further concluded that Plaintiffs had properly alleged a Fourteenth

Amendment due process claim in the second count.  (Id.)

      Subsequent to the filing of this suit, it is apparently undisputed that

the individual Plaintiffs abandoned their administrative appeals, and they are no

longer pursuing any additional unemployment benefits claims with the TWC.

(Dkt. # 61-2 at ¶¶ 3–9, 13.)  Each of the individual Plaintiffs' claims have now

been resolved with the TWC.  (Id.)

      On September 6, 2023, the Court denied Defendant's motion to

dismiss Plaintiffs' remaining claims, finding that Plaintiffs—at that stage of the

proceedings—had sufficiently alleged: (1) their overpayment balances are a

deprivation of a constitutionally protected property interest; (2) Defendant did not provide notice and opportunity to be heard during investigations of their eligibility, and that the TWC conducted audits; (3) injuries in that they are subject to unlawful overpayment balances, have accrued larger overpayment balances than they might otherwise accrue, and have been harmed by notices that did not adequately warn them of the consequences of failure to verify their identities resulting in overpayment determinations; (4) Defendant maintains a policy of auditing claimants' eligibility based on months-old information, and these audits result in large overpayments; (5) a deprivation of a constitutionally protected interest in unemployment benefits; and (6) permissible prospective relief in asking the Court for a declaration that TWC's policies and practices continue to violate their due process rights.  (Dkt. # 84.)

On May 31, 2024, Defendant filed a motion for summary judgment on Plaintiffs' remaining claims in this case.  (Dkt. # 100.)  On June 14, 2024, Plaintiffs filed a response in opposition (Dkt. # 105), as well as their own cross-motion for summary judgment (Dkt. # 107).  On June 21, 2024, Defendant filed a reply to its motion for summary judgment (Dkt. # 106).  On June 28, 2024, Defendant filed a response to Plaintiffs' motion for summary judgment (Dkt. # 109).  On July 5, 2024, Plaintiffs filed a reply in support of their motion for summary judgment (Dkt. # 111).

8

APPLICABLE LAW

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Vann v. City of Southaven, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); see also Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Bennett v. Hartford Ins. Co. of Midwest, 890 F.3d 597, 604 (5th Cir. 2018) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'"  Nola Spice Designs, LLC v. Haydel Enter., Inc., 783 F.3d 527, 536 (5th Cir. 2015) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'"  Kim v. Hospira, Inc., 709 F. App'x 287, 288 (5th Cir. 2018) (quoting Nola Spice Designs, 783 F.3d at 536).  While the movant must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  Austin v. Kroger Tex., L.P., 864 F.3d 326, 335 (5th Cir. 2017)

9

(quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)).  A

fact is material if it "might affect the outcome of the suit."  Thomas v. Tregre,

913 F.3d 458, 462 (5th Cir. 2019) (citing Anderson, 477 U.S. at 248).

      "When the moving party has met its Rule 56(c) burden, the

nonmoving party cannot survive a summary judgment motion by resting on the

mere allegations of its pleadings."  Jones v. Anderson, 721 F. App'x 333, 335 (5th

Cir. 2018) (quoting Duffie v. United States, 600 F.3d 362, 371 (5th Cir. 2010)).

The nonmovant must identify specific evidence in the record and articulate how

that evidence supports that party's claim.  Infante v. Law Office of Joseph

Onwuteaka, P.C., 735 F. App'x 839, 843 (5th Cir. 2018) (quoting Willis v. Cleco

Corp., 749 F.3d 314, 317 (5th Cir. 2014)).  "This burden will not be satisfied by

'some metaphysical doubt as to the material facts, by conclusory allegations, by

unsubstantiated assertions, or by only a scintilla of evidence.'"  McCarty v.

Hillstone Rest. Grp., Inc., 864 F.3d 354, 357 (5th Cir. 2017) (quoting Boudreaux v.

Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005)).  In deciding a summary

judgment motion, the court draws all reasonable inferences in the light most

favorable to the nonmoving party.  Wease v. Ocwen Loan Servicing, LLC,

915 F.3d 987, 992 (5th Cir. 2019).

      Additionally, at the summary judgment stage, evidence need not be

authenticated or otherwise presented in an admissible form.  See Fed. R. Civ. P.

10

56(c); <u>Lee v. Offshore Logistical & Transp., LLC</u>, 859 F.3d 353, 355 (5th Cir. 2017).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  <u>United States v. Renda Marine, Inc.</u>, 667 F.3d 651, 655 (5th Cir. 2012) (quoting <u>Brown v. City of Houston</u>, 337 F.3d 539, 541 (5th Cir. 2003)).

<u>ANALYSIS</u>

The parties have both moved for summary judgment on Plaintiffs' remaining claims.  (Dkts. ## 100, 107.)  Defendant moves for summary judgment on the basis that: (1) Plaintiffs cannot show that Defendant is enforcing or administering any policy or custom that is causing an ongoing and continuous deprivation of Plaintiffs' due process rights; (2) Plaintiffs cannot show that any existent policy or custom described in the complaint is incapable of being constitutionally applied under every set of circumstance; (3) Plaintiffs' claims are moot; (4) Plaintiffs' request for monetary relief is barred by sovereign immunity; and (5) the Court should decline to issue declaratory relief.  (Dkt. # 100.)

Plaintiffs move for summary judgment on the basis that the TWC deprives unemployment claimants of procedural due process because: (1) its notices to claimants informing them of the agency's investigations and decisions are confusing, duplicative, and lack basic information that would enable claimants to understand the reasons for the agency's decisions; (2) its unemployment appeals

system does not provide claimants with timely appeal hearings; and (3) it fails to issue a waiver determination each time it determined a claimant was overpaid pandemic-related unemployment benefits.  (Dkt. # 107.)

> A.    Individual Plaintiffs

The following facts regarding the individual Plaintiffs, as presented by Defendant are undisputed by Plaintiffs.

> 1.    Jesse Duarte

The TWC sent Duarte an identity verification request in Fall 2021; Duarte timely verified his identity on September 23, 2021.  (Dkt. # 12 at 33.) However, the TWC sent him an overpayment determination but soon thereafter realized its mistake and sent a corrected determination on October 13, 2021.  (Id.; Dkt. # 109-1 at ¶ 32.)  Duarte did not have any money or other property collected from him due to the overpayment.  (Id.)

> 2.    Evelyn Carriere and Stephanie Stout

Because Carriere and Stout did not timely respond to TWC's verification requests, they received overpayment determinations alongside a corresponding ineligibility determination.  (Dkt. # 109-1 at ¶ 33.)  However, once they verified their accounts, the overpayments were erased, and a waiver determination was unnecessary.  (Id. at ¶ 23.)

3.   <u>Kathryn Kawazoe</u>

Kawazoe's payment request was put on hold on July 3, 2021, after she was notified via the online payment system that, based on her answers, she needed to manually complete the application through the TWC's Tele-Center, which is an alternative to online payment requests.  (Dkt. # 109-1 at ¶ 34.)  Because she did not timely contact the TWC in that method, her payment request was denied.  (<u>Id.</u>) She received notice of the denial on July 13, 2021, which informed her that she was denied because she did not report to or contact the TWC.  (Dkt. # 12 at ¶¶ 150–52.)  Nevertheless, the evidence indicates that Kawazoe is self-employed and ineligible for regular state employment benefits, and was eligible only for CARES Act benefits.  (<u>See</u> Dkt. # 109-6 at 7.)

4.   <u>Kimberly Hartman</u>

Hartman requested that her claim be backdated to a subsequent week to account for the weeks she did not timely request payment, but was initially denied by the TWC.  (Dkt. # 109-1 at ¶ 35.)  Hartman appealed the denial, and she was thereafter granted the backdate request on March 8, 2021.  (Dkt. # 109-5 at 17.)  Defendant's evidence explains that backdating voids an initial claim and replaces it with a new claim with a start date at the earlier date.  (Dkt. # 109-1 at ¶ 18.)  In Hartman's case, as a result of the backdating, she was sent the determination and payment requests for the backdated claim, but the system

inadvertently auto-generated overpayment determinations.  (Id.)  Because she did not timely respond to TWC's payment requests, the new claim did not replace the initial voided claim to remedy the auto-generated overpayment determinations.  (Id. at ¶¶ 18, 35.)

### 5.    Charles Harmon

Harmon also filed a request to backdate his benefits and the TWC spoke to Harmon by phone wherein his request to backdate was discussed.  (Dkt. # 109-1 at ¶ 36.)  The TWC ultimately denied his request because he failed to show good cause.  (Id.)

### 6.    Shameela Rome, Tanecia Hackett, and Daniel Ali

Rome, Hackett, and Ali did not report all of their earnings despite being told to do so in multiple places.  (Dkt. # 109-1 at ¶¶ 8, 10, 37–39.)  These plaintiffs thereafter received notices of overpayments informing them that their specific employers (with names listed) had reported earnings that they had failed to disclose.  (Id. at ¶¶ 37–39.)  They were given seven days to respond but failed to do so and they were sent overpayment notices informing them that the TWC had adjusted their amount of earnings on their payment requests, which resulted in overpayment balances.  (Id. at ¶¶ 8, 37–39.)  With regard to Ali, although he requests a waiver of his overpayment, because they relate only to regular state benefits, they are not waivable.  (Id. at ¶ 29, 1-AA.)

14

7.    Michael Nicoll and Girma Turie

Nicoll called TWC to request to file late payment benefits, stating during the call that he voluntarily quit work.  (Dkt. # 109-1 at ¶ 41.)  Because voluntary quitting work disqualifies one from unemployment benefits, Nicoll was issued ineligibility and overpayment determinations.  (Id.); Tex. Lab. Code § 207.045. His PUA application was also denied, and he does not have an overpayment balance of waivable CARES Act benefits.  (Dkt. # 109-1 at ¶ 29, 30; 40–41.)

Turie was sent an identity verification request on July 20, 2021, but he did not respond until March 23, 2022.  (Dkt. # 109-1 at ¶ 40.)  Once he responded, the overpayment determination was resolved.  However, his PUA application was denied because Turie did not provide the requested proof of any connection to the labor market to demonstrate entitlement to PUA benefits.  (Id. at ¶ 29.) The TWC sent him a waiver denial determination.  (Id. at 1-AC.)

8.    Shan'a Wallace

Wallace was named as a member of TARU approximately 1.5 years after filing suit, but there are insufficient allegations as to how notice to her was insufficient or whether she suffered any deprivation of property.  (See Dkt. # 98-2 at 8.)

B.    <u>CARES Act Claims</u>

As an initial matter, the Court agrees with Defendant that CARES Act benefits are discretionary and thus any government action with respect to CARES Act benefits does not violate due process.  (Dkt. # 100 at 22.)  District courts throughout the country have recognized that plaintiffs do not have a property interest in CARES Act benefits.  For example, in <u>Moss v. Lee, No. 21-CV-561</u>, 2022 WL 68388 (D. Tenn. Jan. 6, 2022), a federal district court rejected a similar argument, because

> the CARES Act created temporary federal benefits to supplement state benefit programs. . . .  That the CARES Act's supplemental programs enhanced state benefits does not mean the CARES Act created state property rights in those benefits for two reasons.  First . . . there is no private right of action under the CARES Act for supplemental federal benefits.  Second, federal law specifically allows states to exercise discretion in ending their distribution of the federal supplemental benefits. Such discretion is enough to place the benefit outside the scope of a property interest.  [T]he CARES Act not only fails to limit discretion, but it also specifically grants the state the sole discretion to terminate the federal supplemental benefits. The existence of provisions that retain for the state significant discretionary authority over the bestowal or continuation of a government benefit suggests that the recipients of such benefits have no entitlement to them.

<u>Id.</u> at *6 (internal quotation marks and citations omitted).  The Court here agrees.

"[A] private right of action, express or implied, for supplemental federal benefits is absent from the CARES Act."  <u>Winter v. New Mexico Dep't of Workforce Sols.</u>, No. 21-475 JFR/SCY, 2022 WL 4132740, at *7 (D.N.M. Sept. 12, 2022); <u>see also</u> <u>Graham v. Payne</u>, No. 21-CV-888, 2022 WL 815138, at *2

(N.D. Ind. Mar. 17, 2022) ("[S]everal district courts have held that there is no private right of action under the CARES Act); McClendon v. Bernard, No. 21-CV-823, 2021 WL 5567369, at *2 (E.D. Ark. Nov. 29, 2021) ("[T]he CARES Act does not create a private right of action.").  Notably, Plaintiffs have not cited any case law or otherwise which holds that a property interest exists in CARES Act benefits.  See Winter, 2022 WL 4132740, at *7; Moss, 2022 WL 68388, at *6.

Furthermore, Dickerson v. Texas, No. 21-CV-2729, 2021 WL 4192740 (S.D. Tex. Sept. 15, 2021), demonstrates an example of this principle and the discretionary role played by Texas in the receipt and administration of supplemental federal benefits from the CARES Act.  In that case, the plaintiffs argued that they were deprived of procedural due process because Texas ended participation in federal supplemental unemployment benefits from the CARES Act without providing them "notice or an opportunity to be heard." Id. at *1-2.  In rejecting this claim, Dickerson highlighted the nature of the benefits at issue—that they were "additional benefits" that were "not protected, nor [were] they entitlements."  Id. at *3; see also Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005) ("The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it.  He must instead have a legitimate claim of

entitlement to it." (internal quotation marks and citation omitted)).  Regarding their

claims brought pursuant to the CARES Act, Plaintiffs here were not stripped of a

protected entitlement without process.  See Gonzales, 545 U.S. at 756 (noting that

"a benefit is not a protected entitlement if government officials may grant or deny

it in their discretion").  Accordingly, the Court finds that Defendant is entitled to

summary judgment on all of Plaintiffs' claims brought pursuant to the CARES Act.

Thus, as to Claim 4, which seeks relief for "[f]ailure to provide determinations and

notices of waiver of overpaid CARES Act benefits," it is dismissed with prejudice.

Additionally, the claims against any individual Plaintiff who relies only on the

CARES Act for relief are also dismissed, including those against Kawazoe.  The

Court will only consider Plaintiffs' remaining claims based on regular

unemployment benefits.

     C.    <u>Backdated Claims</u>

     Likewise, the Court finds that any of Plaintiffs' claims based on the

TWC's decision to deny their request to file a retroactive or backdate a claim for

benefits for failure to provide inadequate notice will also be dismissed.  In Texas,

the TWC has the discretion to backdate claims, thus there is no vested property

interest in the ability to file a retroactive or backdated claim.  See Tex. Labor Code

§ 815.22(a) (using permissive "may" language).

D.    <u>Monetary Relief</u>

Defendant moves for summary judgment on Plaintiffs' request for monetary relief to the extent they seek such relief.  (Dkt. # 100 at 23.)  Because Plaintiffs have clarified they do not seek relief any monetary relief, the Court will deny as moot Defendant's motion on this matter.

E.    <u>Standing</u>

Defendant, as previously challenged, again raises the issue of standing.  (<u>See</u> Dkt. # 84.)  Defendant again argues that Plaintiffs have failed to demonstrate injury or the likelihood of relief that would redress their injuries. (Dkt. # 109 at 15.)  For each Plaintiff, Defendant maintains that they have not provided evidence of any actual or likely imminent injury, such as a deprivation of property, tied specifically to any TWC process complained of in their amended complaint.  (<u>Id.</u> at 16.)

Additionally, Defendant moves for summary judgment on the issue of whether an overpayment notice is intrinsically a deprivation of a right.  (Dkt. # 109 at 17.)  Defendant contends that Plaintiffs have not demonstrated they were harmed by the overpayment notices, but only that they were unjustly enriched.  (<u>Id.</u>)  Thus, Defendant maintains that Plaintiffs have not provided evidence that, with respect to overpayment balances, they experienced a deprivation traceable to any notice or

process which are essential elements of both standing and the merits of their cases. (Id.)

Plaintiffs assert they have standing because the Court has already determined that they have alleged a deprivation of a protected property interest, and thus the issue before the Court is now whether they were in fact deprived of that interest. (Dkt. # 107 at 33.) Regarding TARU, Plaintiffs contend they have associational standing and that its individual members still suffer from unremedied procedural harm. (Id.)

Rooted in Article III's case-or-controversy requirement, the standing doctrine consists of three essential elements: (1) that the plaintiff suffer an injury-in-fact (2) that is fairly traceable to the conduct of the defendant and (3) likely redressable by a favorable judicial decision. Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). Plaintiffs, as the party invoking jurisdiction, bear the burden of establishing each element. Id. at 339.

The Court has already addressed Plaintiffs' standing in prior motions to dismiss and declines to revisit the issue again. (See Dkt. # 84.) If necessary, the Court will consider below the evidence as to whether Plaintiffs indeed suffered an injury as they have appropriately alleged the elements to assert standing as previously addressed by the Court.

F.    <u>Mootness</u>

Defendant also contends that all the individual Plaintiffs' claims are moot and thus barred by sovereign immunity because they have all resolved their claims with the TWC.  (Dkt. # 109 at 17.)  Regarding TARU members, Defendant contends that it is undisputed that they have received hearings and any investigation of their claims has concluded in regard to Claims 2 and 3.  (<u>Id.</u> at 18.)  As for Claims 1 and 5, Defendant asserts that no plaintiff claims to be ignorant or lacking adequate notice to defend themselves in administrative appeals, and in any case, it would be a frivolous argument because the TWC sends extensive hearing packets before the hearings.  (<u>Id.</u>)  Furthermore, Defendant maintains that neither the voluntary cessation doctrine nor the capable of repetition but evading review doctrine is applicable to Plaintiffs' claims.  (<u>Id.</u>)

Under Article III, an actual case-or-controversy must be extant at all stages of a case.  <u>Campbell-Ewald Co. v. Gomez</u>, 577 U.S. 153, 160 (2016).  "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot."  <u>Id.</u> at 160–61 (internal quotation marks omitted).  In other words, a federal court lacks constitutional jurisdiction over a case that has become moot.  But a case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  <u>Id.</u> at 161.

21

Additionally, a "defendant claiming that its voluntary compliance" or voluntary cessation of a challenged activity "moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013).

Plaintiffs agree that the individual Plaintiffs and TARU member Carriere have been granted all of the benefits they were entitled and have had their overpayments resolved. (Dkt. # 107 at 34.) Instead, they argue their claims are not moot because the alleged mootness is the result of Defendant's voluntary cessation of the wrongful conduct and the controversy is capable of repetition, yet evading review. (Dkt. # 107 at 34.)

1.    Voluntary Cessation

Under the voluntary cessation exception to mootness, "a defendant cannot automatically moot a case simply by ending its [allegedly] unlawful conduct once sued." Already, 568 U.S. at 91. In other words, "a defendant's voluntary cessation of a challenged practice [usually] does not deprive a federal court of its power to determine the legality of the practice." Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc., 528 U.S. 167, 189 (2000). The voluntary cessation doctrine is rooted in protecting plaintiffs from a defendant's possible

"return to his old ways."  United States v. W.T. Grant Co., 345 U.S. 629, 632

(1953).

The Supreme Court has laid down a "stringent" standard for

determining whether a case has become moot due to a defendant's voluntary

conduct: "[a] case might become moot if subsequent events made it absolutely

clear that the allegedly wrongful behavior could not reasonably be expected to

recur."  Friends of the Earth, Inc., 528 U.S. at 189; see also Yarls v. Bunton,

905 F.3d 905, 910 (5th Cir. 2018) ("Essentially, the goal is to [decide] whether the

defendant's actions are 'litigation posturing' or whether the controversy is actually

extinguished.").  This "heavy burden" is borne by the party asserting mootness, in

this case, Defendant.  Friends of the Earth, Inc., 528 U.S. at 189.  Nonetheless, an

assertion that a violation is likely to recur cannot be entirely speculative.  See

Spence v. Nelson, 533 F. App'x 368, 371 (5th Cir. 2013).

Nevertheless, the skepticism with which courts generally greet

defendant-induced mootness does not apply to "formally announced changes to

official governmental policy" because, absent evidence to the contrary, courts

presume government officials exercise their duties in good faith, given that they

are "public servants, not self-interested private parties."  Yarls, 905 F.3d at 911

(quoting Sossamon v. Lone Star State of Tex., 506 F.3d 316, 325–26 (5th Cir.

2009), aff'd sub nom. Sossamon v. Texas, 563 U.S. 277 (2011)).

As mentioned, the TWC has granted both individual Plaintiffs and TARU member Carriere all of the benefits they were allegedly entitled and have thus had their overpayments resolved.  On the other hand, the TWC has not amended nor disavowed its policies and practices that Plaintiffs challenge, namely the agency's procedures for handling pretermination notice to beneficiaries of the cancellation of their unemployment compensation among others.  In other words, the TWC has not fully ceased the conduct Plaintiffs' challenge.  Thus, because Defendant has not renounced the policies Plaintiffs challenge, this case varies from a typical voluntary cessation matter.  Whereas the issue in a voluntary cessation case usually is whether it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," Friends of the Earth, Inc., 528 U.S. at 189, the issue here is not so much whether the TWC will return to the challenged practice; indeed, there is no practice for the TWC to "return" to because the policies and practices have not changed.  Therefore, this case thus falls outside the normal realm of the voluntary cessation doctrine.

Still, the Court does not believe that the doctrine is wholly inapplicable to the issues in this case.  Instead, the doctrine's inquiry must be modified to ask whether it is "absolutely clear that" Plaintiffs cannot "reasonably be expected" to again be subjected to "the allegedly wrongful behavior."  Id.  "This formulation seeks to uphold the same interests served by the doctrine: preventing a

24

defendant from unilaterally mooting a case—and thereby escaping judicial review—if there is a more-than-speculative chance both that he will continue his contested practices and, importantly, that plaintiffs will be subjected to those practices, once federal jurisdiction ceases." <u>Joyce v. Dejoie</u>, No 20-3193, 2022 WL 59392, at *6 (E.D. La. Jan. 6, 2022). "If there is no reasonable chance that plaintiffs will again be subjected to a challenged practice, then the fact that a defendant has not ceased those practices does not affect the plaintiff in a concrete way." <u>Id.</u> "Put differently, there is no reasonable expectation of a renewed controversy between the parties." <u>Id.</u>

In considering the issue, the Court here must consider whether there is a reasonable expectation that Plaintiffs will again endure Defendant's allegedly unlawful behavior. The Court must review "whether the circumstances giving rise to this controversy were so unusual that it cannot reasonably be expected that TWC will again wrongfully deny Plaintiffs unemployment benefits and fail to provide them with pretermination of the cancellation of those benefits and an opportunity to appeal that decision." <u>Id.</u> "Ultimately, this inquiry boils down to whether Plaintiffs will again qualify for and receive unemployment benefits administered by" the TWC. <u>Id.</u> "If the Plaintiffs cannot reasonably be expected to again receive benefits from the agency, then the Court cannot offer any effectual relief and any ruling would constitute an impermissible advisory opinion." <u>Id.</u>

The Court has already determined that any claims based on the CARES Act are dismissed because the CARES Act is now over and thus no notices or overpayment determinations will again occur as to that Act.  Regarding the remaining claims, Defendant has presented evidence that the COVID-19 pandemic inundated the TWC with a "deluge of unemployment benefits," which has now subsided, and the TWC's caseload has been greatly reduced to pre-pandemic levels.  (Dkt. # 98-2 at 26; Dkt. # 109-1 at 14.)  The evidence also indicates that at this same time, TWC had to quickly implement PUA, a brand-new unemployment program, thus contributing to the likely imperfect administration of unemployment claims.  (See id.)

Plaintiffs challenge TWC's explanation for its alleged errors in the administration of their claims, arguing that the errors occurred because of the shortcomings in TWC's policies and practices, and not a result of the unique burdens placed on the agency during the pandemic.  (Dkt. # 107 at 35–36.)

Despite the parties' factual disputes as to the reasons the alleged errors in notice and an opportunity to challenge TWC's practices during the administration of Plaintiffs' unemployment benefits during the pandemic occurred, the Court is not convinced that Plaintiffs will again be subjected to these same actions and policies of the TWC that they contest.  Foremost is "the fact that the COVID-19 pandemic is a singular, historic event" and "Congress responded to this

unprecedented national emergency by enacting the CARES Act, which includes

the PUA program that widened eligibility for unemployment compensation."

Joyce, 2022 WL 59392, at *6.  And, there is no basis for the Court to "assume that

another unforeseen event causing similarly widespread economic dislocation and

disruptions to everyday services," will again occur, "and that, in response,

Congress will enact legislation that establishes a PUA-like program."  Id.  Further,

the Court has not been presented with evidence or persuasive argument, nor can

the Court assume, that any legislative or regulatory developments are likely to

occur which would allow Texas to expand eligibility for its unemployment benefits

program, "let alone that the state would do so in such a manner that would cover

Plaintiffs."  Id.

   Regarding each of the Plaintiffs in this case, the Court does not find

that their work history and unemployment benefits would lead to the same

reoccurrence.  First, the Court has not been presented with evidence that any

Plaintiff in this case applied for unemployment benefits prior to the pandemic in

Texas or any other state, nor is there any evidence that Plaintiffs experienced

unemployment before the pandemic.  Additionally, as mentioned, PUA benefits

have ended, along with all federal unemployment benefits under the CARES Act.

Furthermore, regarding Plaintiffs in this case, Defendant has presented evidence that: (1) the TWC has not received a wage report for Harmon since the third quarter of 2023, for Stout, Hartman, and Kawazoe since the third quarter of 2019, and for Carriere since the second quarter of 2018 (Dkt. # 109-1 at ¶ 31); (2) Harmon is not eligible for filing unemployment benefits (Dkt. # 109-9 at 10–12, 21–22, 25–27); (3) Carriere lives in Louisiana now and Stout failed to appear for deposition (Dkt. # 109-7 at 26; Dkt. # 109-8); (4) Duarte's error was promptly corrected and did not occur due to an alleged wrongful policy or practice; and (5) there is no evidence the remaining Plaintiffs had overpayments of waivable benefits in the first instance (Dkt. # 109-1 at ¶ 23, 28–29).

And, regarding its administration of unemployment benefits since the filing of this suit, TWC has since altered its policy regarding notices in the identity verification, demonstrating the unlikeliness that the alleged harmful actions would occur again.  (Dkt. # 109-2 at 3–4; Dkt. # 109-1 at ¶ 23.)

Finally, Plaintiffs have failed to offer evidence that they presently qualify for state unemployment benefits or that they have jobs that would qualify them for such benefits should they lose their jobs.  It is true that the burden is on Defendant to prove that Plaintiffs cannot reasonably be expected to experience the actions that they challenge.  See Friends of the Earth, Inc., 528 U.S. at 189. However, Plaintiffs' failure to show that they are able to potentially qualify for

state unemployment benefits in the future leans in favor of the Court finding it

highly speculative that TWC will someday deny Plaintiffs' unemployment

compensation without proper pretermination notice and the due process in the

same way alleged in this case.  As the district court in <u>Joyce v. Dejoie</u> determined,

> the "very nature" of the unusual—to say the least—sequence of events
> that gave rise to this case makes it doubtful that this controversy will
> repeat itself. [<u>Fontenot v. McCraw</u>, 777 F.3d 741 (5th Cir. 2015).]
> Again, this case was spawned by an unforeseen pandemic that
> shutdown large swaths of the economy and critical social services . . . .
> In response to this crisis, Congress undertook extraordinary measures.
> As relevant here, it enacted the temporary—and now defunct—PUA
> program that extended unemployment benefits to otherwise ineligible
> individuals, including Plaintiffs. Nothing indicates these events will
> recur and that Plaintiffs will be eligible for federal unemployment
> benefits administered by the [TWC].

2022 WL 59392, at *8.

The Court here finds, as in <u>Joyce</u>, that based on all of the

Circumstances existing in this case, there is no reasonable expectation that

Plaintiffs will be eligible for state unemployment benefits in the same way in the

future.  See <u>Friends of the Earth, Inc.</u>, 528 U.S. at 189; <u>see also</u> <u>D'Agostino v.</u>

<u>Arizona Dep't of Econ. Sec.</u>, 623 F. Supp. 3d 1009, 1014–15 (D. Ariz. 2022).

Therefore, even though the TWC has not altered its policies in regard to the

voluntary cessation doctrine, the Court does not believe a live controversy still

exists.  While it is true that a future controversy with the TWC cannot be avoided

by merely complying with the law, the exceptional circumstances of the pandemic

which underly this case leads the Court to hold that it is "absolutely clear" that it cannot reasonably be expected that Plaintiffs will again face the same actions and policies in the same way they now challenge.  See id.  Accordingly, the Court finds the voluntary cessation doctrine does not apply to Plaintiffs' claims.  And, as discussed next, the capable-of-repetition-yet-evading-review exception to mootness is not applicable either.

2.   Capable of Repetition

Plaintiffs also argue the case is not moot because unemployment disputes are too short in duration to be fully litigated prior to cessation and thus are capable of repetition, yet evading review.  (Dkt. # 107 at 36.)  The Court disagrees and finds the doctrine inapplicable.

The capable-of-repetition-yet-evading-review exception to mootness holds that where a practice no longer directly affects the attacking party, a claim is not moot if "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Moore v. Hosemann, 591 F.3d 741, 744 (5th Cir. 2009) (internal quotation marks omitted).  First, as discussed above, the policies of TWC that Plaintiffs challenge have not ceased, so the first prong of the test is not met.  Second, and for reasons

30

set forth above, there is no reasonable expectation that Plaintiffs will be subject to the same action again.  See Joyce, 2022 WL 59392, at *8 n.3.

In sum, the TWC's resolution of all of Plaintiffs' claims extinguished this controversy.  This case is therefore moot, and the Court only has jurisdiction to dismiss it.  Given this ruling, the Court will **GRANT** Defendant's motion for summary judgment as to the issue of mootness and **DENY AS MOOT** Plaintiffs' motion for summary judgment.

CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. # 100) on the issue of mootness, **DISMISSES AS MOOT** Plaintiffs' claims, and **DENIES AS MOOT** Plaintiffs' Motion for Summary Judgment (Dkt. # 107).  The Clerk's Office is **INSTRUCTED** to **CLOSE THE CASE**.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, February 12, 2025.

_____

David Alan Ezra
Senior United States District Judge